No. 25-5285

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

SHIRA PERLMUTTER, Register of Copyrights and
Director of the U.S. Copyright Office,
Plaintiff-Appellant,

v.

TODD BLANCHE, in his capacity as the person claiming to be
acting Librarian of Congress, ET AL.,
Defendants-Appellees,

On Appeal from the United States District Court
for the District of Columbia
No. 25-cv-1659
Hon. Timothy J. Kelly, U.S. District Judge

## PLAINTIFF-APPELLANT'S EMERGENCY MOTION FOR AN
## INJUNCTION PENDING APPEAL

Donald B. Verrilli, Jr.
Ginger D. Anders
Munger, Tolles & Olson LLP
601 Massachusetts Avenue NW
Washington, DC 20043
(213) 683-9100
donald.verrilli@mto.com
ginger.anders@mto.com

Brian D. Netter
Allyson R. Scher
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
bnetter@democracyforward.org
ascher@democracyforward.org

*Counsel for Plaintiff-Appellant*
*[Additional Counsel Listed in Signature Block]*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................. 1

BACKGROUND ............................................................................. 3

    A.    The Register of Copyrights and the U.S. Copyright Office ................................................................................ 3

    B.    The Attempted Takeover of the Library of Congress and the Copyright Office ............................................. 5

    C.    Proceedings Below ......................................................... 7

ARGUMENT ................................................................................... 8

    I.    Perlmutter Is Likely to Prevail on the Merits ............. 8

    II.    Perlmutter Suffers Immediate and Irreparable Harm Based on Her Unlawful Removal ................................ 15

    III.    The Balance of the Equities and Public Interest Compel Granting an Injunction Pending Appeal ....... 25

CONCLUSION ............................................................................... 28

CERTIFICATE OF COMPLIANCE ............................................ 29

CERTIFICATE OF SERVICE ..................................................... 30

# TABLE OF AUTHORITIES

## CASES

*Aviel v. Gor*, No. 25-5105, 2025 WL 1600446 (D.C. Cir. June 5, 2025) ............................................................................ 2, 15, 16, 27

*Aviel v. Gor*, No. 25-cv-778, 2025 WL 1009035 (D.D.C. Apr. 4, 2025) ............................................................................................ 21

*Berry v. Reagan*, No. 83-cv-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983) ............................................................................................ 24

*Brehm v. Marocco*, No. 25-cv-660 (D.D.C. Mar. 11, 2025) ...................... 19

*Free Enter. Fund v. PCAOB*, 561 U.S. 477 (2010) .................................... 8

*Grundmann v. Trump*, 770 F. Supp. 3d 166 (D.D.C. 2025) .................... 19

*Haddon v. Walters*, 43 F.3d 1488 (D.C. Cir. 1995) ............................ 10, 11

*Harris v. Bessent*, 775 F. Supp. 3d 164 (D.D.C. 2025) ........... 18, 19, 22, 24

*Harris v. Bessent*, No. 25-5037, 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025) .............................................................................................. 2

*Intercollegiate Broad. Sys. v. Copyright Royalty Bd.*, 684 F.3d 1332 (D.C. Cir. 2012) ...................................................................... 14

*Karem v. Trump*, 404 F. Supp. 3d 203 (D.D.C. 2019) ............................ 20

*Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136 (1980) ................................................................................................ 12

*League of Women Voters of the United States v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ................................................................ 25

*LeBlanc v. U.S. Priv. & C.L. Oversight Bd.*, No. 25-cv-542, 2025 WL 1454010 (D.D.C. May 21, 2025) .................................. 21, 24, 25

*Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995) .............. 10, 13

*Nat'l Treasury Emps. Union v. Reagan*, 663 F.2d 239 (D.C. Cir. 1981) ............................................................................9

*NLRB v. SW Gen., Inc.*, 580 U.S. 288 (2017) ....................................9, 10

*Population Inst. v. McPherson*, 797 F.2d 1062 (D.C. Cir. 1986) ..............8

*Sampson v. Murray*, 415 U.S. 61 (1974) ............................................17

*Slaughter v. Trump*, No. 25-cv-909, 2025 WL 1984396 (D.D.C. July 17, 2025) ............................................................................19, 20

*Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571 (2017) ............26

*Trump v. Wilcox*, 145 S. Ct. 1415 (2025) ............................................26

*Wash. Legal Found. v. U.S. Sent'g Comm'n*, 17 F.3d 1446 (D.C. Cir. 1994) ............................................................................12

*Wilcox v. Trump*, 775 F. Supp. 3d 215 (D.D.C. 2025) ..................19, 22, 24

**STATUTES**

17 U.S.C. § 115 ............................................................................22

17 U.S.C. § 1502 ..........................................................................5

17 U.S.C. § 1506 ..........................................................................5

17 U.S.C. § 205 ............................................................................5

17 U.S.C. § 701 ............................................................1, 4, 8, 22

17 U.S.C. § 702 ............................................................................5

17 U.S.C. § 705 ............................................................................5

17 U.S.C. § 802 ............................................................................22

# TABLE OF AUTHORITIES
## (continued)

17 U.S.C. §§ 410-11 ...............................................................5, 22

2 U.S.C. § 136 ...............................................................................6

2 U.S.C. § 141 .............................................................................12

2 U.S.C. § 181 .............................................................................12

28 U.S.C. § 1292 ...........................................................................8

31 U.S.C. § 1105 .........................................................................12

5 U.S.C. § 101 .............................................................................10

5 U.S.C. § 103 .............................................................................10

5 U.S.C. § 104 .............................................................................10

5 U.S.C. § 105 .............................................................................10

5 U.S.C. § 3102 ...........................................................................11

5 U.S.C. § 3345 ......................................................................9, 10

5 U.S.C. § 3401 ...........................................................................11

5 U.S.C. § 4101 ...........................................................................11

5 U.S.C. § 4501 ...........................................................................11

5 U.S.C. § 5102 ...........................................................................11

5 U.S.C. § 5521 ...........................................................................11

5 U.S.C. § 5541 ...........................................................................11

5 U.S.C. § 5584 ...........................................................................11

5 U.S.C. § 5595 ...........................................................................11

# TABLE OF AUTHORITIES
## (continued)

5 U.S.C. § 5921 ....................................................................11

5 U.S.C. § 5948 ....................................................................11

5 U.S.C. § 6121 ....................................................................11

# OTHER AUTHORITIES

H.R. Conf. Rep. No. 105-796 (1998) ...................................4, 12

Katherine Tully-McManus, *GOP Leaders Draw the Line at Trump's Library of Congress Takeover*, POLITICO (May 14, 2025), https://perma.cc/236C-QXRM ..............................7

Maya C. Miller & Devlin Barrett, *Trump Installs Top Justice Dept. Official at Library of Congress, Prompting a Standoff*, N.Y. TIMES (May 12, 2025), https://perma.cc/9L4G-8ZMU...........................................7

Mohar Chatterjee, *Trump Derides Copyright and State Rules in AI Action Plan Launch*, POLITICO (July 23, 2025), https://perma.cc/YV55-QP7S.............................................1

Register of Copyrights Selection and Accountability Act: Hearing on H.R. 1695 Before the S. Comm. on Rules and Admin., 115th Cong. 3 (2018)..........................................4

Tim Balk, *Trump Administration Fires Librarian of Congress*, N.Y. TIMES (May 8, 2025), https://perma.cc/865K-GS9D................5

United States Copyright Off., *Copyright & Artificial Intelligence Part 3: Generative AI Training Report* (Pre-Publication Version) (Aug. 7, 2025), https://perma.cc/N2WF-FE3A .......................................1

# CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 8 ..............................................................3

## INTRODUCTION

By statute, the Register of Copyrights serves as an advisor to Congress "on national and international issues relating to copyright," among other critical functions. 17 U.S.C. § 701(b)(1). She is appointed by, and operates under the authority of, the Librarian of Congress. *Id.* § 701(a).

On May 9, 2025, plaintiff-appellant Shira Perlmutter, the Register of Copyrights, published a prepublication version of a report analyzing the fair use doctrine's application to use of copyrighted materials in the training of generative artificial-intelligence models ("AI Report").[1] The President, who subsequently made public statements contradicting Perlmutter's conclusions,[2] purported to fire her the very next day. He then purported to appoint Deputy Attorney General Todd Blanche to serve as acting Librarian of Congress, and Blanche purported to appoint Justice Department official Paul Perkins as acting Register of Copyrights

---

[1] United States Copyright Off., *Copyright & Artificial Intelligence Part 3: Generative AI Training Report* (Pre-Publication Version) (Aug. 7, 2025), https://perma.cc/N2WF-FE3A.

[2] *See* Mohar Chatterjee, *Trump Derides Copyright and State Rules in AI Action Plan Launch*, POLITICO (July 23, 2025), https://perma.cc/YV55-QP7S.

and Justice Department official Brian Nieves as acting Principal Deputy Librarian.

The President does not have constitutional or statutory authority to remove the Register of Copyrights, nor does he have constitutional or statutory authority to appoint an acting Librarian of Congress. Neither the President nor Blanche has the legitimate authority to displace Perlmutter from her position as Register of Copyrights.

Perlmutter filed suit to enjoin Blanche, Perkins, and White House officials from interfering with her functioning as Register of Copyrights. The district court denied Perlmutter's motion for a preliminary injunction, taking the position that—even assuming Perlmutter could not lawfully be removed by the President or Blanche—she is not irreparably harmed by their transparent effort to prevent her from advising Congress.

