[NOT YET SCHEDULED FOR ORAL ARGUMENT]

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

SHIRA PERLMUTTER,

      Plaintiff-Appellant,

      v.

TODD BLANCHE, et al.,

      Defendants-Appellees,

No. 25-5285

## OPPOSITION TO APPELLANT'S EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

BRETT A. SHUMATE
  *Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
DANIEL AGUILAR
ASHLEY C. HONOLD
BENJAMIN HAYES
  *Attorneys*
  *Civil Division, Room 7261*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 353-9018*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

## A.    Parties and Amici

Plaintiff-Appellant is Shira Perlmutter.  Defendants-Appellees are Todd Blanche, Paul Perkins, Sergio Gor, Trent Morse, the Executive Office of the President, and Donald J. Trump.

## B.    Rulings Under Review

The rulings under review are the Order, Doc. 39 (July 30, 2025), App.13a, and the Memorandum Opinion, Doc. 40 (July 30, 2025), App.14a, denying plaintiff's motion for a preliminary injunction in *Perlmutter v. Blanche*, No. 25-cv-1659 (D.D.C.) (Kelly, J.).  The district court's opinion is available at *Perlmutter v. Blanche*, Civ. 25-cv-1659 (TJK), 2025 WL 2159197 (D.D.C. July 30, 2025).

## C.    Related Cases

This case has not previously been before this Court.  Counsel for Defendants-Appellees are unaware of any other related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

*/s/ Ashley C. Honold*
Ashley C. Honold

# TABLE OF CONTENTS

**Page**

GLOSSARY

INTRODUCTION .......................................................................................... 1

STATEMENT ............................................................................................... 3

    A.    Statutory Background .................................................. 3

    B.    Factual Background and Prior Proceedings ........................... 6

ARGUMENT ................................................................................................ 10

I.    Plaintiff Is Unlikely to Prevail on Appeal ...................................... 10

II.    Plaintiff Cannot Demonstrate Irreparable Harm or that the
Remaining Factors Favor an Injunction ....................................... 21

CONCLUSION ............................................................................................. 27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.,*
  64 F.4th 1354 (D.C. Cir. 2023) ............................................................ 22

*Auth. of the President to Remove the Staff Dir. of the Civil Rights Comm'n & Appoint an Acting Staff Dir.,*
  25 Op. O.L.C. 103 (2001) .................................................................... 19

*Aviel v. Gor*:
  No. 25-cv-778, 2025 WL 1009035 (D.D.C. Apr. 4, 2025) ............... 8, 24
  No. 25-5105, 2025 WL 1600446 (D.C. Cir. June 5, 2025) ........... 20, 26

*Barnes v. Kline,*
  759 F.2d 21 (D.C. Cir. 1984), *judgment vacated sub nom.*
  *Burke v. Barnes*, 479 U.S. 361 (1987) ............................................... 24

*Chaplaincy of Full Gospel Churches v. England,*
  454 F.3d 290 (D.C. Cir. 2006) ............................................................ 21

*Dellinger v. Bessent,*
  No. 25-5052, 2025 WL 887518 (D.C. Cir. Mar. 10, 2025) ....... 22, 23, 27

*Dep't of Energy—Vacancies (42 U.S.C. § 7342)—Vacancy Act (5 U.S.C. §§ 3345-3349)—De Facto Offs.,*
  2 Op. O.L.C. 113 (1978), https://perma.cc/DC2T-4LS7 ................. 18-19

*eBay Inc. v. MercExchange, LLC,*
  547 U.S. 388, 391 (2006) .................................................................... 22

*Eltra Corp. v. Ringer,*
  579 F.2d 294 (4th Cir. 1978) ......................................................... 16, 17

*Ethnic Emps. of Library of Cong. v. Boorstin,*
  751 F.2d 1405 (D.C. Cir. 1985) .......................................................... 15

*Free Enter. Fund v. Public Co. Acct. Oversight Bd.,*
  561 U.S. 477 (2010) ............................................................................ 12

*Grundmann v. Trump,*
770 F. Supp. 3d 166 (D.D.C. 2025), *stayed per curiam,*
No. 25-5165, 2025 WL 1840641 (D.C. Cir. July 3, 2025) .................. 23

*Haddon v. Walters*:
836 F. Supp. 1 (D.D.C. 1993) ........................................... 16
43 F.3d 1488 (D.C. Cir. 1995) ..................................... 15, 16

*Harris v. Bessent,*
775 F. Supp. 3d 164 (D.D.C. 2025), *stayed,*
*Trump v. Wilcox,* 145 S. Ct. 1415 (2025) ........................... 23

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.,*
684 F.3d 1332 (D.C. Cir. 2012) ..................... 2, 6, 9, 11, 12, 13, 14, 25

*John Doe Co. v. CFPB,*
849 F.3d 1129 (D.C. Cir. 2017) .......................................... 10

*Kuretski v. Commissioner,*
755 F.3d 929 (D.C. Cir. 2014) .......................................... 17

