# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

SHIRA PERLMUTTER, Register of Copyrights and
Director of the U.S. Copyright Office,
Plaintiff-Appellant,

v.

TODD BLANCHE, in his capacity as the person claiming to be
acting Librarian of Congress, ET AL.,
Defendants-Appellees,

On Appeal from the United States District Court
for the District of Columbia
No. 25-cv-1659
Hon. Timothy J. Kelly, U.S. District Judge

## PLAINTIFF-APPELLANT'S REPLY IN SUPPORT OF MOTION
## FOR AN INJUNCTION PENDING APPEAL

| | |
|---|---|
| Donald B. Verrilli, Jr. | Brian D. Netter |
| Ginger D. Anders | Allyson R. Scher |
| Munger, Tolles & Olson LLP | Democracy Forward Foundation |
| 601 Massachusetts Avenue NW | P.O. Box 34553 |
| Washington, DC 20043 | Washington, D.C. 20043 |
| (213) 683-9100 | (202) 448-9090 |
| donald.verrilli@mto.com | bnetter@democracyforward.org |
| ginger.anders@mto.com | ascher@democracyforward.org |

*Counsel for Plaintiff-Appellant*
*[Additional Counsel Listed in Signature Block]*

## TABLE OF CONTENTS

INTRODUCTION .................................................................................. 1
ARGUMENT ........................................................................................ 2
    I.    Perlmutter Is Likely To Prevail on the Merits ....................... 2
    II.   The Equities Strongly Favor Perlmutter .............................. 8
CONCLUSION ................................................................................... 11
CERTIFICATE OF COMPLIANCE ...................................................... 13
CERTIFICATE OF SERVICE ............................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Aviel v. Gor*, No. 25–5105,
　2025 WL 1600446 (D.C. Cir. June 5, 2025) ...................... 1, 2, 6, 7, 8, 9

*Davis v. Billington*,
　681 F.3d 377 (D.C. Cir. 2012) ...................................... 1, 3, 4

*NLRB v. SW Gen., Inc.*,
　137 S. Ct. 929 (2017) ...................................... 6

*Trump v. Int'l Refugee Assistance Project*,
　582 U.S. 571 (2017) (per curiam) ...................................... 9

*Trump v. Wilcox*,
　145 S. Ct. 1415 (2025) ...................................... 8, 9

*Williams v. Phillips*,
　482 F.2d 669 (D.C. Cir. 1973) (per curiam) ...................................... 7

**U.S. Constitution**

Art. II ...................................... 6

Appointments Clause, art. II, § 2 ...................................... 1, 3

Take Care Clause, art. II, § 3 ...................................... 6

**Statutes**

Civil Service Reform Act ...................................... 3

Ethics in Government Act ...................................... 5

Federal Service Labor-Management Relations Statute ...................................... 4

Federal Vacancies Reform Act ...................................... 1, 2, 4, 6, 7

# TABLE OF AUTHORITIES
## (continued)

5 U.S.C.:
  § 105 ............................................................................................. 1, 2, 4, 5
  § 3345 ..................................................................................................... 6
  § 3349c(1)(B) ......................................................................................... 6
  § 7103(a)(3) ............................................................................................ 4
  § 13101(4) .............................................................................................. 5
  § 13101(11) ............................................................................................ 5
  § 13142 ................................................................................................... 5

17 U.S.C. § 701(b)(1) ................................................................................. 10

**Other Authorities**

William F. Patry, *Library of Congress is in Congress, (surprise surprise)*,
  *in* 7 Patry on Copyright (2025) ....................................................... 5, 6

## INTRODUCTION

Shira Perlmutter is entitled to continue serving as Register of Copyrights.