The district court's ruling conflicts with recent orders of this Court. *Aviel v. Gor*, No. 25-5105, 2025 WL 1600446 (D.C. Cir. June 5, 2025) ("*Aviel II*"); *Harris v. Bessent*, No. 25-5037, 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025). Moreover, the importance and urgency of Perlmutter's work in advising Congress on the critical copyright issues raised by

generative AI is evidenced by the President's rush to block her from continuing that effort. Without immediate relief, she will irreparably lose her ability to advise Congress during this critical time and to perform the multiple other functions assigned personally to the Register by statute.

The President has no authority to remove Perlmutter. It would be profoundly inequitable if he were permitted to act unlawfully and to run out the clock while Perlmutter awaits final disposition of her appeal, unable to share, at this critical time in the copyright field, the expertise she has developed over the course of a lengthy and distinguished career.

This Court should act swiftly to enjoin Defendants from interfering with Perlmutter's service as Register during the pendency of this appeal.

## BACKGROUND

### A. The Register of Copyrights and the U.S. Copyright Office

The Constitution vests Congress with the power to "secur[e] for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8. Pursuant to that authority, Congress has entrusted the Copyright Office,

led by the Register of Copyrights, with the responsibility to administer the nation's copyright system. *See* 17 U.S.C. § 701(a).

The Register is the "director of the Copyright Office," 17 U.S.C. § 701(a), which has a "longstanding role as advisor to Congress on matters within its competence." H.R. Conf. Rep. No. 105-796, at 77 (1998). The Register's role "is separate from testimony or other recommendations by the Administration pursuant to the President's concurrent constitutional power to make recommendations to Congress." *Id.* The Register is required to "[a]dvise Congress on national and international issues relating to copyright," to "[c]onduct studies and programs regarding copyright," and to "[p]erform such other functions as Congress may direct." 17 U.S.C. § 701(b); *see also* Register of Copyrights Selection and Accountability Act: Hearing on H.R. 1695 Before the S. Comm. on Rules and Admin., 115th Cong. 3 (2018) (statement of Sen. Klobuchar) (describing the Register of Copyrights as Congress's "chief copyright policy adviser").

In her role as advisor to Congress, Perlmutter has provided multiple reports on copyright law and policy issues, most recently addressing the thorny issues raised by artificial intelligence. Perlmutter

issued Part 3 of the AI Report in pre-publication format on May 9, 2025—the day before the President purported to remove her—and had been working on the fourth and final installment, which she had expected to release over the summer. App.3a. The uncertainty over Perlmutter's position has put that effort on indefinite hold.

In addition to her Congress-facing responsibilities, the Register is responsible for the administration of the Copyright Act, including the examination of copyright applications, the issuance of copyright registrations, the maintenance of copyright deposits, and the recordation of transfers of copyright ownership. 17 U.S.C. §§ 205, 410-11, 705. She has rulemaking and fee-setting authority (subject to review by the Librarian of Congress and by Congress) and plays a major role in the appointment and review of the Copyright Claims Board. *Id.* §§ 702, 1502, 1506(x).

## B. The Attempted Takeover of the Library of Congress and the Copyright Office

On Thursday, May 8, 2025, President Trump fired the Librarian of Congress, Dr. Carla D. Hayden. *See* Tim Balk, *Trump Administration Fires Librarian of Congress*, N.Y. TIMES (May 8, 2025), https://perma.cc/865K-GS9D. In accordance with the Library's

regulations—issued pursuant to the authority Congress expressly delegated to the Librarian, 2 U.S.C. § 136—Principal Deputy Librarian of Congress Robert Newlen replaced Dr. Hayden as acting Librarian. *See* App.2a.

On Friday, May 9, Perlmutter issued the prepublication version of Part 3 of the AI Report. On Saturday, May 10, Trent Morse, Deputy Assistant to the President and Deputy Director of the White House Presidential Personnel Office, sent an email to Perlmutter, stating, on the President's behalf, that her position as the Register of Copyrights and Director of the U.S. Copyright Office was terminated, effective immediately. *See* App.4a, App.8a-9a. The following Monday, May 12, Perkins and Nieves arrived at the Library of Congress with a letter from the President purporting to appoint Blanche as acting Librarian of Congress pursuant to the Federal Vacancies Reform Act, and a letter from Blanche purporting to appoint Perkins and Nieves as acting Register and acting Deputy Librarian, respectively. *See* App.4a, App.10a-12a. Officials at the Library did not recognize Blanche as the acting Librarian and have not permitted him or Perkins to assume control over the Library or Copyright Office. *See id.*; Maya C. Miller &

Devlin Barrett, *Trump Installs Top Justice Dept. Official at Library of Congress, Prompting a Standoff*, N.Y. TIMES (May 12, 2025), https://perma.cc/9L4G-8ZMU. A bipartisan group of lawmakers has expressed concern about the President's unprecedented efforts to control Congress's library. *See* Katherine Tully-McManus, *GOP Leaders Draw the Line at Trump's Library of Congress Takeover*, POLITICO (May 14, 2025), https://perma.cc/236C-QXRM.

### C. Proceedings Below

Perlmutter filed suit on May 22 and moved that same day for a temporary restraining order. The district court denied the motion on May 28. Without addressing Perlmutter's likelihood of success on the merits, the court concluded that the loss of her position as Register did not constitute irreparable harm. Perlmutter asked the court to proceed to expedited summary judgment proceedings, but the court declined to expedite consideration, whereafter Perlmutter filed a motion for a preliminary injunction. On July 30, the district court denied that motion, again taking the view that, irrespective of the merits of her claim, Perlmutter's injury did not constitute irreparable harm.

Perlmutter noticed an interlocutory appeal to this Court pursuant to 28 U.S.C. § 1292(a)(1). She moved the district court to enter an injunction pending appeal; that motion remains pending.

## ARGUMENT

An injunction pending appeal is appropriate if Plaintiff will likely succeed on her appeal and will suffer irreparable harm without an injunction, so long as the equities and public interest favor an injunction. *Population Inst. v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986).

## I. Perlmutter Is Likely to Prevail on the Merits

Perlmutter is exceedingly likely to prevail on her claim that she remains lawfully entitled—and legally obligated—to serve as Register of Copyrights. She was properly appointed by the Librarian of Congress, could not lawfully have been removed by the President, and could not be removed by Blanche because he has no legal right to serve as acting Librarian.

**a.** Congress may vest the appointment of inferior officers in "the President alone, in the Courts of Law, or in the Heads of Departments" as it "think[s] proper." *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 487 (2010). The Register is an inferior officer for whom Congress vested appointment authority in the Librarian of Congress. 17 U.S.C. § 701(a).

Perlmutter was duly appointed pursuant to that authority in October 2020.  App.1a.

**b.** Where Congress vests appointment authority in a Head of Department, "[a]bsent relevant legislation," "the power to remove is held by the appointing authority, and only by the appointing authority." *Nat'l Treasury Emps. Union v. Reagan*, 663 F.2d 239, 247 (D.C. Cir. 1981). Accordingly, the President's purported firing of Perlmutter had no legal effect.

**c.** Nor could Blanche have removed Perlmutter as Register, because he was not properly serving as acting Librarian.  In the ordinary course, when a principal officer departs from a post, the position may be filled only after the President nominates, and the Senate confirms, a successor.  This limitation is a "critical 'structural safeguard[] of the constitutional scheme.'" *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 293 (2017). Through the Federal Vacancies Reform Act of 1998 (FVRA), 5 U.S.C. § 3345, Congress "has given the President limited authority to appoint acting officials to temporarily perform the functions of a vacant [principal] office without first obtaining Senate approval." *SW Gen.*, 580

U.S. at 294. But Congress did not include the Library within the scope of the FVRA.

The FVRA applies to any agency that Congress designated as an "Executive agency." 5 U.S.C. § 3345(a). Congress was naturally free to define "Executive agency" however it desired, irrespective of an entity's constitutional status. *See Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 392–93 (1995). For purposes of the FVRA, Congress defined "Executive agency" in 5 U.S.C. § 105 to include an agency (1) on the enumerated list of "Executive department[s]" (*id.* § 101); (2) that is a "Government corporation" (*id.* § 103); or (3) that is an "independent establishment," which is defined to mean either "an establishment in the executive branch" not previously covered or "the Government Accountability Office" (*id.* § 104). Defendants assert that the Library is an "independent establishment," but it quite obviously is not.

In *Haddon v. Walters*, 43 F.3d 1488 (D.C. Cir. 1995), this Court considered whether the Executive Residence is an "independent establishment" within the meaning of § 104. For two reasons, the Court concluded that it was not an "independent establishment." *First*, "Congress has used the term 'independent establishment' in distinction

to the Executive Residence," thereby establishing that "Congress does not regard the Executive Residence to be an independent establishment, as it uses that term." *Id.* at 1490. *Second*, Congress indicated that it did not intend for the Executive Residence to be subject to Title 5 because it saw fit to regulate the staff of the Executive Residence in Title 3. *Id.*

Those same considerations establish conclusively that the Library is not an "independent establishment" either. *First*, Congress has used the term "independent establishment" in distinction to the Library of Congress. *See* 5 U.S.C. § 4101(1) ("For the purpose of this chapter 'agency' … means (A) an Executive department; (B) an independent establishment; (C) a Government corporation … ; [or] (D) the Library of Congress…."). Congress has likewise used the term "Executive agency" in distinction to the term "Library of Congress" many more times. *See* 5 U.S.C. §§ 3102(a)(1), 3401(1), 4501(1), 5102(a)(1), 5521(1), 5541(1), 5584(g), 5595(a)(1), 5921(2), 5948(g)(2), 6121(1). Binding Circuit precedent requires the conclusion that Congress does not regard the Library to be an "independent establishment" or an "Executive agency," as it defined those terms for purposes of the FVRA.