*Lamie v. U.S. Trustee,*
540 U.S. 526 (2004) ...................................................... 15

*Medical Imaging & Tech. All. v. Library of Cong.,*
103 F.4th 830 (D.C. Cir. 2024) ....................... 5, 6, 12-13, 13, 14, 20

*Nken v. Holder,*
556 U.S. 418 (2009) ...................................................... 10

*Power of the President to Designate Acting Member*
*of the Fed. Home Loan Bank Bd.,*
1 Op. O.L.C. 150 (1977) ................................................. 19

*Sampson v. Murray,*
415 U.S. 61 (1974) .................................................. 21, 26

*Snyder v. United States,*
603 U.S. 1 (2024) ....................................................... 15

*Temporary Presidential Designation of Acting Bd. Members of Inter-Am. Found. & U.S. Afr. Dev. Found.*,
49 Op. O.L.C. ___ (Mar. 14, 2025) ................................ 18, 19

*Trump v. Boyle*,
145 S. Ct. 2653 (2025) ...................................... 2, 22

*Trump v. Wilcox*,
145 S. Ct. 1415 (2025) ...................................... 2, 8, 22, 27

*Wilcox v. Trump*,
775 F. Supp. 3d 215 (D.D.C. 2025) .................... 23

*Williams v. Phillips*,
482 F.2d 669 (D.C. Cir. 1973) ........................ 20

**U.S. Constitution:**

Art. II, § 3 ...................................................... 18

**Statutes:**

Act of Apr. 24, 1800, ch. 37, § 5, 2 Stat. 55, 56 ........................ 4

Act of Jan. 26, 1802, ch. 2, 2 Stat. 128 ........................... 4, 5, 12

Act of Feb. 19, 1897, ch. 265, 29 Stat. 538, 545 ..................... 6

Federal Vacancites Reform Act,
5 U.S.C. §§ 3345-3349d ....................................... 3
5 U.S.C. § 3345(a) ........................................... 3
5 U.S.C. § 3345(a)(2) ..................................... 1, 3, 11
5 U.S.C. § 3346(a)(1) ...................................... 4

2 U.S.C. § 136 .............................................. 4

2 U.S.C. § 136-1(a) ........................................ 2, 4, 12, 25

2 U.S.C. § 166 ............................................ 17

2 U.S.C. § 181(b)(1) ............................................................ 17

5 U.S.C. § 104 ........................................................... 11, 16

5 U.S.C. § 104(1) .................................................................. 3

5 U.S.C. § 105 ........................................................... 3, 11

5 U.S.C. § 701(b) ............................................................... 15

17 U.S.C. § 701(a) ............................................................... 6

17 U.S.C. § 701(e) ..................................................... 6, 13, 15

17 U.S.C. § 702 ........................................................... 6, 13

17 U.S.C. § 708 ................................................................... 6

42 U.S.C. § 2000e-16(a) .................................................... 16

**Legislative Materials:**

29 Cong. Rec. 318 (1896) .................................................... 5

**Other Authorities:**

R.R. Bowker, *The American National Library*,
   21 Library J. 357 (1896) ................................................... 5

John Y. Cole, *For Congress and the Nation: A Chronological
   History of the Library of Congress* (1979) ......................... 5

Library of Cong., *George Watterston (1783-1854): 3rd
   Librarian of Congress 1815-1829*,
   https://perma.cc/E2YK-NN4W .......................................... 26

Library of Cong., *Librarians of Congress, 1802-1974* (1977).................... 4

Memorandum from Walter Dellinger, Assistant Att'y Gen.,
   Off. of Legal Couns., to Neil Eggleston, Assoc. Couns.
   to the President, *Re: Appointment of an Acting Staff
   Director of the United States Commission on Civil Rights*
   (Jan. 13, 1994) ...................................................................................... 19

Theodore Roosevelt, Message to the Senate and the House
   of Representatives (Dec. 3, 1901),
   https://perma.cc/6XPV-JQ53 ................................................................ 5

U.S. House of Representatives, *Parliamentarian of the House,*
   https://perma.cc/B6NM-3EZY ............................................................ 12

U.S. House of Representatives, *Sergeant at Arms,*
   https://perma.cc/R6HD-D6VF ............................................................ 12

## GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| FOIA | Freedom of Information Act |
| FVRA | Federal Vacancies Reform Act |

## INTRODUCTION

Plaintiff Shira Perlmutter requests an injunction pending appeal reinstating her to her former position as Register of Copyrights after she has been lawfully removed. Plaintiff also asks this Court to enjoin the current Acting Librarian of Congress and Acting Register of Copyrights from fulfilling their duties, despite their lawful designations. This Court should deny plaintiff's motion for extraordinary relief.

Plaintiff does not dispute that the President lawfully removed the former Librarian of Congress, or that a lawful Acting Librarian could remove plaintiff. Rather, plaintiff challenges the President's designation of Todd Blanche, the Senate-confirmed Deputy Attorney General, as Acting Librarian.