On the merits, her likelihood of prevailing is not a close question. Each of Defendants' justifications is foreclosed by a decision of this Court. Most prominently, despite a dearth of supporting evidence, Defendants insist that Congress intended to define "Executive agency," in 5 U.S.C. § 105, to include any agency subject to the Constitution's Appointments Clause. If Defendants were right, the FVRA would give the President the authority to appoint an acting Librarian of Congress and his acting appointee would be entitled to select a new Register of Copyrights. But, interpreting the very same statutory provision, this Court has held that the "narrowing term 'Executive agency' . . . plainly does not contain the Library of Congress within the meaning of the statute." *Davis v. Billington*, 681 F.3d 377, 386 (D.C. Cir. 2012). Circuit precedent thus squarely forecloses Defendants' only statutory argument. And although Defendants offer a backup constitutional argument, all three members of a motions panel of this Court recently rejected that argument. *Aviel v. Gor*, No. 25–5105, 2025 WL 1600446, at *2 & n.1 (D.C. Cir. June 5, 2025)

(Katsas, J., joined by Pillard, J., concurring); *accord id.* at *4 n.1 (Rao, J. dissenting).

On the equities, Defendants appear to acknowledge (at 26) that Perlmutter was removed to prevent her from giving advice that the President does not prefer. Defendants say that this is normal, but they leave out the fact that Perlmutter's job is to provide expert guidance *to Congress*. Having the President veer from his constitutional lane to inhibit the performance of a *legislative* function is anything but normal. Defendants are asking the Court to rely on principles of equity to bless an unlawful takeover of Congress's library. Such an outcome, under the circumstances present here, would be manifestly inequitable.

## ARGUMENT

### I. Perlmutter Is Likely To Prevail on the Merits

**a.** Defendants' primary submission is that the Library of Congress is an "Executive agency" within the meaning of 5 U.S.C. § 105 and that, therefore, the President may appoint an acting Librarian of Congress under the FVRA. Defendants are flat wrong.

Congress defined "Executive agency" in § 105 to mean "an Executive department, a Government corporation, and an independent establishment." Defendants' position is that the Library of Congress is

2

"an independent establishment" because, for purposes of the Constitution's Appointments Clause, art. II, § 2, cl. 2, the Librarian qualifies as a principal officer.

In our motion (at 10–12), we explained why "independent establishment" cannot be construed to include the Library of Congress—principally because Congress has distinguished between "independent establishments" and the "Library of Congress." Defendants' position, by contrast, is a conclusion in search of an argument—there is no statutory support for the proposition that Congress adopted a precisely worded definition as a means to track a diffuse constitutional concept.

In any event, the dispute about whether the Library is an "independent establishment" is relevant only to determine whether the Library is an "Executive agency." On the latter question, this Court has already decided that it is not.

In *Davis*, this Court considered the availability of *Bivens* relief for a former Library of Congress employee alleging wrongful termination. The Court reasoned that the answer turned on whether Congress had adopted a comprehensive remedial scheme that foreclosed an implied remedy. The Court found such a scheme in the Civil Service Reform Act

(CSRA), concluding that, although Library of Congress employees are generally covered by the Act, they are not entitled to invoke the Act's remedial provisions, which are available only to employees of an "Executive agency":

> Here, the unambiguous use of the narrowing term "Executive agency"—a term which plainly does not contain the Library of Congress within the meaning of the statute, *see* 5 U.S.C. § 7103(a)(3)—and the express exclusion of probationary employees from the "agencies" and types of "employees" subject to the CSRA's remedial protections evidences an explicit congressional design for the subsets of civil-service employees that would and would not have access to those protections.

681 F.3d at 386. The referenced statute, 5 U.S.C. § 7103(a)(3), provides that, for purposes of the Federal Service Labor-Management Relations Statute (FSLMRS), "'agency' means an Executive agency[,] … the Library of Congress, the Government Publishing Office, and the Smithsonian Institution." The term "Executive agency" is not separately defined for purposes of the FSLMRS, so it takes on the meaning prescribed by 5 U.S.C. § 105. Thus, this Court held in *Davis* that the definition of "Executive agency" in 5 U.S.C. § 105 "plainly does not contain the Library of Congress." And because the Library is beyond the scope of § 105, the FVRA does not apply, the President had no authority to appoint Blanche

as acting Librarian, and Blanche had no authority to replace Perlmutter as Register of Copyrights.