*Second*, Congress has elsewhere sought to regulate the Library as part of the legislative branch, so there is good reason why it would not have given the President *carte blanche* to designate an acting Librarian without any congressional input. The evidence here is abundant: Congress established the Library in Title 2 ("The Congress") and has repeatedly defined the Library as a "legislative branch agency." *E.g.*, 2 U.S.C. § 181(b)(1); 31 U.S.C. § 1105 note (132 Stat. 5430, 5430); 2 U.S.C. § 141 note (107 Stat. 1037, 1044). Indeed, when Congress last "clarifie[d] the duties and functions of the Register of Copyrights," the Conference Report emphasized "the Copyright Office's role as a legislative branch agency." H.R. Conf. Rep. No. 105-796, at 77 (1998). And courts have recognized, for a host of purposes, that Congress intended to treat the Library as part of the legislative branch for statutory purposes. *See, e.g.*, *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136 (1980) (FOIA); *Wash. Legal Found. v. U.S. Sent'g Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994) (APA). Congress has routinely organized the Library within the legislative branch; it did so here, too, which means that it did not authorize the President to appoint an acting Librarian without the advice and consent of the Senate.

**d.** As against this comprehensive demonstration of Congress's intent, Defendants were left in the district court with two profoundly unsatisfying responses, neither of which has a scintilla of support anywhere in the U.S. Code. Defendants contended that Congress referenced the Library of Congress as distinct from "Executive agency" and "independent establishment" merely because it was being cautious. Defendants offered the theory that Congress needed to identify the Library of Congress expressly elsewhere because it was adopting a definition of "agency," whereas, here, it was adopting a definition of "Executive agency." Defs.' Opp'n at 14–16, ECF No. 33. If that puzzling argument made any intuitive sense, it would nevertheless be foreclosed by *Haddon* and by the innumerable decisions applying the canon against superfluity.

Plaintiffs' only other statutory argument is that Congress intended to define "Executive agency" to be coextensive with the Constitution's definition of "executive Departments" in Article II. But Congress obviously was not *required* to use that constitutional standard. *Lebron*, 513 U.S. at 392–93. And it clearly did not choose *voluntarily* to do so. If Congress had wanted to import a standard from Article II, why would it

have used different words?  Why wouldn't it have referenced the Constitution?  Why would it have partitioned the constitutional standard into three distinct components?  And why would it have listed some (but not all) of the "Departments"?  None of these questions has a satisfactory answer, because Congress was adopting its own standard, as the text of the statute demonstrates.  And it would have been illogical for Congress to have adopted a standard that would depend on future legal developments and that would not readily explain how to handle entities (like the Library of Congress) that may wield enough executive authority to trigger the Appointments Clause (*see Intercollegiate Broad. Sys. v. Copyright Royalty Bd.*, 684 F.3d 1332 (D.C. Cir. 2012) (addressing the Copyright Royalty Board, which is not a part of the Copyright Office)), but that also quite obviously perform critical legislative functions (*see id.* at 1341–42 (identifying the Congressional Research Service as one of the Library's legislative functions)).  In any event, the Executive Residence is surely part of Article II, so *Haddon*, too, forecloses this novel theory.

Beyond their meager statutory offering, Defendants contended below that the President has freestanding authority under Article II to appoint an acting Librarian or to remove the Register.  These arguments

find no precedent in our nearly 250-year constitutional record. Indeed, the motions panel in *Aviel v. Gor* recently rejected both arguments. *Aviel II*, 2025 WL 1600446, at *2; *accord id.* at *4 n.1 (Rao, J., dissenting). And for good reason: the structure of the Constitution requires the President to work with Congress; he may exercise his authority over the Librarian (or over an acting Librarian), but unless Congress has given him such power, he cannot unilaterally appoint an acting Librarian or assume the power to remove inferior officers.

## II. Perlmutter Suffers Immediate and Irreparable Harm Based on Her Unlawful Removal

As the foregoing section demonstrates, the President and his subordinates sidelined Perlmutter unlawfully, in the midst of her efforts to discharge her statutory obligations to advise Congress, during a period of time when her advice to Congress is critical. Assuming that to be true, the district court concluded that it was nevertheless powerless to intervene because the harms to Perlmutter personally (as distinct from the harms to the institution she leads) were not the sort that could support interim relief.

That cannot be correct. This Court's June ruling in *Aviel II* requires as much, and first principles corroborate that Perlmutter satisfies the standard for irreparable harm.

a.      In *Aviel II*, this Court considered the government's emergency motion for a stay pending appeal of a district court order enjoining a supposedly terminated government employee from being allowed to continue her service as Chief Executive Officer of the Inter-American Foundation. The government had argued that *de jure* reinstatement was not an available remedy and that the plaintiff's loss of employment did not constitute irreparable harm.  Emergency Mot. for a Stay Pending Appeal, *Aviel II*, at 20–23.  But the panel majority disagreed.  As Judge Katsas explained, in a concurring opinion joined by Judge Pillard, although he himself had "expressed concerns with other aspects of the kind of injunctive relief ordered here," it was "appropriate to defer to the views expressed by [the] *en banc* Court" in *Harris* that injunctive relief was available.  2025 WL 1600446, at *2.  Judge Rao's dissent specifically disagreed on the question of irreparable harm, thereby confirming that the majority rejected the government's position there and here.  *See id.* at *6.

**b.**  Even if there were not recent Circuit precedent, first principles point in the same direction.  In *Sampson v. Murray*, the Supreme Court held that garden-variety disputes predicated on an executive-branch employee's "loss of income" generally will not justify emergency relief.  *Sampson v. Murray*, 415 U.S. 61, 91–92 (1974).  The Court held that the plaintiff, a probationary employee in the Public Buildings Service of the General Services Administration, had failed to "make a showing of irreparable injury sufficient in kind and degree to override" the "widest latitude" traditionally afforded to the government in the "dispatch of its own internal affairs."  *Id.* at 83–84 (internal quotation marks omitted).  And although the Court declined to identify when irreparable injury would exist, it signaled that the standard should look not to "external factors common to most discharged employees," such as "an insufficiency of savings or difficulties in immediately obtaining other employment," but rather to "unusual actions relating to the discharge itself."  *Id.* at 92 n.68.

Here, of course, the "actions relating to the discharge itself" are exceedingly "unusual."  Perlmutter was purportedly removed on a Saturday, the day after she issued a report providing advice—with which

the President has indicated disagreement—to Congress, supporting the unavoidable inference that the President's objective was to prevent her from finishing her work. The President's attempted interference with the work of a co-equal branch of government dissolves any latitude due to the executive branch and makes this a prime circumstance in which judicial intervention is needed to prevent extraconstitutional mischief.

Even setting aside the inter-branch nature of Defendants' actions, Perlmutter suffers irreparable harm from her loss of the statutory right to a high-ranking public-servant role in charge of a nearly 500-person agency, from the impediments to her ability to fulfill her ongoing statutory responsibilities as the lawful Register, and from the irreversible damage to the institutional independence and integrity of the Library and Copyright Office that directly flow from Defendants' unlawful seizure.

Defendants' actions deprive Perlmutter of her "statutory right" to serve in the role that the Librarian of Congress lawfully appointed her to perform. *Harris v. Bessent*, 775 F. Supp. 3d 164, 185–87 (D.D.C. 2025). "Almost every court to address the question in the recent slew of wrongful-removal cases has agreed that this harm meets the irreparable

threshold." *Slaughter v. Trump*, No. 25-cv-909, 2025 WL 1984396, at *17 (D.D.C. July 17, 2025); *see also Harris*, 775 F. Supp. 3d at 185–87; *Wilcox v. Trump*, 775 F. Supp. 3d 215, 235–36 (D.D.C. 2025); *Grundmann v. Trump*, 770 F. Supp. 3d 166, 187–88 (D.D.C. 2025). *But see Brehm v. Marocco*, No. 25-cv-660 (D.D.C. Mar. 11, 2025) (order denying motion for a temporary restraining order). Courts in this Circuit have overwhelmingly held that the deprivation of a statutory entitlement to a high-ranking public-servant role is an extraordinary departure from the garden-variety employment dispute, particularly because the loss of an official's right to perform in their unique position cannot be remedied by money damages.

That is precisely the case here. Perlmutter's inability to lead and direct the important work of the Copyright Office at a critical juncture transcends the loss of income or embarrassment involved in the typical employment action. Perlmutter's patently unlawful removal deprives her of the opportunity to influence federal decisionmaking on copyright matters of national importance: it causes her to forfeit opportunities to advise on artificial intelligence; direct rulemakings; make time-sensitive, critical staff decisions; review decisions and novel questions of law before

the Copyright Royalty Board; and issue copyright registrations.  App.3a, App.5a.  Money damages would "not restore her ability to influence" the Copyright Office's "decision-making in the past or in the future." *Slaughter*, 2025 WL 1984396, at *18.  These harms are "unrecoverable" and therefore irreparable.  *Karem v. Trump*, 404 F. Supp. 3d 203, 217 (D.D.C. 2019), *aff'd as modified*, 960 F.3d 656 (D.C. Cir. 2020).