The Federal Vacancies Reform Act (FVRA) authorizes the President to designate another Senate-confirmed officer as acting officer to perform the duties of a Senate-confirmed officer of an "Executive agency" when a vacancy arises. 5 U.S.C. § 3345(a)(2). Plaintiff contends that the Library of Congress is not an "Executive agency" under the FVRA, but plaintiff is incorrect. The Librarian of Congress is

appointed by the President with the advice and consent of the Senate and is subject to removal by the President. 2 U.S.C. § 136-1(a). As this Court has recognized, in light of the President's control over the Librarian and the executive powers of the Library, "the Library is undoubtedly a 'component of the Executive Branch.'" *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1342 (D.C. Cir. 2012).

Moreover, plaintiff cannot demonstrate irreparable harm. The Supreme Court and this Court have already rejected plaintiff's theory of harm based on a "statutory right" to serve as Register of Copyrights. And plaintiff cannot rely on alleged institutional harms to the Library and the Copyright Office.

Finally, the balance of equities and public interest weigh decisively against an injunction pending appeal. The Supreme Court has made clear that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025); *accord Trump v. Boyle*, 145 S. Ct. 2653 (2025).

**STATEMENT**

## A.    Statutory Background

1. The FVRA, 5 U.S.C. §§ 3345-3349d, provides procedures to designate an acting officer to perform the duties of "an officer of an Executive agency" whose appointment is subject to Senate confirmation whenever the incumbent "dies, resigns, or is otherwise unable to perform the functions and duties of the office." 5 U.S.C. § 3345(a). "Executive agency" is defined as "an Executive department, a Government corporation, and an independent establishment." *Id.* § 105. An "independent establishment" is defined as "an establishment in the executive branch (other than the United States Postal Service or the Postal Regulatory Commission) which is not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment." *Id.* § 104(1).

The FVRA authorizes the President to designate another Senate-confirmed officer as an acting officer to perform the duties of a Senate-confirmed officer of an "Executive agency" when a vacancy arises. 5 U.S.C. § 3345(a)(2). An acting officer who is serving under the FVRA

generally may perform the duties of the vacant office for no more than 210 days.  *Id.* § 3346(a)(1).

2.  The Library of Congress is a statutorily created entity that is headed by the Librarian of Congress.  2 U.S.C. § 136.  Although the Library was initially created for "use [by] Congress," Act of Apr. 24, 1800, ch. 37, § 5, 2 Stat. 55, 56, it has for over two centuries operated under the control of the Executive Branch and provided services to the federal government broadly, not just to Congress.  Since the position of Librarian was created in 1802, Congress has directed that the Librarian be appointed by the President—now, with the advice and consent of the Senate.  *See* Act of Jan. 26, 1802, ch. 2, § 3, 2 Stat. 128, 129 (1802 Act) (providing that "a librarian [is] to be appointed by the President of the United States solely"); 2 U.S.C. § 136-1(a) ("The President shall appoint the Librarian of Congress, by and with the advice and consent of the Senate.").  Presidents have not shied away from exerting authority over Librarians, including with respect to such mundane tasks as which books the Library should purchase.  *See* Library of Cong., *Librarians of Congress, 1802-1974*, at 20 (1977) (describing President Jefferson as taking active oversight over the first Librarian's purchase of books).  In

the statute that created the office of Librarian, Congress authorized the President and Vice-President to borrow books from the Library, 1802 Act § 4, and privileges were soon extended to cabinet officials, *see* John Y. Cole, *For Congress and the Nation: A Chronological History of the Library of Congress* 12, 15 (1979).

"[I]t is a misnomer to call [the Library of Congress] the Congressional Library.  It is a great national Library . . . and belongs to the Government of the United States."  29 Cong. Rec. 318-19 (1896) (Rep. Dockery); *accord id.* at 387 (Rep. Stone); *id.* (Rep. Fairchild); *see also Medical Imaging & Tech. All. v. Library of Cong.*, 103 F.4th 830, 833 (D.C. Cir. 2024) (describing the Library as "the Nation's library"); R.R. Bowker, *The American National Library*, 21 Library J. 357, 357 (1896) ("[T]he Library of Congress, so called, is now the library of the nation as well as of Congress."); Theodore Roosevelt, Message to the Senate and the House of Representatives (Dec. 3, 1901) ("[T]he Federal library, which, though still the Library of Congress, and so entitled, is the one national library of the United States.").[1]

---

[1] https://perma.cc/6XPV-JQ53.

The Library is composed of several divisions, including the Copyright Office. *See* Act of Feb. 19, 1897, ch. 265, 29 Stat. 538, 545. The Register of Copyrights is the head of the Copyright Office and is appointed by the Librarian. 17 U.S.C. § 701(a). The Register has "broad authority . . . to make copyright rules," *Medical Imaging*, 103 F.4th at 833, including the authority "to promulgate copyright regulations, to apply the statute to affected parties, and to set rates and terms case by case," *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1342 (D.C. Cir. 2012); *see* 17 U.S.C. §§ 702, 708. The Register "acts under the direction and supervision of the Librarian," *Medical Imaging*, 103 F.4th at 833 (citing 17 U.S.C. § 701(a)), and "[a]ll regulations established by the Register . . . are subject to the approval of the Librarian," 17 U.S.C. § 702.