Even were this not an open-and-shut application of circuit precedent, Defendants' skepticism of the canon against superfluity fails just the same. Defendants say (at 14–16) that the Court should not infer that, by distinguishing between "Executive agency" and the Library, Congress implied that the Library is not an Executive agency. Be that as it may, Congress has *directly* foreclosed the possibility that the Library can be treated as an "Executive agency" for purposes of § 105. In the Ethics in Government Act, Congress defined "executive branch" to "include[] each Executive agency (as defined in section 105 of [title 5]), other than the Government Accountability Act" and separately defined "legislative branch" to "include[] . . . the Library of Congress." 5 U.S.C. § 13101(4), (11). Different ethics rules apply to employees of the "executive branch" and the "legislative branch," *see, e.g.*, *id*. § 13142, so the Library cannot be both an "Executive agency" and part of the "legislative branch."

In conclusion, for statutory purposes, as William F. Patry has colorfully explained in his treatise, the "Library of Congress is in

Congress, (surprise surprise)," 7 Patry on Copyright § 28:16 (Mar. 2025), and Congress did not authorize the President to appoint an acting Librarian.

**b.** Because their statutory claim so clearly fails, Defendants are left with their only remaining argument: that the President has inherent Article II authority to appoint Blanche. But that argument, too, is foreclosed.

As we explained in the motion (at 14–15), the motions panel that ruled against the government in *Aviel II* considered and rejected the very same argument. Although she dissented in other respects, Judge Rao sided with the majority on the absence of inherent Article II authority:

> I agree with my colleagues that this argument is unlikely to succeed because the text and structure of the Constitution strongly suggest the President has no inherent authority to appoint officers of the United States, like IAF Board members, outside the strictures of the Appointments Clause. U.S. Const. art. II, § 2; *see NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 946 (2017) (Thomas, J., concurring) ("[T]he Appointments Clause forbids the President to appoint principal officers without the advice and consent of the Senate."). And the Federal Vacancies Reform Act does not apply to the IAF. 5 U.S.C. §§ 3349c(1)(B), 3345. If Marocco was not properly appointed as an acting IAF Board member, he lacked the authority to remove Aviel.

2025 WL 1600446, at *4 n.1. Judge Katsas, likewise, found that "it is unlikely that the Take Care Clause gives the President unfettered discretion to designate acting principal officers with neither Senate confirmation nor a Senate recess nor even statutory authorization through the FVRA." *Id.* at *2.

Defendants contend (at 20) that *Aviel II* does not apply, for two reasons. They say that *Aviel II* does not apply because the FVRA governs here, but that argument fails (*see supra*). And they maintain that *Aviel II* is inapposite because the appointment of an acting Librarian here is only "for a reasonable period of time." Opp. 20 (quoting *Williams v. Phillips*, 482 F.2d 669, 670 (D.C. Cir. 1973) (per curiam)). As a factual matter, this case is indistinguishable from *Aviel II*—both involve the appointment of an acting official after the President created a vacancy by firing the incumbent. And *Williams* does not help Defendants—as Judge Katsas reasoned, if there is ever inherent authority to appoint a temporary agency head, the government would have to show that it was necessary "to abate an emergency." 2025 WL 1600446, at *2 n.1. Just as in *Aviel II*, "[t]he government does not argue that any such emergency exists here." *Id.* Indeed, Defendants have not actually been performing

7

their supposed jobs at the Library, so they cannot insist that they are needed "to abate an emergency."

## II. The Equities Strongly Favor Perlmutter

At this stage of the briefing, it is clear that Defendants' attempts to seize control of the Library of Congress are in reckless disregard of the law. But they nonetheless insist that this Court is powerless to do anything about it—meaning that Defendants' lawless misconduct would be rewarded with months of unchecked power. The equities permit no such result.

Again, *Aviel II* governs. After considering the Supreme Court's stay order in *Trump v. Wilcox*, 145 S. Ct. 1415 (2025), the panel concluded that *Wilcox* speaks only to the balance of equities *when the President is likely to succeed on the merits*. When the President is unlikely to succeed on the merits, as here, the plaintiff is entitled to preliminary relief. 2025 WL 1600446, at *2. That conclusion is "the last word on that question until either the Supreme Court or a merits panel of [this] Court more definitively resolves the remedies issues." *Id.* at *2 n.2.