The district court erroneously concluded that the loss of a statutory right to serve in a high-ranking public-service role causes irreparable harm *only if* the plaintiff shows that the "position[] would no longer exist" and therefore "there would be no agency for the officer to return to after the case was resolved."  App.18a-App.21a.  But the district court's logic supports Perlmutter's position here.  The *harm* sustained by a plaintiff who is wrongly terminated during the dismantling of her agency is the inability to perform the function of her statutory office.  (She could, after all, receive money damages just like any other wrongly terminated employee.).  So there could be a legal distinction between the two types of plaintiffs only if there were a difference in whether the harm was *irreparable*.  But Defendants have no theory here as to how Perlmutter could be made whole for her inability to function as Register now, during

a time period of critical developments. And while the district court points to *LeBlanc* and *Aviel* to support its conclusion, *LeBlanc* rejected the government's argument that a plaintiff must show that the agency will cease to exist in order to establish irreparable harm. *See LeBlanc v. U.S. Priv. & C.L. Oversight Bd.*, No. 25-cv-542, 2025 WL 1454010, at *29 (D.D.C. May 21, 2025). *Aviel* made clear that the harm to the agency resulting from the plaintiff's removal was distinct from the loss of the plaintiff's statutory right to serve in her position, and was by itself sufficient to "put[] her case squarely in the 'genuinely extraordinary situation' contemplated by *Sampson*." *See Aviel v. Gor*, No. 25-778, 2025 WL 1009035, at *10 (D.D.C. Apr. 4, 2025) (explaining that plaintiff identified an "additional layer of harm on top of her basic 'right to function' as the IAF's president" to warrant injunctive relief "regardless" of whether the loss of her statutory right to function created irreparable harm).

Beyond the loss of her "statutory right to function," absent preliminary relief Perlmutter will also be irreparably harmed by the concomitant impediment to her ability to discharge her ongoing statutory responsibilities as the lawful Register of Copyrights. Perlmutter is

required by law to fulfill her statutory obligations unless she is removed from office by a duly appointed Librarian. *See, e.g.*, 17 U.S.C. §§ 115(d), 411(b), 701, 802(f)(1)(D); App.2a-4a, App.5a. An injunction pending appeal is necessary so that Perlmutter can do what Congress has directed her to do. *Harris*, 775 F. Supp. 3d at 86, 96–98 (the "loss of the ability to do what Congress specifically directed [the plaintiff] to do cannot be remediated with anything other than equitable relief") (citation omitted).

While eventual restoration to her role would "halt the ongoing harm and prevent future harm," it "would not do anything to repair the past harm." *Wilcox*, 775 F. Supp. 3d at 215, 236 n.21 (specifying the irremediable past harm to the NLRB as "the backlog of cases, the months employers and employees have spent waiting for adjudications, the practical ramifications felt across the country (from workers' rights violations to workplace unrest) of labor disputes left unresolved, delayed union recognition, and so forth"). The Copyright Office's "statutory mandate is not to—at some point in time—operate . . . but rather to have an ongoing, efficient administration" of copyright laws. *Id.*

Finally, Defendants' efforts to oust Perlmutter threaten the Library's and the Copyright Office's ability to perform their assigned

functions as intended by Congress, which has *not* given the President authority to unilaterally appoint an acting Librarian, or to directly remove the Register. This is especially apt given the sensitivity of the Library of Congress's statutory functions as a neutral advisor to Congress. Congress therefore provided that the Register would be supervised directly by the Librarian, and that the Librarian would be subject to Senate confirmation. Because the President does not possess the authority to remove Perlmutter, her wrongful removal is inextricable from the President's unlawful assault on the institutional independence and integrity of the Library and Copyright Office.

These concerns are amplified here given that the President's attempt to take over the Library of Congress implicates separation-of-powers issues not ordinarily present in other employment disputes. The Copyright Office cannot perform its statutory role as a neutral advisor to Congress if an executive branch official controls the Library of Congress's operations. Access to the Copyright Office's records, including confidential research and advice for Members of Congress on potential legislation, by unconfirmed executive branch officials outside the established line of succession will damage the credibility and reliability

of the institution as a non-partisan advisor, jeopardize the security of the copyright registration system and the value of the deposited works, place confidential congressional correspondence and work product at risk, and preclude Perlmutter's ability to continue in her role of Register as it currently exists.

Courts in this Circuit have interpreted *Sampson* to direct them in wrongful-removal cases to consider the disruptive effect of the plaintiff's removal on the institution's ability to function as a part of their analysis of irreparable harm. The district court rejected Perlmutter's argument that the grave institutional harm to the Library and Copyright Office warrants preliminary relief, App.26a-28a, but in reaching this conclusion, it overlooked that *Berry*, *Wilcox*, *LeBlanc*, and *Harris* all found that preliminary injunctive relief was warranted because of the "'obviously disruptive effect' that [plaintiff's] removal ha[d] on the organization's functioning." *Wilcox*, 775 F. Supp. 3d at 236, (quoting *Berry v. Reagan*, No. 83-cv-3182, 1983 WL 538, at *5 (D.D.C. Nov. 14, 1983)) (considering harm to plaintiff's agency as a part of the court's irreparable harm analysis); *Berry*, 1983 WL 538, at *5 (same); *LeBlanc*, 2025 WL 1454010, at *30 (same); *Harris*, 775 F. Supp. 3d at 86, 96

(same).  Here too, the "core separation of powers issues" implicated by Perlmutter's removal and concomitant harm to the Library and Copyright Office is "strikingly different from the 'routine' employment circumstances of the probationary employee at issue in *Sampson*," and therefore warrants injunctive relief.  *LeBlanc*, 2025 WL 1454010, at *31.

In sum, the harm to Perlmutter and the harm to the institution itself are one and the same.  This Court should therefore consider the threat to the Library's and the Copyright Office's institutional prerogatives and ability to function in the manner Congress intended as a part of its analysis of irreparable harm.

## III.  The Balance of the Equities and Public Interest Compel Granting an Injunction Pending Appeal

Finally, the balance of the equities and the public interest favor granting an injunction pending appeal.  A party's likelihood of success on the merits is a strong indicator that an injunction "would serve the public interest" because "[t]here is generally no public interest in the perpetuation of unlawful agency action."  *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).  Where, as here, no Defendant had the legal authority to remove Perlmutter, there can be no public interest in her unlawful removal.  Moreover, the public interest

favors permitting the Copyright Office to continue its important work without impediment.

The district court read the Supreme Court's stay order in *Trump v. Wilcox*, 145 S. Ct. 1415 (2025), to require the opposite conclusion, but this Court's decision in *Aviel II* establishes otherwise. In *Wilcox*, the Court stayed an injunction that would have allowed two members of multimember boards to continue working. The Court considered the President likely to succeed on the merits and reasoned, accordingly, that there would be a greater risk of harm to the President from allowing the plaintiffs to continue working. 145 S. Ct. at 1415. The district court interpreted *Wilcox* to mean that the President always gets his way in the balance of harms in wrongful-removal cases. App.22a-26a. But this Court's citation of *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571 (2017) (per curiam), shows that the Court was only making the straightforward point that a court seeking to minimize the risk that it will cause undue harm during the pendency of litigation must account for the likelihood that the harm will wrongly be imposed. *See id.* at 580 ("The purpose of ... interim equitable relief is not to conclusively determine the

rights of the parties, but to balance the equities as the litigation moves forward.").

In *Aviel II*, Judge Katsas adopted this narrower reading of *Wilcox*, finding that the *Wilcox* Court had not addressed "whether reinstatement would have been an appropriate remedy if the removals at issue were unlawful," 2025 WL 1600446, at *2 n.2, as Perlmutter's removal was here. That assessment is "the last word on that question until either the Supreme Court or a merits panel of [this] Court more definitively resolves the remedies issues." *Id.*

Common sense requires this conclusion. Courts must be empowered to provide effective interim relief for these unlawful actions, where it is clear that the President faces no harm—and has no lawful authority to remove the officer in question.

On the other side of this balance, Defendants will not be harmed by the maintenance of the *status quo ante*, in which Perlmutter, who has faithfully served as the Register of Copyrights for nearly five years, continues to fulfill her statutory role as an advisor to Congress and steward of the copyright system.

## CONCLUSION

Plaintiff's motion should be granted.


Dated: August 7, 2025

Donald B. Verrilli, Jr.
Ginger D. Anders
Munger, Tolles & Olson LLP
601 Massachusetts Avenue NW
Washington, DC 20043
(213) 683-9100
donald.verrilli@mto.com
ginger.anders@mto.com

Kuruvilla J. Olasa
Miranda E. Rehaut
Adeel Mohammadi
Munger, Tolles & Olson LLP
350 South Grand Avenue, 50th
Floor
Los Angeles, California 90071
(213) 683-9100
kuruvilla.olasa@mto.com
miranda.rehaut@mto.com
adeel.mohammadi@mto.com

Respectfully submitted,

*/s/ Allyson R. Scher*
Brian D. Netter
Allyson R. Scher
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
bnetter@democracyforward.org
ascher@democracyforward.org

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface and type-volume limitations in Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,194 words, excluding the accompanying documents authorized by Federal Rule of Appellate Procedure 27(a)(2)(B) and the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Cir. Rule 32(e)(1). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: August 7, 2025

*/s/ Allyson R. Scher*
Allyson R. Scher

## CERTIFICATE OF SERVICE

I certify that on August 7, 2025, a true and correct copy of this Brief was filed with the Clerk for the United States Court of Appeals for the District of Columbia Circuit via the Court's electronic filing system, which will forward a copy to all counsel of record. I certify that I separately served Defendants' counsel of record via email.