## B. Factual Background and Prior Proceedings

**1.** On May 8, 2025, the President exercised his authority under Article II of the Constitution to remove former Librarian of Congress Carla Hayden. App.2a. The next day, the President designated Todd Blanche, the Senate-confirmed Deputy Attorney General, as Acting Librarian. App.12a.

On May 10, the President directed the removal of plaintiff from the position of Register of Copyrights. App.9a. Blanche, as Acting Librarian, confirmed plaintiff's removal by appointing Paul Perkins, Associate Deputy Attorney General, to serve as Acting Register. App.11a.

**2.** Plaintiff brought suit challenging her removal and seeking an injunction prohibiting Blanche and Perkins from serving, and reinstating plaintiff as Register of Copyrights. Dkt. No. 1. Plaintiff also moved for a temporary restraining order. Dkt. No. 2. The district court denied plaintiff's motion from the bench, concluding that plaintiff had "not met her burden of showing that she will suffer imminent irreparable harm" absent a temporary restraining order (TRO). TRO Hr'g Tr. 51:25–52:6 (May 28, 2025). The court also noted that plaintiff had not explained why the Copyright Office "should function with any degree of independence from control by the Executive Branch, especially when, as the D.C. Circuit has held . . . it exercises executive authority." *Id.* at 42:23-43:6.

**3.** The district court denied plaintiff's subsequent motion for a preliminary injunction, concluding that plaintiff had not demonstrated

irreparable harm. App.16a. First, the court rejected plaintiffs'
argument that the temporary loss of her "statutory right to function" as
Register of Copyrights constitutes irreparable harm. App.17a-18a. The
court explained that "no precedent of the Supreme Court or the D.C.
Circuit has recognized that an official's temporary loss of a 'statutory
right to function' is an irreparable harm in a situation like
Perlmutter's." App.22a. The court reasoned that the Supreme Court
has held that "'the Government faces greater risk of harm from an order
allowing a removed officer to continue exercising the executive power
than a wrongfully removed officer faces from being unable to perform
her statutory duty.'" App.22a (quoting *Trump v. Wilcox*, 145 S. Ct.
1415, 1415 (2025)).

The court rejected plaintiff's reliance on several district court
cases in which the plaintiffs had shown "irreparable harm because 'the
very survival of [the removed officer's] organization [was] at stake.'"
App.20a (alterations in original) (quoting *Aviel v. Gor* (*Aviel I*), No. 25-
cv-778, 2025 WL 1009035, at *10 (D.D.C. Apr. 4, 2025)). In those cases,
"without an injunction, there would be no agency for the officer to
return to after the case was resolved." App.20a. In contrast, the court

explained, plaintiff "has not shown that the existence of the Copyright Office is at stake, or that her position will likely be irreparably changed without an injunction." App.20a.

Second, the court rejected plaintiff's argument that her temporary inability to perform her statutory duties constitutes irreparable harm, concluding that "[t]here is little difference between this theory of harm and her first" theory. App.25a.

Third, the district court held that plaintiff cannot rely on harms to the Library of Congress or the Copyright Office to meet her burden, reasoning that "injuries to third parties are not a basis to find irreparable harm." App.26a. The court also concluded that these harms "fail on their own terms." App.27a. The court rejected plaintiff's claim that the Copyright Office will not be able to "perform its statutory role as a neutral advisor to Congress if an Executive Branch official controls the Library," explaining that this Court "has held that, as a matter of constitutional interpretation, the Library, at least in its role related to copyright matters, is part of the *Executive*" Branch. App.28a (*citing Intercollegiate*, 684 F.3d at 1342).

# ARGUMENT

An injunction pending appeal is "an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief." *John Doe Co. v. CFPB*, 849 F.3d 1129, 1131 (D.C. Cir. 2017) (per curiam) (alteration in original). A movant must demonstrate (1) a likelihood of prevailing on the merits, (2) irreparable injury if relief is withheld, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Id.* Where the plaintiff seeks injunctive relief against the government, the third and fourth factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## I. Plaintiff Is Unlikely to Prevail on Appeal

Plaintiff is unlikely to prevail on the merits because she was lawfully removed from the position of the Register of Copyrights.

**A.1.** It is undisputed that a lawfully designated Acting Librarian of Congress could properly remove plaintiff from the office of Register of Copyrights. Pl.'s Mot. 8-9; 17 U.S.C. § 701(a). And the President lawfully designated Blanche as Acting Librarian under the Federal Vacancies Reform Act. Accordingly, plaintiff's removal was lawful.