Defendants nevertheless contend that *Wilcox* governs and that *Aviel II* is irrelevant. They contend (at 21–22) that the stay order in

*Wilcox* rejected Perlmutter's claim to irreparable harm by concluding that "the Government face[d] greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Wilcox*, 145 S. Ct. at 1415. But nothing in *Wilcox*—the quoted portion or elsewhere—speaks to the existence of irreparable harm. The quoted provision addresses the balance of the equities. As we explained in the motion (at 26), the balance of equities will naturally tip in favor of a party that is the prohibitive favorite on the merits, which is why the Supreme Court cited the minimization-of-harms language from *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571 (2017) (per curiam). (Defendants offer no response.) And it is simply not credible to read the *Aviel II* majority as taking no position on irreparable harm, given that Judge Rao dissented as to the finding of irreparable harm. 2025 WL 1600446, at *6.

Here, the President has no authority to appoint an acting Librarian and Blanche has no authority to remove Perlmutter. Defendants have no right to meddle in Perlmutter's efforts to interface with Congress, in

her statutorily prescribed role as advisor to Congress "on national and international issues relating to copyright." 17 U.S.C. § 701(b)(1).

Defendants' view of executive authority has no apparent limiting principle. They argue (at 22) that backpay is a sufficient remedy for the wrongful removal of a statutory officer. But if backpay were sufficient redress, then the President could temporarily replace the Senate parliamentarian before she issued a ruling that would prevent a bill that the President supported from becoming law. The parliamentarian, under Defendants' theory, would suffer no irreparable harm because she could get backpay. Or the President could temporarily replace a U.S. District Judge who was about to enjoin a policy that the President preferred. The judge, under Defendants' theory, would suffer no irreparable harm because he or she could get backpay.

Of course Defendants are wrong. Backpay is not a silver bullet that gives the President limitless authority to appoint acting officials. Congress withheld from the President the authority to appoint an acting Librarian. He nevertheless seeks to abuse power he does not constitutionally possess to interfere in a coequal branch's discharge of its proprietary functions. If this is not a situation in which the equities favor

10

judicial intervention, then it is hard to fathom what situation would qualify.

Unless this Court acts, Perlmutter will be deprived of her ability to lend her expertise to Congress, and she will be unable to fulfill the statutory directive that requires her to lend that expertise. The Copyright Office's role in the legislative process will forever be marred if the President can so easily cripple the Office when its legislative services are needed most.

* * *

The President had no authority to set into motion the events that have impeded Perlmutter from continuing her distinguished service as Register of Copyrights. Equity does not favor the unclean hands of Defendants, who have so flagrantly violated Perlmutter's rights. This Court should act swiftly to correct this Executive overreach—and surely before Congress returns from its August recess.

## CONCLUSION

Plaintiff's motion should be granted.

Dated: August 19, 2025

Donald B. Verrilli, Jr.
Ginger D. Anders
Munger, Tolles & Olson LLP
601 Massachusetts Avenue NW
Washington, D.C. 20043
(213) 683-9100
donald.verrilli@mto.com
ginger.anders@mto.com

Kuruvilla J. Olasa
Miranda E. Rehaut
Adeel Mohammadi
Munger, Tolles & Olson LLP
350 South Grand Ave., 50th Floor
Los Angeles, California 90071
(213) 683-9100
kuruvilla.olasa@mto.com
miranda.rehaut@mto.com
adeel.mohammadi@mto.com

Respectfully submitted,

*/s/ Brian D. Netter*
Brian D. Netter
Allyson R. Scher
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
bnetter@democracyforward.org
ascher@democracyforward.org

*Counsel for Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE

This brief complies with the typeface and type-volume limitations in Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2167 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Cir. Rule 32(e)(1). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: August 19, 2025 /s/ *Brian D. Netter*
Brian D. Netter

# CERTIFICATE OF SERVICE

I certify that on August 19, 2025, a true and correct copy of this Brief was filed with the Clerk for the United States Court of Appeals for the District of Columbia Circuit via the Court's electronic filing system, which will forward a copy to all counsel of record.

Dated: August 19, 2025 　　　　　　　　*/s/ Brian D. Netter*
　　　　　　　　　　　　　　　　　　　Brian D. Netter