Dated: August 7, 2025

*/s/ Allyson R. Scher*
Allyson R. Scher

# APPENDIX

# TABLE OF CONTENTS

Decl. of Shira Perlmutter, ECF 24-3 ...................................................1a

Ex. A, ECF 24-4 ........................................................................8a

Ex. B, ECF 24-5 .......................................................................10a

Dist. Ct. Order Den. Prelim. Inj., ECF 39........................................13a

Mem. Op. Den. Prelim. Inj., ECF 40 ..............................................14a

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHIRA PERLMUTTER,

*Plaintiff*,

v.

Case No. 1:25-cv-01659-TJK

TODD BLANCHE *et al.*,

*Defendants*.

**DECLARATION OF SHIRA PERLMUTTER**

I, Shira Perlmutter, declare as follows:

1.      I am the Register of Copyrights and Director of the U.S. Copyright Office in the Library of Congress.  I was appointed to my position in October 2020 by then-Librarian of Congress, Carla D. Hayden.

2.      From 2012 until my appointment as Register, I was the Chief Policy Officer and Director for International Affairs at the United States Patent and Trademark Office ("USPTO"), where I oversaw policy and international work in all areas of intellectual property including copyright, serving administrations of both parties.  Earlier in my career, I served as the Associate Register for Policy and International Affairs at the U.S. Copyright Office; directed global legal policy for an international trade association; was a consultant on copyright and e-commerce at the World Intellectual Property Organization; headed intellectual property law and policy at AOL Time Warner; was a law professor at the Catholic University of America; and practiced at two private law firms.  I have an AB from Harvard University and a JD from the University of Pennsylvania.

3.      The Library of Congress performs critical legislative functions, such as conducting research and policy studies for members of Congress, advising them on draft legislation, and maintaining records that are confidential to the legislative branch.

4.      Within the Library of Congress, the U.S. Copyright Office registers copyright claims, records information about copyright ownership, provides information to the public, and advises Congress and other parts of the government on copyright law and policy. The Office examines hundreds of thousands of copyright claims each year and receives deposits of works of authorship submitted for registration. These deposits contribute significantly to the Library of Congress's collections.

5.      As Register of Copyrights, by statute, I act under the Librarian of Congress's supervision and direction. Since May 8, 2025, when President Trump fired Librarian of Congress Carla D. Hayden, I have acted under the supervision and direction of Robert R. Newlen, who replaced Dr. Hayden as acting Librarian in accordance with the Library of Congress's regulations.

6.      In my role as Register of Copyrights and Director of the U.S. Copyright Office, I serve as the principal advisor to Congress on national and international copyright matters, testifying upon request, conducting studies and programs, providing impartial expertise on copyright law and policy, administering the U.S. Copyright Act, and leading a workforce of nearly 500 employees. I am statutorily required to perform the following responsibilities (among others):

    a.  examine applications for copyright registration and register or reject claims, 17 U.S.C. § 410;

    b.  advise courts on the impact of inaccurate information in a certificate of registration, *id.* § 411(b);

    c.  maintain records of copyright deposits and registrations, *id.* § 705;

d.  record transfers of copyright ownership, *id.* § 205;

e.  establish regulations for the administration of my functions and duties, subject to the approval of the Librarian of Congress, *id.* § 702;

f.  designate a Mechanical Licensing Collective ("MLC") to administer the mechanical blanket license for musical works and distribute collected royalties to songwriters and music publishers, *id.* § 115(d)(3)(B), and a Digital Licensee Coordinator ("DLC") to represent digital music services in the administration of the license, *id.* § 115(d)(5)(B).

g.  recommend Copyright Claims Officers to serve on the three-member tribunal Copyright Claims Board ("CCB"), the small claims court recently established by the Copyright Office at the direction of Congress; and review the CCB's decisions for abuse of discretion before they can be appealed in district court, *id.* § 1506(x); and

h.  review for legal error decisions by Copyright Royalty Judges, which determine royalty rates, adjust terms, and ensure the distribution of royalties deposited by licensees, no later than 60 days after the date of their final determination, *id.* § 802(f)(1)(D); consult with the Copyright Royalty Judges on legal issues as requested, *id.* § 802(f)(1)(A)(ii); and resolve novel questions of law as requested, *id*. § 802(f)(1)(B).

7.   On May 9, 2025, the U.S. Copyright Office issued in pre-publication format, the long-awaited Part 3 of Copyright and Artificial Intelligence, a report made pursuant to my statutory responsibility to "[c]onduct studies . . . regarding copyright" and "[a]dvise Congress on national and international issues relating to copyright."  17 U.S.C. § 701(b)(1), (b)(4).  This Part, subtitled "Generative AI Training," addressed the use of copyrighted works in the development of generative AI systems.  *See* U.S. Copyright Off., Copyright and Artificial Intelligence Part 3: Generative AI Training (May 2025), https://perma.cc/3J9F-7SQN.  The Report concluded that

some uses of copyrighted works in generative AI training were likely to qualify as "fair use," but some uses were likely to require licensing. Part 4 of the Copyright and Artificial Intelligence report, which will be the final part, remains in progress.

8.    On May 10, 2025, I received an email from Trent Morse stating that, at the direction of President Trump, I was terminated from my position effective immediately.

9.    Specifically, the May 10, 2025 email, *see* Exhibit A, reads:

> Shira,
>
> On behalf of President Donald J. Trump, I am writing to inform you that your position as the Register of Copyrights and Director at [sic] the U.S. Copyright Office is terminated effective immediately.
>
> Thank you for your service.
>
> Trent Morse
> Deputy Director
> Presidential Personnel

10.    I am informed and believe that on May 12, 2025, Brian Nieves and Paul Perkins arrived at the Library of Congress and requested access to the U.S. Copyright Office. Mr. Nieves and Mr. Perkins showed Library staff a letter from the White House that purported to appoint Todd Blanche to serve as the acting Librarian of Congress. *See* Exhibit B. Mr. Nieves and Mr. Perkins also showed Library staff printed versions of emails from Mr. Blanche, in which he purported to appoint Mr. Nieves as acting Principal Deputy Librarian of Congress and Mr. Perkins as acting Register of Copyrights and Director of the U.S. Copyright Office. *See* Exhibit B. Mr. Nieves and Mr. Perkins subsequently left the premises.

11.    To my knowledge, no official at the Library of Congress has recognized Mr. Blanche as the acting Librarian of Congress. Still, the purported appointments of Mr. Blanche, Mr. Nieves, and Mr. Perkins have caused considerable confusion among Library staff, copyright stakeholders,

and the public.  If the conflicting claims to the positions of acting Librarian of Congress and Register of Copyrights are not resolved, staff will not be able to ascertain who is in control of the Library and the Copyright Office, and therefore who supervises and directs their work.

12.     Despite Mr. Perkins's claim that he is Acting Register of Copyrights, I remain Register of Copyrights and therefore am required by law to fulfill my above-described statutory obligations.

13.     I have not received any communication from Library of Congress leadership that purports to terminate my employment as Register of Copyrights.

14.     My statutory duties include many current and near-term responsibilities that Mr. Perkins's claim to serve as Acting Register of Copyrights impedes my ability to faithfully execute, including (among others), the following.  Without an injunction, I will be unable to effectively:

   a.  register copyright claims if the works contain copyrightable subject matter—actions that have significant implications for private rights, including in copyright litigation. Copyright registration is generally a prerequisite to bringing an infringement lawsuit and to obtaining an award of statutory damages and attorneys' fees.  Without an effective and timely registration system, copyright owners will face difficulties in enforcing their rights;

   b.  redesignate an MLC and DLC as required every five years.  The current redesignation process began in January 2024 and remains incomplete;

   c.  appoint a new Copyright Claims Officer, in consultation with the Librarian of Congress, to replace an Officer whose term is ending.  Without a new Officer, the Board will be unable to function effectively;

d.  issue rulemakings that are currently underway, including a forthcoming rulemaking establishing a Group Registration option for Two-Dimensional Artwork, https://www.copyright.gov/rulemaking/gr2d/;

e.  review determinations by the Copyright Royalty Judges for legal error within 60 days after the date on which their final determination is issued;

f.  continue to advise courts on the impact of inaccurate information contained in a certificate of registration, 17 U.S.C. § 411(b); and

g.  issue the final part of the Office's Copyright and Artificial Intelligence report, pursuant to my statutory responsibility to "[c]onduct studies" and "[a]dvise Congress on national and international issues relating to copyright," 17 U.S.C. § 701(b)(1), (b)(4).

15.  For the above-described reasons, Mr. Perkins's claim that he is the acting Register of Copyrights will also impede the Copyright Office's ability to perform its work as authorized by Congress and critical to copyright owners and users.

16.  If the U.S. Copyright Office loses its credibility as a reliable administrator of the copyright system and non-partisan advisor to Congress, my ability to fulfill the statutory duties of the Register of Copyrights will be severely compromised.

I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Alexandria, Virginia
June 10, 2025

Shira Perlmutter

# EXHIBIT A

**From:** "Morse, Trent M. EOP/WHO" ███████████████
**Date:** May 10, 2025 at 2:43:15 PM EDT
**To:** "Perlmutter, Shira" ████████████
**Cc:** "Gor, Sergio N. EOP/WHO" ███████████
**Subject: Message from PPO**

> **CAUTION:** This email message has been received from an external source. Please use caution when opening attachments, or clicking on links.

Shira,

On behalf of President Donald J. Trump, I am writing to inform you that your position as the Register of Copyrights and Director at the U.S. Copyright Office is terminated effective immediately.

Thank you for your service.