The FVRA authorizes the President to designate another Senate-confirmed officer as acting officer to perform the duties of a Senate-confirmed officer of an "Executive agency" when a vacancy arises. 5 U.S.C. § 3345(a)(2). There is no dispute that the President lawfully removed former-Librarian Hayden, thus creating a vacancy. There is also no dispute that Blanche is a Senate-confirmed officer under the FVRA. Plaintiff's challenge thus turns on whether the Library falls within the definition of "Executive agency" under the FVRA.

"Executive agency" is defined as "an Executive department, a government corporation, and an independent establishment." 5 U.S.C. § 105. An "independent establishment," in turn, is defined as "an establishment in the executive branch (other than the United States Postal Service or the Postal Regulatory Commission) which is not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment." *Id.* § 104.

The Library is "a freestanding entity" and a "component of the Executive Branch," *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1341-42 (D.C. Cir. 2012), and thus an "independent establishment" and an "Executive agency" under the FVRA. First, the

Librarian is appointed by the President with the advice and consent of the Senate and is subject to unrestricted removal by the President. 2 U.S.C. § 136-1(a). Accordingly, the President exercises control over the Librarian, as compared to his lack of control over Congressional entities, such as the House Sergeant at Arms, who is elected by members of the House, or the House Parliamentarian, who is appointed by the Speaker of the House. *See* U.S. House of Representatives, *Sergeant at Arms*;[2] U.S. House of Representatives, *Parliamentarian of the House*.[3] Indeed, when Congress first created the position of Librarian in 1802, it provided "[t]hat a librarian [was] to be appointed by the President of the United States solely," without any congressional input. 1802 Act § 3. This Court has recognized that in light of the President's control over the Librarian, "the Library is undoubtedly a 'component of the Executive Branch.'" *Intercollegiate*, 684 F.3d at 1342 (quoting *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 511 (2010)); *see also Medical Imaging & Tech. All. v. Library of*

---

[2] https://perma.cc/R6HD-D6VF.
[3] https://perma.cc/B6NM-3EZY.

*Cong.*, 103 F.4th 830, 833 (D.C. Cir. 2024) ("the Librarian is a 'Head of Department' within the Executive Branch").

Second, the Library and the Copyright Office exercise quintessential executive functions. "[T]he Library of Congress . . . exercises significant regulatory authority over copyrights," *Medical Imaging*, 103 F.4th at 833, including the power to "promulgate copyright regulations, to apply the statute to affected parties, and to set rates and terms case by case," *Intercollegiate*, 684 F.3d at 1342; *see also Medical Imaging*, 103 F.4th at 839. The Copyright Office is responsible for developing and proposing copyright regulations, and those regulations "are subject to the approval of the Librarian." 17 U.S.C. § 702; *see also Medical Imaging*, 103 F.4th at 837. Additionally, the regulations are subject to judicial review under the Administrative Procedure Act (APA), just like regulations of other executive branch agencies. 17 U.S.C. § 701(e); *Medical Imaging*, 103 F.4th at 838.

This Court has recognized that these "powers" are "generally associated in modern times with executive agencies rather than legislators." *Intercollegiate*, 684 F.3d at 1341-42. In light of "the important executive power exercised by the Library," "it is squarely a

component of the Executive Branch in its role as a copyright regulator," "whatever the Library's historical association with Congress." *Medical Imaging*, 103 F.4th at 840 n.4.

**2.** Plaintiff argues that Blanche could not properly remove plaintiff because, in plaintiff's view, the President could not lawfully designate Blanche as Acting Librarian under the FVRA. But plaintiff offers no persuasive reason to exclude the Library from the FVRA's definition of "Executive agency." Plaintiff does not contest that this Court analyzed the President's control over the Librarian and the executive powers of the Library in *Intercollegiate* and concluded that "the Library is undoubtedly a 'component of the Executive Branch'" for purposes of the Appointments Clause, which governs the President's appointment of a Librarian. 684 F.3d at 1342. Yet plaintiff insists that these same features are insufficient to make the Library "an establishment in the executive branch" under the FVRA, which regulates the President's authority to designate an Acting Librarian.

Plaintiff argues that the Library is not an "independent establishment" because there are statutory provisions that distinguish between an "independent establishment" or "Executive agency" and the

Library.  Pl.'s Mot. 11.  But like all canons of statutory interpretation, the rule against superfluity "is not absolute," *Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004), as "Congress commonly writes federal statutes . . . [in] a belt and suspenders manner," *Snyder v. United States*, 603 U.S. 1, 19 (2024).

Moreover, each of the provisions plaintiff cites defines the term "agency" with respect to a specific section or chapter of the U.S. Code, and these definitions differ from the definition of "agency" under the APA.  *See* 5 U.S.C. § 701(b).  Importantly, courts have long held that the Library is not an "agency" under the APA, *see, e.g.*, *Ethnic Emps. of Library of Cong. v. Boorstin*, 751 F.2d 1405, 1416 n.15 (D.C. Cir. 1985), despite copyright regulations approved by the Librarian being subject to judicial review under 17 U.S.C. § 701(e).  Accordingly, it makes sense that Congress decided to list the Library by name when drafting specialized definitions of "agency" for other parts of the U.S. Code.  By contrast, this belt-and-suspenders approach was not necessary when defining "independent establishment."