Trent Morse
Deputy Director
Presidential Personnel

# EXHIBIT  B

**Perkins, Paul (ODAG)**

| | |
|---|---|
| **From:** | Blanche40, Todd (ODAG) |
| **Sent:** | Sunday, May 11, 2025 5:55 PM |
| **To:** | Perkins, Paul (ODAG); Nieves, Brian (ODAG) |
| **Subject:** | Appointments. |
| **Attachments:** | Todd Blanche Acting Librarian of Congress_signed 5.9.25.pdf |

Paul and Brian,

Pursuant to the attached .pdf, in my capacity as the Acting Librarian of Congress, I designate Paul Perkins as the Acting Register of Copyrights and Acting Director of the U.S. Copyright Office. I designate Brian Nieves as the Acting Principal Deputy Librarian of the Library of Congress.

Formal paperwork will be forthcoming.

Thank you for agreeing to help in this important effort,

Todd

Todd Blanche
Deputy Attorney General

---

**From:** Gor, Sergio N. EOP/WHO
**Sent:** Saturday, May 10, 2025 12:31:00 AM
**To:** Blanche40, Todd (ODAG)
**Subject:** [EXTERNAL]

Sent from my iPhone

1

11a

**THE WHITE HOUSE**

WASHINGTON

May 9, 2025

MEMORANDUM FOR TODD BLANCHE
            Deputy Attorney General

Pursuant to the Constitution and the laws of the United States,
including section 3345(a) of title 5, United States Code, you
are directed to perform the duties of the office of the
Librarian of Congress.



**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SHIRA PERLMUTTER,

       *Plaintiff*,

    v.

TODD BLANCHE et al.,

       *Defendants*.

Civil Action No. 25-1659 (TJK)

## ORDER

For the reasons set forth in the Court's accompanying Memorandum Opinion, it is hereby

**ORDERED** that Plaintiff Shira Perlmutter's Motion to Dismiss, ECF No. 24, is **DENIED**.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: July 30, 2025

13a

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SHIRA PERLMUTTER,

          *Plaintiff*,

     v.

TODD BLANCHE et al.,

          *Defendants*.

Civil Action No. 25-1659 (TJK)

## <u>MEMORANDUM OPINION</u>

On May 10, 2025, Shira Perlmutter was purportedly fired by President Trump from her position as Register of Copyrights and Director of the U.S. Copyright Office at the Library of Congress. Arguing that this attempt to terminate her was unlawful, she sued a few weeks later and then moved for a preliminary injunction, seeking to prevent her removal. The Court will deny her motion because she has not shown that she will be irreparably harmed without this relief.

**I.    Background**

    **A.    Factual Background**

On May 8, 2025, President Trump removed Carla D. Hayden as Librarian of Congress. ECF No. 24-3 ¶ 5. Two days later, acting through another official, he similarly purported to remove Perlmutter as head of the Copyright Office via an email that terminated her "effective immediately." *Id.* ¶ 9. And the next day, Deputy Attorney General Todd Blanche—whom President Trump had "directed to perform the duties of the office of the Librarian of Congress" following the former Librarian's removal, ECF No. 24-5 at 3—"designate[d] Paul Perkins" to replace Perlmutter "as the Acting Register of Copyrights and Acting Director of the U.S. Copyright Office," *id.* at 2. For her part, Perlmutter maintains that she "remain[s] Register of Copyrights" and that

14a

she has "not received any communication from Library of Congress leadership that purports to terminate [her] employment as Register of Copyrights." *Id.* ¶¶ 12–13.

###    B.    Procedural History

Perlmutter claims that "the purported appointments of" Blanche and Perkins "have caused considerable confusion among Library staff, copyright stakeholders, and the public" and will "impede the Copyright Office's ability to perform its work." ECF No. 24-3 ¶¶ 11, 15. So on May 22, 2025, she sued, bringing two counts challenging her purported removal and the President's appointment of Blanche as the Acting Librarian of Congress. ECF No. 1 ¶¶ 26–36. She also moved for a temporary restraining order. ECF No. 2. On May 28, the Court denied her motion, concluding that she had not shown that she would suffer irreparable harm without that relief. ECF No. 15 at 36–52. Then, on June 10, Perlmutter moved for a preliminary injunction, ECF No. 24, and the Court held a hearing on the motion on July 23.

##    II.    Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. "[P]laintiffs bear the burden of persuasion on all four preliminary injunction factors." *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014). Thus, "failure to show a likelihood of irreparable harm" is, "standing alone, sufficient to defeat the motion." *Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87, 96 (D.D.C. 2020) (quoting *Navajo Nation v. Azar*, 292 F. Supp. 3d 508, 512 (D.D.C. 2018)).

The D.C. Circuit "has set a high standard for irreparable injury." *Chaplaincy of Full Gospel*

*Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). "[T]he injury must be both certain and great; it must be actual and not theoretical." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam). "The party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (cleaned up). In other words, "[t]he movant must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Id.* Furthermore, "the movant must show that the alleged harm will *directly result* from the action which the movant seeks to enjoin." *Id.* (emphasis added). Finally, the injury must be truly "irreparable"—i.e., "beyond remediation." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.

## III.  Analysis

The Court's analysis begins and ends with irreparable harm. Perlmutter argues that her removal from office—even if only temporary—is irreparable harm that can only be prevented by a preliminary injunction. The Court is unconvinced, so it will deny her motion.

The Supreme Court has instructed that the loss of a job and the harms that go along with it generally "will not support a finding of irreparable injury, however severely they may affect a particular individual." *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974). "That is particularly true in cases involving government employment." *English v. Trump*, 279 F. Supp. 3d 307, 334 (D.D.C. 2018). Indeed, the *Sampson* Court emphasized "that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" 415 U.S. at 83 (quoting *Cafeteria & Restaurant Workers Union, Local 473, A.F.L.—C.I.O. v. McElroy*, 367 U.S. 886, 896 (1961)). And it noted that, even outside the government context, courts of equity are "traditional[ly] unwilling[]" "to enforce contracts for personal service either at the behest of the employer or of the employee." *Id.* The Court also relied on "the historical denial of all equitable

relief by the federal courts" when a plaintiff sought, "by injunction, [to] restrain an executive of-

ficer from making a wrongful removal of a subordinate appointee." *Id.* at 71, 83 (quoting *White*

*v. Berry*, 171 U.S. 366, 377 (1898)). For these reasons, preliminary equitable intervention in gov-

ernment-personnel cases is disfavored, and the plaintiff must at least demonstrate that her case

involves a "genuinely extraordinary situation" to obtain interim relief. *Id.* at 92 n.68. Such a

showing must establish that "the circumstances surrounding [her] discharge, together with the re-

sultant effect on [her], . . . so far depart from the normal situation that irreparable injury might be

found." *Id.* Only then will she have shown "irreparable injury sufficient in kind and degree to

override these factors cutting against the general availability of preliminary injunctions in Gov-

ernment personnel cases." *Id.* at 84.[1]

Perlmutter argues that this case presents a "genuinely extraordinary situation" for three

reasons: (1) she has been deprived of her "'statutory right to function' as Register of Copyrights,"

ECF No. 24-2 at 34; (2) she "remains Register of Copyrights and is therefore required to fulfill her

statutory duties," *id.* at 37; and (3) "[i]rreparable harm to the Library of Congress and Copyright

Office will frustrate [her] ability to resume her duties," *id.* at 39. As explained below, each of

these arguments fails.

### A.    Perlmutter's Temporary Loss of Her "Statutory Right to Function" While the Court Resolves the Merits of Her Case Is Not an Irreparable Harm

Perlmutter first argues that this case warrants preliminary injunctive relief because her

---

[1] At times, Perlmutter appears to suggest that the importance of her position should play a role in the Court's analysis of whether this situation is "genuinely extraordinary." *E.g.*, ECF No. 24-2 at 32. Perhaps this is a response to the *Sampson* plaintiff's status as a "probationary employee." 415 U.S. at 62. The reasoning in *Sampson*, though, did not appear to turn on the seniority of the employee. Thus, the Court assigns little weight to this factor. To be sure, such a consideration is not irrelevant. But it does little to show that "the circumstances surrounding [her] discharge, together with the resultant effect on [her], . . . so far depart from the normal situation that irreparable injury might be found." *Sampson*, 415 U.S. at 92 n.68.

removal deprives her of her "statutory right to function" as the Register of Copyrights. ECF No. 24-2 at 32, 34 (quotation omitted). Not so. In the first case purporting to recognize such a right, the court found that the plaintiffs had shown irreparable harm because, without a preliminary injunction, the court could not reinstate them to their positions later on—because the positions would no longer exist. *See Berry v. Reagan*, No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983). Nothing similarly irremediable is at stake here.

In *Berry*, President Carter had appointed the plaintiffs, with the advice and consent of the Senate, to the Commission on Civil Rights. *Id.* at *1. That body did not have a fixed term for members; by statute, it expired 60 days after the date established for submission of its final report, September 30, 1983. *Id.* at *1 n.1. The Commission apparently did not meet this deadline, leaving it racing to finish the report before it dissolved on November 29. *Id.* at *5. But President Reagan fired the plaintiffs before the Commission submitted its report, so they sued. *Id.* at *1. After concluding that the plaintiffs were likely to succeed on the merits, the court found that they had established irreparable injury to "their statutory right to function as Commissioners." *Id.* at *5. According to that court, "[t]he irreparable nature of this injury is evident by the obviously disruptive effect the *denial* of preliminary relief will likely have on the Commission's final activities." *Id.* Because the plaintiffs' removal deprived the Commission of a quorum, it lost its "ability to fulfill its mandate" to issue a final report before it expired. *Id.* These circumstances, the court held, satisfied the *Sampson* test. *Id.*

Even putting aside that *Berry* is not binding on this Court, it does not provide Perlmutter a winning argument that she will likely suffer irreparable harm here for several reasons. First, as noted above, the harm to the plaintiff Commissioners was irreparable because, without a preliminary injunction, the Commission itself would have expired and the Court could not have reinstated

them to their positions.  Here, to the extent that Perlmutter argues that she suffers harm solely from not functioning as the Register of Copyrights, she provides no reason to think that any such harm cannot be remediated in the ordinary course by returning her to her position if she prevails on the merits.  She argues that later reinstatement is insufficient because she is being sidelined *now* and can never reclaim this lost time.  ECF No. 24-2 at 34–35.  And to demonstrate, she notes that the Copyright Office is in the middle of producing a multi-volume report on copyright and artificial intelligence for Congress and other stakeholders and that her ability to "complete" that report "will be forfeited during the months-long pendency of this lawsuit."  *Id.* at 35.  The *Berry* court, however, did not rely on this type of reasoning.  And more fundamentally, this "lost time" argument proves too much because it would establish irreparable harm in *every* wrongful-termination case.