Plaintiff's reliance (at 10-11) on *Haddon v. Walters*, 43 F.3d 1488 (D.C. Cir. 1995) (per curiam), is also misplaced.  In *Haddon*, a former

White House chef brought an employment discrimination suit under

Title VII.  43 F.3d at 1489.  This Court held that the Executive

Residence at the White House is not an "independent establishment"

under 5 U.S.C. § 104 and thus Title VII, which applies to "employees . . .

in executive agencies as defined in section 105 of Title 5," did not apply.

*Id.* at 1489-90 (alteration in original) (quoting 42 U.S.C. § 2000e-16(a)).

The fact that the President's personal residence is not covered by Title

VII, the APA, the FVRA, or other provisions is not surprising, *see*

*Haddon v. Walters*, 836 F. Supp. 1, 3 (D.D.C. 1993) (the case concerns

"the President's authority to manage his own household"), and does not

shed light on whether the Library is an "independent establishment."

Second, plaintiff argues that the Library is not "in the executive

branch" because it is codified in Title 2 of the U.S. Code ("The

Congress") and a few provisions of Title 2 label the Library a

"legislative branch agency."  Pl.'s Mot. 12.  But as the Fourth Circuit

explained in *Eltra Corp. v. Ringer*, the Library "could have been

grouped code-wise under either the legislative or executive

department."  579 F.2d 294, 300-01 (4th Cir. 1978).  Although the

Library performs numerous core executive functions, some of its

16

activities are legislative in character.  For example, the Congressional

Research Service, which is a division of the Library, advises Congress.

2 U.S.C. § 166.  Thus, for purposes of classifying the Library as

"legislative" or "executive," it is "irrelevant that the Office of the

Librarian of Congress is codified under the legislative branch." *Eltra

Corp.*, 579 F.2d at 301; *cf. Kuretski v. Commissioner*, 755 F.3d 929, 939,

942 (D.C. Cir. 2014) (the Tax Court is part of the Executive Branch,

notwithstanding its status as an "Article I legislative court").

Nor does it matter that several provisions refer to the Library as a

"legislative branch agency" or that courts have held that the Library is

not an "agency" for purposes of the Freedom of Information Act (FOIA)

or the APA.  *See* Pl.'s Mot. 12.  These statutes are unrelated to the

FVRA.  For example, plaintiff cites 2 U.S.C. § 181(b)(1), which governs a

"[p]rogram for exchange of information among legislative branch

agencies," and lists the Library in the definition of "offices and agencies

of the legislative branch."  The fact that Congress wanted the Library to

share information with the Clerk of the House and the Congressional

Budget Office has no bearing on whether the Library is an

"establishment in the executive branch" for purposes of the FVRA.

That Congress chose to use different definitions for different statutory schemes, presumably because it recognized that they have unique purposes, is not surprising. *See* TRO Hr'g Tr. 10:21-:25 (district court explaining that "[i]t makes sense that Congress might" not want "FOIA to apply to the Library of Congress, regardless of whether it fits into the term 'executive agency' or not").

**3.** Even if this Court were to conclude that the FVRA's statutory limits on designating acting officials do not apply to the Library, plaintiff is still unlikely to prevail because the President properly exercised his inherent authority under Article II to designate Blanche.

The President's Article II duty to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, "grants him the concomitant authority to designate acting officers" to "'keep the Government running.'" *Temporary Presidential Designation of Acting Bd. Members of Inter-Am. Found. & U.S. Afr. Dev. Found.*, 49 Op. O.L.C. ___ (Mar. 14, 2025) (slip op. at 1, 11) (*Temporary Presidential Designation*) (quoting *Dep't of Energy—Vacancies (42 U.S.C. § 7342)—Vacancy Act (5 U.S.C. §§ 3345-3349)—De Facto Offs.*, 2 Op. O.L.C. 113,

117 (1978)).[4]  Although the FVRA regulates the President's authority to designate acting officers in certain circumstances, that statute is "not a source, but rather a regulation of that power."  *Power of the President to Designate Acting Member of the Fed. Home Loan Bank Bd.*, 1 Op. O.L.C. 150, 151 (1977).  The President "functionally could not exercise his Take Care authority" if he were unable to "task a politically accountable official to fill . . . agencies' leadership positions in an acting capacity." *Temporary Presidential Designations* 9.[5]

This Court has suggested that, at least absent countervailing circumstances not present here, the President has inherent authority to designate acting officials.  In *Williams v. Phillips*, this Court recognized that "[i]t could be argued that the intersection of the President's constitutional obligation to 'take care that the laws be faithfully executed' and his obligation to appoint the director … 'with the Advice

---

[4] https://perma.cc/DC2T-4LS7.