Perlmutter also gestures at a related argument when she asserts that her removal and Perkins's appointment will have an irreparable effect on her because they will prevent her from "return[ing] to her position as it currently exists."  ECF No. 24-2 at 39.  But she does not show that Defendants' actions, if not enjoined, will likely irreparably alter her position.  So those fears are vague and speculative, not "certain and great."  *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (quotation omitted).

Second, although the court in *Berry* appears to have assumed that alleged injury to the Commission was identical to alleged injury to the plaintiff Commissioners—an assumption with which the Court disagrees for reasons explained later—the situation in *Berry* was very different than the one here.  In *Berry*, denying the requested injunction would have shut down the Commission before it fulfilled its mandate.  So the Commission itself could not have continued to function—and indeed, could never function again—absent preliminary relief.  Here, on the other hand, while Perlmutter claims that Defendants' actions "impede[]" *her* from carrying out the

responsibilities of the Copyright Office, ECF No. 24-3 ¶ 14, she does not explain why the Copyright Office cannot continue to operate under Perkins's temporary leadership. *Cf. English*, 279 F. Supp. 3d at 355 (finding that a removed officer had not shown irreparable harm where the agency would "not be shuttered" because it could "continue[] to operate" under the leadership of the officer's purported replacement). For example, though Perlmutter claims that *she* will be temporarily unable to complete the report on copyright and artificial intelligence absent an injunction, she does not explain why the *Copyright Office* could not do so without her at the helm. *See* ECF No. 24-3 ¶ 14(g). So even if the Court could consider some harms to the agency in considering irreparable harm to Perlmutter, she has not shown that the type of harm the *Berry* court addressed is present here.

Still, moving past *Berry* itself, Perlmutter identifies six more recent decisions from this district in which judges have concluded, at least in part based on *Berry*, that even the "temporary" "deprivation of a senior government official's 'statutory right to function' . . . is both significant and irreparable." ECF No. 24-2 at 34; *id.* at 32–33 (collecting cases). These cases get her no further.

One of them—*Aviel v. Gor* (*Aviel I*), No. 25-cv-778, 2025 WL 1009035 (D.D.C. Apr. 4, 2025)—is inapposite for substantially the same reasons as *Berry*. In that case, the district court found irreparable harm because "the very survival of [the removed officer's] organization [was] at stake." *Id.* at *10. So without an injunction, there would be no agency for the officer to return to after the case was resolved. But to repeat, Perlmutter has not shown that the existence of the Copyright Office is at stake, or that her position will likely be irreparably changed without an injunction. In another—*LeBlanc v. United States Privacy & Civil Liberties Oversight Board*—the agency, like the Commission in *Berry*, would have been deprived of a quorum, preventing it from

carrying out many of its responsibilities.  No. 25-cv-542, 2025 WL 1454010, at *31 (D.D.C. May 21, 2025).  Yet again, Perlmutter has not shown that the Copyright Office will grind to a halt without her.[2]  True, in the other four cases Perlmutter cites, judges found irreparable harm even though the plaintiff did not make a showing similar to *Berry*, *Aviel I*, or *LeBlanc*.  But respectfully, for that reason, the Court does not find their reasoning persuasive.  *See Brehm*, 2025 U.S. Dist. LEXIS 71326, at *7–10 (declining to follow some cases cited by Perlmutter since "the viability of a 'statutory right to function' claim is uncertain" and, "[t]o the extent courts have accepted such a claim, it has been on different facts").

On top of all that, what is striking about these four cases—and also about *LeBlanc*—is what happened next: either the D.C. Circuit or the Supreme Court stayed the injunctions entered by the district courts.  In three, either the Circuit or the Supreme Court stayed a preliminary injunction directly.[3]  In the other two, the decision cited by Perlmutter was an unappealable temporary restraining order, but a subsequent permanent injunction entered by the same court was stayed.[4]  And while Perlmutter disputes the meaning of these developments in the appellate courts,

---

[2] Similarly, in *LeBlanc*, the court noted that the removed officer was "appointed by the President, with the advice and consent of the Senate, to a nonpartisan, multimember board of experts."  2025 WL 1454010, at *30.  Here, by contrast, Perlmutter was appointed by the Librarian, not the President with the advice and consent of the Senate.  17 U.S.C. § 701(a).  At least one court in this district has held that such a distinction minimizes the officer's injury.  *Brehm v. Marocco*, No. 25-cv-660, 2025 U.S. Dist. LEXIS 71326, at *8 (D.D.C. Mar. 11, 2025) (finding no irreparable harm from an officer's removal in part because the officer "was not appointed by the U.S. President or confirmed by the Senate").

[3] *LeBlanc v. U.S. Priv. & C.L. Oversight Bd.*, No. 25-cv-542, 2025 WL 1454010 (D.D.C. May 21, 2025), *stayed*, No. 25-5197, 2025 WL 1840591 (D.C. Cir. July 1, 2025) (per curiam); *Grundmann v. Trump*, 770 F. Supp. 3d 166 (D.D.C. 2025), *stayed*, No. 25-5165, 2025 WL 1840641 (D.C. Cir. July 3, 2025) (per curiam); *Wilcox v. Trump*, 775 F. Supp. 3d 215 (D.D.C. 2025), *stayed sub nom. Trump v. Wilcox*, 145 S. Ct. 1415 (2025).

[4] *Harris v. Bessent*, 775 F. Supp. 3d 164 (D.D.C. 2025), *stayed sub nom. Wilcox*, 145 S. Ct. 1415; *Dellinger v. Bessent* (*Dellinger I*), 768 F. Supp. 3d 33 (D.D.C. 2025), *stayed by Dellinger*

this Court would have to blind itself to them to assign the weight to these cases that she urges.  In the end, none of the injunctions stuck.  And no precedent of the Supreme Court or the D.C. Circuit has recognized that an official's temporary loss of a "statutory right to function" is an irreparable harm in a situation like Perlmutter's.

The reasoning behind the orders staying the injunctions, even if not conclusive here, is instructive as to whether Perlmutter is suffering the kind of harm warranting preliminary injunctive relief, especially in light of the balance of the equities.  For example, in considering the allegedly unlawful removal of members of the National Labor Relations Board and the Merit Systems Protection Board, the Supreme Court held "that the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025).  In other words, the Court concluded that an officer's temporarily "being unable to perform her statutory duty" was not an irreparable harm—or at least, not a harm that outweighed the corresponding risk of harm to the Executive such that an injunction was warranted. *Id.*  This makes sense in light of *Sampson*'s holding that a plaintiff "at the very least must make a showing of irreparable injury sufficient in kind and degree to override the[] factors cutting against the general availability of preliminary injunctions in Government personnel cases." 415 U.S. at 84.  And the D.C. Circuit has taken this approach as well.  In a recent case about the alleged unlawful removal of the Special Counsel, it held that "circumstances cut" against an injunction when, "[a]t worst," the officer "would remain out of office for a short period of time" yet "the potential injury to the government of both having its designated [officer] sidelined and unable to

---

*v. Bessent* (*Dellinger II*), No. 25-5052, 2025 WL 887518 (D.C. Cir. Mar. 10, 2025) (per curiam), *vacated and remanded*, No. 25-5052, 2025 WL 935211 (D.C. Cir. Mar. 27, 2025) (per curiam).

act while also having to try and unravel [the removed officer]'s actions is substantial." *Dellinger II*, 2025 WL 887518, at *4.

So even assuming Perlmutter is right that her removal was unlawful, this reasoning suggests that an injunction is not warranted here. "At worst, [she] would remain out of office for a short period of time" while the Court resolves the merits. *Dellinger II*, 2025 WL 887518, at *4. And as the Supreme Court suggested, even if Perlmutter has been "wrongfully removed," temporarily "being unable to perform her statutory duty," without more, is not a harm that justifies a preliminary injunction, given the similar balance of the equities here. *Wilcox*, 145 S. Ct. at 1415; *cf. Sampson*, 415 U.S. at 84.