[5] *See also Auth. of the President to Remove the Staff Dir. of the Civil Rights Comm'n & Appoint an Acting Staff Dir.*, 25 Op. O.L.C. 103, 103 (2001); Memorandum from Walter Dellinger, Assistant Att'y Gen., Off. of Legal Couns., to Neil Eggleston, Assoc. Couns. to the President, *Re: Appointment of an Acting Staff Director of the United States Commission on Civil Rights* (Jan. 13, 1994).

and Consent of the Senate' provides the President an implied power, in the absence of limiting legislation … to appoint an acting director for a reasonable period of time before submitting the nomination of a new director to the Senate." 482 F.2d 669, 670 (D.C. Cir. 1973) (per curiam).

Plaintiff's reliance (at 15) on this Court's interlocutory stay order in *Aviel v. Gor* (*Aviel II*), No. 25-5105, 2025 WL 1600446 (D.C. Cir. June 5, 2025) (per curiam), is also misplaced. Judge Katsas's concurrence opined that "it is unlikely that the Take Care Clause gives the President unfettered discretion to designate acting principal officers" without limitation. *Id.* at *2 (Katsas, J., concurring). Such concerns are not present here, where the President has designated an Acting Librarian "for a reasonable period time," *Williams*, 482 F.2d at 670, until a nomination may be made, to ensure that the "executive power exercised by the Library" is properly discharged, *Medical Imaging*, 103 F.4th at 840 n.4. Moreover, in *Aviel*, the "government d[id] not contend that the FVRA affirmatively authorized the appointment" at issue. *Aviel II*, 2025 WL 1600446, at *2. Because Blanche was properly designated Acting Librarian under the FVRA, plaintiff is not entitled to

an injunction pending appeal and the Court need not reach the constitutional issue.

## II. Plaintiff Cannot Demonstrate Irreparable Harm or that the Remaining Factors Favor an Injunction

**A.** "This court has set a high standard for irreparable injury," which must be "beyond remediation," and "of such *imminence* that there is a clear and present need for equitable relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quotation omitted). "The Supreme Court has instructed that the loss of a job and the harms that go along with it generally 'will not support a finding of irreparable injury, however severely they may affect a particular individual.'" App.16a (quoting *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974)).

Plaintiff has not met this demanding standard. First, plaintiff argues that she suffers irreparable injury from the loss of her "statutory right" to serve as Register of Copyrights. Pl.'s Mot. 18. But the Supreme Court and this Court have rejected that theory of injury. App.22a-23a. In *Trump v. Wilcox*, the Supreme Court stayed two orders enjoining the President's removal of executive officers, explaining that the stay "reflects [the Court's] judgment that the Government faces

greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." 145 S. Ct. 1415, 1415 (2025); *accord Trump v. Boyle*, 145 S. Ct. 2653 (granting the government's stay application and explaining that the "application is squarely controlled by *Trump* v. *Wilcox*"). Similarly, this Court held in *Dellinger v. Bessent* that even "[a]ssuming [the plaintiff] is correct that his removal is statutorily ultra vires," a deprivation of his "statutory right to function in office" was not irreparable. No. 25-5052, 2025 WL 887518, at *4 (D.C. Cir. Mar. 10, 2025) (per curiam). This Court explained that "[at] worst, [the plaintiff] would remain out of office for a short period of time" and noted that the plaintiff "would likely be entitled to backpay if he were to prevail on appeal." *Id.*

Here, any harm to plaintiff could be remediated through "remedies available at law, such as monetary [relief]" in the form of backpay. *Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.*, 64 F.4th 1354, 1364 (D.C. Cir. 2023) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). App.19a. Accordingly,

plaintiff has not demonstrated irreparable harm and injunctive relief is inappropriate. *See Dellinger*, 2025 WL 887518, at *4.

Plaintiff relies on district court cases to support this theory of injury, Pl.'s Mot. 18-19, but as the district court here noted, all but one of these cases involved injunctions that were stayed by the Supreme Court or this Court. *See* App.21a-22a, 21 nn.3-4 (rejecting plaintiff's reliance on *Grundmann v. Trump*, 770 F. Supp. 3d 166 (D.D.C. 2025), *stayed per curiam*, No. 25-5165, 2025 WL 1840641 (D.C. Cir. July 3, 2025); *Wilcox v. Trump*, 775 F. Supp. 3d 215 (D.D.C. 2025) and *Harris v. Bessent*, 775 F. Supp. 3d 164 (D.D.C. 2025), *stayed*, 145 S. Ct. at 1415. And this Court is currently considering a stay pending appeal in *Slaughter v. Trump*, No. 25-5261 (D.C. Cir.).

Plaintiff also argues that her inability to serve as Register of Copyrights "at a critical juncture" constitutes irreparable injury. Pl.'s Mot. 19. But under that theory, every removed officer (or employee) could claim irreparable injury because he or she is being prevented from occupying the desired office at a particular time.