Perlmutter disputes the application of these appellate decisions and argues that they are limited to circumstances where the Government is likely to succeed on the merits.[5] Not so. In *Wilcox*, for example, the Supreme Court addressed the harm that "a *wrongfully* removed officer faces from being unable to perform her statutory duty." 145 S. Ct. at 1415 (emphasis added). Although the Court also suggested that the Government was likely to prevail on one aspect of the merits, nothing about its brief consideration of irreparable harm and the balance of the equities

---

[5] Perlmutter also argues that *Wilcox* is "non-precedential." ECF No. 34 at 26; *see also Aviel I*, 2025 WL 1009035, at *10 (describing *Dellinger II* as "non-precedential"). In their opposition, Defendants do not suggest otherwise. Still, since briefing on Perlmutter's motion and the hearing concluded, the Supreme Court has clarified that its stay decisions, though "not conclusive as to the merits . . . inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, No. 25A11, 2025 WL 2056889, slip op. at 1 (U.S. July 23, 2025). As noted above, the Court's decision here is informed by the reasoning in *Wilcox*. And *Boyle* itself only adds to the pile of similar authority. In *Boyle*, the Court granted a stay pending appeal of a district court's permanent injunction preventing the removal of members of the Consumer Product Safety Commission. *Id.* The Court explained that "[t]he application is squarely controlled by" *Wilcox* and concluded that a stay was warranted because, as there, "'the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty.'" *Id.* (quoting *Wilcox*, 145 S. Ct. at 1415).

appeared to turn on its assessment of the merits. *See id.* But even if it did, *Dellinger II*'s discussion did not. There, in a more developed analysis, the Circuit explicitly "assume[d]" that the officer's "removal [was] statutorily ultra vires" and that such "removal constitute[d] a cognizable injury." 2025 WL 887518, at *4. But it still determined that "that does not mean such injury is irreparable and weighs in [the officer's] favor." *Id.* Instead, when the injury is "remain[ing] out of office for a short period of time," "circumstances cut" against an injunction, even if the officer's removal "deprive[s] [her] of the statutory right to function in office." *Id.* (quotation omitted).[6] So too here.

Perlmutter also argues that the D.C. Circuit's handling of *Aviel* "confirm[s]" that *Wilcox* does not apply here because *she*—rather than Defendants—is likely to succeed on the merits. ECF No. 24-2 at 35. More than that, she appears to read the Circuit to suggest that, as long as she shows such a likelihood, she is entitled to a preliminary injunction. *Id.* at 36. She points out that Judge Katsas, in a concurring statement joined by Judge Pillard, noted that the Supreme Court's "merits ruling" in *Wilcox* "rested on the proposition that the removals at issue . . . were likely lawful" and that the Court did not disturb a prior D.C. Circuit decision suggesting that "reinstatement" is "an appropriate remedy" when an officer is unlawfully removed. *Aviel v. Gor* (*Aviel II*), No. 25-5105, 2025 WL 1600446, at *2 n.2 (D.C. Cir. June 5, 2025) (Katsas, J., concurring). Based on these snippets, Perlmutter seems to argue that, for purposes of preliminary relief, "reinstatement is an appropriate remedy if the removals at issued were likely unlawful," full stop—somehow skipping over (or implicitly satisfying) her burden to show irreparable harm. ECF No. 35 at 4.

Perlmutter reads far too much into *Aviel II*. First, Judge Katsas's point about the availability of reinstatement as a remedy in officer-removal cases generally says nothing about Perlmutter's

---

[6] Perlmutter suggests that *Dellinger II* is limited to cases in which an appeal has been expedited. ECF No. 24-2 at 36. But nothing in the opinion implies such a limitation.

entitlement to that specific remedy now, other than that it remains available if she satisfies the requirements for a preliminary injunction. Second, nothing about Judge Katsas's statement—which did not even address irreparable harm[7]—or *Aviel II* purports to upend those requirements or the longstanding precedent in this jurisdiction that "[a] movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297. Thus, even assuming Perlmutter's removal was unlawful, she must still separately show such harm to obtain a preliminary injunction. In fact, not long before *Aviel II*, the Circuit reaffirmed this commonsense conclusion in *Dellinger II*, when it assumed that the Special Counsel's removal was unlawful but still found that he did not show sufficient harm on a statutory-right-to-function theory to warrant a preliminary injunction reinstating him. 2025 WL 887518, at *4.

For these reasons, the Court concludes that Perlmutter's asserted loss of her "statutory right to function" is not a genuinely extraordinary situation such that her temporary removal is irreparable harm—or at least, harm that outweighs any corresponding risk of harm to the Government such that the balance of the equities tips in her favor.

### B. Perlmutter's Temporary Inability to Perform Her Statutory Duties Is Not an Irreparable Harm

Next, Perlmutter argues that this case presents a genuinely extraordinary situation because she "remains Register of Copyrights and is therefore required to fulfill her statutory duties." ECF No. 24-2 at 37. There is little if any difference between this theory of harm and her first. Perlmutter

---

[7] Indeed, the only judge to discuss irreparable harm was Judge Rao, who explicitly rejected Perlmutter's statutory-right-to-function theory of harm because, in her view, an officer "possesses no private right in the powers of her office or the policy direction of the agency." *Aviel II* at *6 (Rao, J., dissenting) (citing *Raines v. Byrd*, 521 U.S. 811, 821 (1997)).

distinguishes the two by arguing that the first addresses her right to function and the second addresses her obligation to do so.  But at bottom, both are ways of claiming that she is suffering irreparable harm because she cannot perform the job of Register of Copyrights and Director of the Copyright Office.  And as the Court has already explained, Perlmutter's asserted inability to do that job temporarily while this lawsuit proceeds is not enough to show irreparable harm.

### C.    To Meet Her Burden of Showing Irreparable Harm, Perlmutter Cannot Rely on Harms to the Library of Congress or the Copyright Office

Finally, Perlmutter claims that her removal is genuinely extraordinary because Defendants' actions inflict "institutional harm to the Library of Congress and U.S. Copyright Office."  ECF No. 24-2 at 39.  But injuries to third parties are not a basis to find irreparable harm.  *Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203, 213 (D.D.C. 2012); *Winter*, 555 U.S. at 20 (noting that a party seeking preliminary injunctive relief must show "that *he* is likely to suffer irreparable harm in the absence of preliminary relief" (emphasis added)).  Indeed, in *Sampson*, the Court emphasized that "irreparable injury" can be found only by considering "the circumstances surrounding an employee's discharge, together with the resultant effect *on the employee*."  415 U.S. at 92 n.68 (emphasis added).  So institutional harms to the Library or the Copyright Office, divorced from how those harms impact Perlmutter personally, cannot help her meet her burden.

Perlmutter argues that institutional harms are relevant because, in cases like *Wilcox*, the Supreme Court considered harms to the office of the President, not just harms to President Trump individually.  ECF No. 34 at 22.  But in those cases, the defendant officials were sued in their official capacities.  So when they moved to stay the injunctions issued by the lower courts, they had the burden to show that they would be irreparably harmed *in their official capacities* absent a stay.  In such circumstances, it makes sense to consider harm to their offices.  Here, on the other, Perlmutter does not appear to dispute that she is suing in her personal capacity.  ECF No. 15 at

48–49.  Thus, unlike a defendant sued in his official capacity, Perlmutter cannot rely on purported institutional harms to the Library or Copyright Office to show irreparable harm to her.

Undeterred, Perlmutter points to cases in which courts have considered harms to agencies in addressing whether a removed officer has suffered irreparable harm.  *See* ECF No. 24-2 at 39–40.  But those cases do not stand for the general proposition that a removed officer can appropriate harm to an agency in asserting her own irreparable harm.  Instead, many merely recognize, as discussed above, that an officer's removal may threaten irreparable harm to her when it is likely the agency or office will no longer exist when the case is resolved.  *See, e.g.*, *Aviel I*, 2025 WL 1009035, at *10–11; *see also English*, 279 F. Supp. 3d at 334–35 (discussing this theory of irreparable harm).  In those cases, courts concluded that such circumstances have an irreparable "resultant effect" on the removed officer because, without an injunction, there will be no position for the officer to return to should she win on the merits.  *Sampson*, U.S. at 92 n.68; *Aviel I*, 2025 WL 1009035, at *10–11.  But as discussed, nothing in the record suggests that the existence of the Copyright Office is threatened or that Perlmutter's position will irreparably change in some way if it is temporarily held by Perkins.[8]

Finally, even putting aside that these purported institutional harms are not Perlmutter's to invoke, they fail on their own terms.  She claims that the Copyright Office will not be able to "perform its statutory role as a neutral advisor to Congress if an Executive Branch official controls the Library of Congress's operations."  ECF No. 24-2 at 40.  But this concern is based on speculation at this point, and no representative of Congress has sought to intervene in this case to protect these interests that Perlmutter says are in peril.  Besides, for support, she mostly cites to provisions

---

[8] To the extent that some courts may have permitted plaintiffs to establish irreparable harm by pointing to harms suffered solely by their agencies, the Court is not bound by those decisions and, for the reason explained above, respectfully disagrees with them.

of the U.S. Code governing the Congressional Research Service.  *See* ECF No. 24-2 at 40 (citing 2 U.S.C. § 166).  But that Service is "a separate department in the Library of Congress" untethered to the Copyright Office.  § 166(a).  Furthermore, the D.C. Circuit has held that, as a matter of constitutional interpretation, the Library, at least in its role related to copyright matters, is part of the *Executive*, not the Legislative, Branch.  *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1342 (D.C. Cir. 2012).  And the Librarian—who appoints the Register of Copyrights—is appointed by the President with the advice and consent of the Senate, and she is removable by the President at will.  *Id.* at 1341.  So Executive influence over the Copyright Office appears to be a feature, not a bug, of this atypical arrangement.  *See Kennedy v. Braidwood Mgmt., Inc.*, 145 S. Ct. 2427, 2443 (2025) ("The prerogative of at-will removal of a subordinate, then, often carries with it the power to supervise and direct that subordinate.").

## IV.    Conclusion

For all the above reasons, the Court will deny Perlmutter's Motion for a Preliminary Injunction, ECF No. 24.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: July 30, 2025