Plaintiff attempts to show that her case is similar to those in which the plaintiffs had shown irreparable harm because "without an

23

injunction, there would be no agency for the officer to return to after the case was resolved." App.20a (citing *Aviel I*, No. 25-cv-778, 2025 WL 1009035 (D.D.C. Apr. 4, 2025)); Pl.'s Mot. 21-22. But plaintiff "has not shown that the existence of the Copyright Office is at stake, or that her position will likely be irreparably changed without an injunction." App.20a.

Second, plaintiff argues that her inability to "fulfill her statutory obligations" constitutes irreparable injury. Pl.'s Mot. 21-22. But as the district court concluded, "[t]here is little if any difference between this theory of harm and her first" theory. App.25a. Moreover, these statutory obligations are vested in the office, and plaintiff has no personal right to them. The notion that public officials "have a separate private right, akin to a property interest, in the powers of their offices" is "alien to the concept of a republican form of government." *Barnes v. Kline*, 759 F.2d 21, 50 (D.C. Cir. 1984) (Bork, J., dissenting), *judgment vacated sub nom. Burke v. Barnes*, 479 U.S. 361 (1987).

Third, plaintiff argues that her removal "threaten[s] the Library's and the Copyright Office's ability to perform their assigned functions." Pl.'s Mot. 22-23. But the district court correctly concluded that plaintiff

cannot rely on harms to the Library or the Copyright Office to meet her burden of showing irreparable harm. App.26a ("injuries to third parties are not a basis to find irreparable harm").

Plaintiff's attempt (at 23) to rely on alleged harms to Congress miss the mark for the same reason, and the alleged harms also fail on their own terms. Plaintiff argues that this case implicates "separation-of-powers issues" because "[t]he Copyright Office cannot perform its statutory role as a neutral advisor to Congress if an executive branch official controls the Library of Congress's operations." Pl.'s Mot. 23. But Congress put the President in charge of the Library by giving him the power to appoint—and thus remove—the Librarian. 2 U.S.C. § 136-1(a); *see also* App.27a-28a (citing *Intercollegiate*, 684 F.3d at 1342, and explaining that "Executive influence over the Copyright Office appears to be a feature, not a bug"). Plaintiff also speculates that Blanche and Perkins will "[a]ccess . . . confidential research and advice for Members of Congress on potential legislation," Pl.'s Mot. 23, but as the district court concluded, plaintiff offers nothing to support this speculation, *see* TRO Hr'g Tr. 49:18-:23.

Plaintiff relies on this Court's interlocutory order in *Aviel II* denying a stay pending appeal.  Pl.'s Mot. 16 (citing 2025 WL 1600446, at *2).  But the two-sentence order in that case does not support plaintiff's claim of irreparable injury.  Neither the order nor the concurrence discusses irreparable harm.  *See Aviel II*, 2025 WL 1600446, at *1; *id.* at *2 (Katsas, J., concurring).

Plaintiff also argues that the "actions relating to the discharge itself" were "unusual."  Pl.'s Mot. 17 (quoting *Sampson*, 415 U.S. at 92 n.68).  That is incorrect.  Historically, Presidents have removed principal officers—or directed them to remove inferior officers—over political disagreements.  *See* Library of Cong., *George Watterston (1783-1854): 3rd Librarian of Congress 1815-1829* ("It therefore is hard to believe that he was surprised on May 28, 1829, when newly elected President Andrew Jackson, a Democrat, replaced him as Librarian with a fellow Democrat, John Silva Meehan, a local printer and publisher.").[6]

**B.**  For similar reasons, the balance of equities and public interest weigh decisively against an injunction pending appeal.  Plaintiff seeks to enjoin Blanche and Perkins from serving as Acting Librarian and

___

[6] https://perma.cc/E2YK-NN4W.

Acting Register of Copyrights, respectively, and to be reinstated as Register of Copyrights. As noted above, the Supreme Court has made clear that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Wilcox*, 145 S. Ct. at 1415; *see also* App.23a. As this Court has explained, "there is no doubt that it is impossible to unwind the days during which a President is directed to recognize and work with an agency head whom he has already removed," which "impinges on the 'conclusive and preclusive' power through which the President controls the Executive Branch that he is responsible for supervising." *Dellinger*, 2025 WL 887518, at *3 (alterations and quotation omitted).

## CONCLUSION

Plaintiff's motion for an injunction pending appeal should be denied.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
DANIEL AGUILAR
BENJAMIN HAYES

 */s/Ashley C. Honold*
ASHLEY C. HONOLD
  *Attorneys*
  *Civil Division, Room 7261*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 353-9018*
  *ashley.c.honold@usdoj.gov*

August 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d) because it contains 5,188 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Ashley C. Honold*
Ashley C. Honold

**CERTIFICATE OF SERVICE**

I hereby certify that on August 15, 2025, I electronically filed the

foregoing brief with the Clerk of the Court for the United States Court

of Appeals for the District of Columbia Circuit by using the appellate

CM/ECF system.  Service will be accomplished by the appellate

CM/ECF system.

*/s/ Ashley C. Honold*
Ashley C. Honold