## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

—————————————

SHIRA PERLMUTTER,

Plaintiff-Appellant,

v.

TODD BLANCHE, et al.,

Defendants-Appellants.

—————————————

On Appeal from the United States District Court
for the District of Columbia

—————————————

**PETITION FOR REHEARING OR REHEARING EN BANC**

—————————————

BRETT A. SHUMATE
  *Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
DANIEL AGUILAR
ASHLEY C. HONOLD
BENJAMIN HAYES
  *Attorneys*
  *Civil Division, Room 7261*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 353-9018*

# TABLE OF CONTENTS

**Page**

GLOSSARY

INTRODUCTION AND RULE 40(B) STATEMENT ................................ 1

STATEMENT ....................................................................................... 5

    A.    Statutory Background ............................................................ 5

    B.    Factual Background and Prior Proceedings .......................... 8

REASONS FOR GRANTING REHEARING ......................................... 11

I.    The Panel's Order Conflicts with the Supreme
    Court's Judgment Concerning Harm to the
    Government from an Order Allowing a Removed
    Officer to Continue Exercising Executive Power .......................... 11

II.    The Panel's Order Conflicts with Circuit Precedent
    Establishing That the Library of Congress Is a
    Component of the Executive Branch ............................................ 17

CONCLUSION ....................................................................................... 21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Davis v. Billington,*
  681 F.3d 377 (D.C. Cir. 2012) ........................................................... 20

*Dellinger v. Bessent,*
  No. 25-5052, 2025 WL 887518 (D.C. Cir. Mar. 10, 2025) ............ 12, 15

*Ethnic Emps. of Libr. of Cong. v. Boorstin,*
  751 F.2d 1405 (D.C. Cir. 1985) ......................................................... 20

*Free Enter. Fund v. Public Co. Acct. Oversight Bd.,*
  561 U.S. 477 (2010) ............................................................................ 13

*Haddon v. Walters,*
  43 F.3d 1488 (D.C. Cir. 1995) ........................................................... 20

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.,*
  684 F.3d 1332 (D.C. Cir. 2012) .................................... 1, 5, 7, 13, 14, 18

*Lamie v. U.S. Tr.,*
  540 U.S. 526 (2004) ............................................................................ 19

*Medical Imaging & Tech. All. v. Library of Cong.,*
  103 F.4th 830 (D.C. Cir. 2024) ........................ 3, 7, 8, 11, 13, 14, 18, 19

*Sawyer, In re,*
  124 U.S. 200 (1888) ............................................................................ 16

*Snyder v. United States,*
  603 U.S. 1 (2024) ................................................................................ 19

*SoundExchange, Inc. v. Library of Cong.,*
  571 F.3d 1220 (D.C. Cir. 2009) ........................................................... 3

*Thaler v. Perlmutter,*
  130 F.3d 1039 (D.C. Cir. 2025) ........................................................... 3

*Trump v. Boyle,*
  145 S. Ct. 2653 (2025) ............................................. 4, 10, 11, 12, 14, 15

*Trump v. Wilcox,*
    145 S. Ct. 1415 (2025) ................................... 2, 4, 9, 10, 11, 12, 14, 15

*White v. Berry,*
    171 U.S. 366 (1898) ................................................................ 16

**Statutes:**

Act of Apr. 24, 1800, ch. 37, § 5, 2 Stat. 55, 56........................................6

Act of Jan. 26, 1802, ch. 2, § 3, 2 Stat. 128, 129........................................6

Act of Feb. 19, 1897, ch. 265, 29 Stat. 538, 545........................................7

Administrative Procedure Act,
    5 U.S.C. § 701(b) ................................................................ 20

Federal Vacancies Reform Act of 1998,
    5 U.S.C. § 3345(a)(2) ................................................ 4, 5, 17

2 U.S.C. § 136 ................................................................ 6

2 U.S.C. § 136-1(a) ................................................ 6, 13

5 U.S.C. § 101 ................................................................ 20

5 U.S.C. § 103 ................................................................ 18

5 U.S.C. § 104 ................................................................ 5, 18

5 U.S.C. § 104(1) ................................................................ 6

5 U.S.C. § 105 ................................................ 4, 6, 18

17 U.S.C. §§ 409-410 ................................................ 3, 7

17 U.S.C. § 411(a) ................................................................ 7

17 U.S.C. § 701(a) ................................................ 1, 7, 8

17 U.S.C. § 701(e) ................................................ 3, 14

17 U.S.C. § 702 .............................................................. 3, 7, 8, 14

17 U.S.C. § 708 ............................................................................. 7

17 U.S.C. § 802(f)(1) .................................................................... 3

**Legislative Material:**

29 Cong. Rec. 318 (1896) ......................................................... 6, 7

**Other Authority:**

Library of Cong., *George Watterston (1783-1854):*
   *3rd Librarian of Congress 1815-1829,*
   https://perma.cc/E2YK-NN4W ......................................... 16

## GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| FVRA | Federal Vacancies Reform Act |

## INTRODUCTION AND RULE 40(B) STATEMENT

A divided panel of this Court has taken the extraordinary step of granting an injunction pending appeal to reinstate the Register of Copyrights, an Executive Branch officer who exercises executive power and who was removed from office at the President's direction. That order conflicts with multiple decisions of the Supreme Court and of this Court. The government respectfully urges that rehearing or the en banc Court's review is warranted.

The Library of Congress, notwithstanding its name, is a component of the Executive Branch under the Constitution, and the Librarian of Congress is a "Head of Department" authorized to appoint and remove inferior executive officers under the Appointments Clause. *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1341-42 (D.C. Cir. 2012). One such inferior officer is the Register of Copyrights, who leads the Copyright Office. 17 U.S.C. § 701(a).

Plaintiff Shira Perlmutter was the Register of Copyrights. In May 2025, the President removed the previous Librarian and designated Todd Blanche, the Senate-confirmed Deputy Attorney General, as Acting Librarian. The President then ordered plaintiff's removal, and

the Acting Librarian appointed plaintiff's successor. In this litigation, plaintiff does not dispute that the President lawfully removed the former Librarian, or that a lawful Acting Librarian could remove her from her position. Rather, she contends that the President lacked the authority under the Federal Vacancies Reform Act (FVRA) to designate Blanche as Acting Librarian. The district court declined to grant plaintiff's request for a preliminary injunction, explaining that the Supreme Court has now many times stayed lower-court injunctions that prevented the President from removing officers wielding executive power. App.22a (citing *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025)).

On plaintiff's appeal, however, the panel majority saw things differently. Criticizing the district court for "mechanically applying" that controlling body of Supreme Court precedent, Add.16, the panel granted an injunction pending appeal to restore plaintiff to office—on the view that the Register of Copyrights is a *legislative* officer whose removal at the President's direction would violate the separation of powers. *See, e.g.*, Add.18 (declaring that "[t]he Executive has no authority to punish a Legislative Branch official for the advice that she provides to Congress").

That view is impossible to reconcile with the Copyright Act or this Court's many prior decisions reviewing decisions of the Copyright Office. The Register administers the Nation's copyright laws as the head of the Copyright Office. In doing so, she plainly exercises executive power. Among other things, the Register:

- interprets and applies the Copyright Act to adjudicate applications for copyright registration, 17 U.S.C. §§ 409-410; *see Thaler v. Perlmutter*, 130 F.3d 1039 (D.C. Cir. 2025) (upholding plaintiff's policy of refusing to register works created without human authorship);

- issues regulations under the Copyright Act, 17 U.S.C. § 702, which are subject to judicial review under the Administrative Procedure Act (APA), *id*. § 701(e); *see Medical Imaging & Tech. All. v. Library of Cong.,* 103 F.4th 830, 838 (D.C. Cir. 2024); and

- reviews the Copyright Royalty Board's interpretations of the copyright laws in statutory royalty ratemaking determinations, 17 U.S.C. § 802(f)(1); *cf. SoundExchange, Inc. v. Library of Cong.*, 571 F.3d 1220, 1226 (D.C. Cir. 2009) (Kavanaugh, J., concurring) (observing that "billions of dollars and the fates of entire industries can ride on the Copyright Royalty Board's decisions").

The panel nowhere attempts to reconcile its insistence that plaintiff is a "Legislative Branch official" (Add.18) with these quintessentially executive functions of the Register. Nor, for that matter, does the panel anywhere acknowledge the potentially momentous implications of its

view that the entire federal copyright system is administered by an officer of the Legislative Branch.

Because plaintiff was an Executive Branch officer who exercised executive power, controlling Supreme Court precedent should have compelled the panel to deny plaintiff's motion. As Judge Walker observed in dissent, the Supreme Court has repeatedly admonished that "'the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty.'" Add.23 (quoting *Wilcox*, 145 S. Ct. at 1415); *accord Trump v. Boyle*, 145 S. Ct. 2653 (2025). The panel erred in believing that the Register's putative "legislative" role justified a departure from that binding principle.

The panel's analysis of the FVRA merits, moreover, was infected by the same error. The FVRA authorizes the President to appoint acting officials in an "Executive agency," 5 U.S.C. § 3345(a)(2), which is defined to include, *inter alia*, any "independent establishment," *id.* § 105. Congress defined "independent establishment" to mean "an establishment in the executive branch" that meets certain textual

criteria, all of which the Library satisfies. *Id.* § 104. The panel declared, however, that "the Library is likely not an 'independent establishment' because it is not 'an establishment in the executive branch.'" Add.15. The panel's FVRA analysis thus rests on the same mistaken belief that the Library is not in the executive branch—a belief squarely at odds with this Court's holding that the Library of Congress is a "component of the Executive Branch" and that the Librarian is the "Head" of an executive "Department" under the Constitution. *Intercollegiate*, 684 F.3d at 1341-42.

Because the panel decision granting an injunction pending appeal conflicts with precedent of the Supreme Court and this Court, this Court should grant rehearing or rehearing en banc.

## STATEMENT

### A.    Statutory Background

1. The FVRA authorizes the President to designate another Senate-confirmed officer as an acting officer to perform the duties of a Senate-confirmed officer of an "Executive agency" when a vacancy arises. 5 U.S.C. § 3345(a)(2). "Executive agency" is defined as "an Executive department, a Government corporation, and an independent

establishment." *Id.* § 105. An "independent establishment" is defined as "an establishment in the executive branch (other than the United States Postal Service or the Postal Regulatory Commission) which is not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment." *Id.* § 104(1).

2. The Library of Congress is a statutorily created entity that is headed by the Librarian of Congress. 2 U.S.C. § 136. Although the Library was initially created for "use [by] Congress," Act of Apr. 24, 1800, ch. 37, § 5, 2 Stat. 55, 56, it has for over two centuries operated under the control of the Executive Branch and provided services to the federal government broadly, not just to Congress. Since the position of Librarian was created in 1802, Congress has directed that the Librarian be appointed by the President—now, with the advice and consent of the Senate. *See* Act of Jan. 26, 1802, ch. 2, § 3, 2 Stat. 128, 129 (1802 Act); 2 U.S.C. § 136-1(a).

"[I]t is a misnomer to call [the Library] the Congressional Library. It is a great national Library . . . and belongs to the Government of the United States." 29 Cong. Rec. 318-19 (1896) (Rep. Dockery); *accord id.*

at 387; *see also Medical Imaging & Tech. All. v. Library of Cong.*, 103 F.4th 830, 833 (D.C. Cir. 2024) (describing the Library as "the Nation's library").

The Library is composed of several divisions, including the Copyright Office. *See* Act of Feb. 19, 1897, ch. 265, 29 Stat. 538, 545. The Register of Copyrights is the head of the Copyright Office and is appointed and removable by the Librarian. 17 U.S.C. § 701(a). The Register administers the copyright laws of the United States. She examines applications for copyright registration, *id.* §§ 409-410, which copyright owners must obtain before bringing an infringement suit, *see id.* § 411(a). The Register also has "broad authority . . . to make copyright rules." *Medical Imaging*, 103 F.4th at 833; *see* 17 U.S.C. §§ 702, 708. In addition, the Register "has some oversight responsibilities regarding Copyright Royalty Judges, who have the power to promulgate copyright regulations, to apply the statute to affected parties, and to set rates and terms case by case." Add.23-24 (internal quotation marks omitted); *see also Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1342 (D.C. Cir. 2012). The Register "acts under the direction and supervision of the Librarian,"

*Medical Imaging*, 103 F.4th at 833 (citing 17 U.S.C. § 701(a)), and "[a]ll regulations established by the Register . . . are subject to the approval of the Librarian," 17 U.S.C. § 702.

### B.    Factual Background and Prior Proceedings

1.  On May 8, the President removed the former Librarian of Congress.  App.2a.  The President then designated Todd Blanche, the Senate-confirmed Deputy Attorney General, as Acting Librarian.  App.12a.

On May 10, the President directed the removal of plaintiff as Register of Copyrights.  App.9a.  Blanche, as Acting Librarian, confirmed plaintiff's removal by appointing Paul Perkins, Associate Deputy Attorney General, as Acting Register.  App.11a.

2.  Plaintiff challenged her removal and sought an injunction and a temporary restraining order (TRO) prohibiting Blanche and Perkins from serving, and reinstating plaintiff as Register.  Dkt. Nos. 1, 2.  The district court denied plaintiff's TRO motion, concluding that plaintiff had not demonstrated irreparable harm.  TRO Hr'g Tr. 51:25-52:6 (May 28, 2025).  The court also noted that plaintiff had not explained why the Copyright Office "should function with any degree of independence from

control by the Executive Branch, especially when, as the D.C. Circuit has held . . . it exercises executive authority." *Id.* at 42:23-43:6.

3. The district court denied plaintiff's motion for a preliminary injunction, concluding that plaintiff had not demonstrated irreparable harm. App.16a. The court reasoned that the Supreme Court has held that "'the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty.'" App.22a (quoting *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025)).

4. Plaintiff appealed and sought an injunction pending appeal from the district court and this Court. The district court denied plaintiff's motion. Dkt. Nos. 47, 48. A divided panel of this Court granted plaintiff's motion and enjoined defendants "from interfering with [plaintiff's] service as Register." Add.1. The panel relied on plaintiff's allegation that the President sought to remove her because he disagreed with the advice she gave to Congress in a report about artificial intelligence. Add.9-10. The panel reasoned that "[t]he Executive's alleged blatant interference with the work of a Legislative

Branch official, as she performs statutorily authorized duties to advise Congress, strikes us as a violation of the separation of powers." Add.10. The panel concluded that plaintiff's removal was likely unlawful because, in its view, the Library is not an Executive agency for purposes of the FVRA. Add.11-13. The panel further concluded that plaintiff demonstrated irreparable harm because of what it deemed the "unusual actions relating to the discharge itself." Add.15. The panel reasoned that *Wilcox*, 145 S. Ct. at 1415, is distinguishable because the Supreme Court held that the government was likely to succeed on the merits in that case. Add.16-17. Finally, the panel concluded that the remaining factors for an injunction pending appeal were met. Add.18-22.

Judge Walker dissented, explaining that the Supreme Court has "[r]ecently, repeatedly, and unequivocally" "stayed lower-court injunctions that barred the President from removing officers exercising executive power." Add.24 (citing *Wilcox*, 145 S. Ct. at 1415; *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025)). Judge Walker reasoned that "[t]he Register of Copyrights exercises executive power in a host of ways," and thus the Court "'recently recognized the important executive power exercised by the Library, suggesting that whatever the Library's

historical association with Congress, it is squarely a component of the Executive Branch in its role as a copyright regulator.'" Add.23-24 (quoting *Medical Imaging*, 103 F.4th at 840 n.4) (emphasis omitted). Judge Walker concluded that "whether or not Perlmutter's removal was likely unlawful, *Wilcox* and *Boyle* referred to 'a wrongfully removed officer' when they said that 'the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty.'" Add.26 (citations omitted).

## REASONS FOR GRANTING REHEARING

**I.   The Panel's Order Conflicts with the Supreme Court's Judgment Concerning Harm to the Government from an Order Allowing a Removed Officer to Continue Exercising Executive Power.**

As Judge Walker explained, the Supreme Court has made clear that "'the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty.'" Add.23 (quoting *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025)). The Supreme Court's orders are binding precedent on how to apply the stay factors. *Trump v. Boyle*, 145 S. Ct. 2653, 2653-54

(2025) (granting the government's stay application and explaining that the "application is squarely controlled by *Trump* v. *Wilcox*"). As this Court has explained, "there is no doubt that it is impossible to unwind the days during which a President is directed to recognize and work with an agency head whom he has already removed," which "impinges on the 'conclusive and preclusive' power through which the President controls the Executive Branch that he is responsible for supervising." *Dellinger v. Bessent*, No. 25-5052, 2025 WL 887518, at *3 (D.C. Cir. Mar. 10, 2025) (per curiam) (alterations and quotation marks omitted).

The panel's order is irreconcilable with the Supreme Court's and this Court's precedent. The panel believed that *Wilcox* and *Boyle* were inapplicable because, in the panel's view, the Register is a "Legislative Branch official" rather than an inferior officer in the Executive Branch. *See, e.g.*, Add.10, 16. Indeed, the panel declared that "[t]he President's purported removal of the Legislative Branch's chief advisor on copyright matters, based on the advice that she provided to Congress, is akin to the President trying to fire a federal judge's law clerk." Add.16.

The panel's startling assertion that the Register is a "Legislative Branch official" is contradicted by the Copyright Act and inconsistent

with this Court's precedents—including many decisions of this Court reviewing, under the APA, the Register's decisions implementing the Nation's copyright laws.  This Court has specifically recognized that the Library (including the Register) is and must be executive as a constitutional matter.  As this Court has explained, "the Librarian is appointed by the President with advice and consent of the Senate, 2 U.S.C. § 136[-1(a)], and is subject to unrestricted removal by the President."  *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1342 (D.C. Cir. 2012).  In light of the President's control over the Librarian, "the Library is undoubtedly a 'component of the Executive Branch.'"  *Id.* (quoting *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 511 (2010)); *see also Medical Imaging & Tech. All. v. Library of Cong.*, 103 F.4th 830, 833 (D.C. Cir. 2024) ("the Librarian is a 'Head of Department' within the Executive Branch").

Additionally, as Judge Walker recognized, "[t]he Register of Copyrights exercises executive power in a host of ways."  Add.23.  "[T]he Library of Congress . . . exercises significant regulatory authority over copyrights," *Medical Imaging*, 103 F.4th at 833, including the power to "promulgate copyright regulations, to apply the statute to affected

parties, and to set rates and terms case by case," *Intercollegiate*, 684

F.3d at 1342; *see also Medical Imaging*, 103 F.4th at 839; Add.23-24.

The Copyright Office, Judge Walker explained, "has rulemaking

authority that is subject to review by the Librarian of Congress."

Add.23; *see also* 17 U.S.C. § 702; *Medical Imaging*, 103 F.4th at 837.

These regulations are subject to judicial review under the APA, just like

regulations of other executive branch agencies.  17 U.S.C. § 701(e);

*Medical Imaging*, 103 F.4th at 838.

This Court has recognized that these "powers" are "generally

associated in modern times with executive agencies rather than

legislators." *Intercollegiate*, 684 F.3d at 1341-42.  As Judge Walker

noted, this Court "'recently recognized the important executive power

exercised by the Library, suggesting that whatever the Library's

historical association with Congress, it is squarely a component of the

Executive Branch in its role as a copyright regulator.'"  Add.24 (quoting

*Medical Imaging*, 103 F.4th at 840 n.4) (emphasis omitted).

That conclusion should have been dispositive for purposes of

plaintiff's motion for an injunction pending appeal.  As Judge Walker

stressed, "*Wilcox* and *Boyle* cover *any* officer exercising the executive

power." Add.25 (quotation marks omitted). And "whether or not Perlmutter's removal was likely unlawful, *Wilcox* and *Boyle* referred to a wrongfully removed officer." Add.26 (quotation marks omitted).

The panel also erred in concluding that plaintiff has demonstrated irreparable harm. This Court emphasized in *Dellinger* that even "[a]ssuming [the plaintiff] is correct that his removal is statutorily ultra vires," a deprivation of his "statutory right to function in office" was not irreparable. 2025 WL 887518, at *4. This Court explained that "[at] worst, [the plaintiff] would remain out of office for a short period of time" and noted that the plaintiff "would likely be entitled to backpay if he were to prevail on appeal." *Id.*

The panel acknowledged that plaintiff's "inability to perform her statutory functions likely does not, in itself, constitute *irreparable* harm." Add.15. Yet it concluded that "'unusual actions relating to the discharge itself' support a finding of irreparable harm." Add.18. The panel reasoned that plaintiff alleged that the "President purported to remove Perlmutter because he allegedly disagreed with her conclusions in" a report about artificial intelligence. Add.15. But even if that was the case, there would be nothing unusual about it. The President is

entitled to direct the Librarian to remove a Register based on policy disagreements over how the copyright laws apply in the context of artificial intelligence—or for any other reason. *Cf.* Library of Cong., *George Watterston (1783-1854): 3rd Librarian of Congress 1815-1829* ("It therefore is hard to believe that he was surprised on May 28, 1829, when newly elected President Andrew Jackson, a Democrat, replaced him as Librarian with a fellow Democrat, John Silva Meehan, a local printer and publisher.").[1]

Indeed, an injunction requiring plaintiff's reinstatement would not be proper even after final judgment. The Supreme Court has repeatedly determined that "a court of equity has no jurisdiction over the appointment and removal of public officers." *White v. Berry*, 171 U.S. 366, 376 (1898); *see, e.g.*, *In re Sawyer*, 124 U.S. 200, 221 (1888). At a minimum, regardless of whether the district court could award other remedies such as a declaratory judgment or a writ of mandamus at the end of the litigation, the injunction pending appeal issued by the panel exceeds federal courts' equitable authority.

---

[1] https://perma.cc/E2YK-NN4W.

## II. The Panel's Order Conflicts with Circuit Precedent Establishing That the Library of Congress Is a Component of the Executive Branch.

A.  The panel's erroneous conclusion that the Register's role is primarily legislative rather than executive likewise infected its merits conclusion that the Library is not subject to the FVRA, and thus the President could not properly designate an Acting Librarian and plaintiff was not properly removed.  The panel's conclusion conflicts with this Court's precedent.

The FVRA authorizes the President to designate another Senate-confirmed officer as acting officer to perform the duties of a Senate-confirmed officer of an "Executive agency" when a vacancy arises. 5 U.S.C. § 3345(a)(2).  There is no dispute that the President lawfully removed former-Librarian Hayden, thus creating a vacancy.  There is also no dispute that Blanche is a Senate-confirmed officer under the FVRA.  Plaintiff's challenge thus turns on whether the Library falls within the definition of "Executive agency" under the FVRA.

The plain terms of the FVRA's definitional provisions make clear that the answer is yes.  "Executive agency" is defined as "an Executive department, a Government corporation, and an independent

establishment." 5 U.S.C. § 105.  An "independent establishment" is defined as "an establishment in the executive branch (other than the United States Postal Service or the Postal Regulatory Commission) which is not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment."  *Id.* § 104.  That definition neatly encompasses the Library:  it is "an establishment in the executive branch" that does not fall within any of the listed exclusions.[2]

The panel nonetheless declared that the Library likely is not an "independent establishment" under the FVRA "because it is not 'an establishment in the executive branch.'"  Add.12.  The panel's FVRA analysis thus rests on the same basic error as its analysis of the equities.  As discussed, this Court has already held that the Library is a component of the Executive Branch for Appointments Clause purposes. *Intercollegiate*, 684 F.3d at 1342 (rejecting an Appointments Clause challenge to the Copyright Royalty Judges—who, like the Register, are appointed by the Librarian); *see also Medical Imaging*, 103 F.4th 833

---

[2] The term "Executive department" covers an enumerated list of executive departments, not including the Library.  5 U.S.C. § 103.

("the Librarian is a 'Head of Department' within the Executive Branch"). It is difficult to imagine any coherent principle of statutory interpretation that would exclude a constitutional "Department" under the Appointments Clause from the phrase "in the executive branch" in the Federal Vacancies Reform Act, and the panel identifies none.

B. The panel also reasoned that the Library is not an "independent establishment" because there are a handful of statutory provisions that distinguish between an "independent establishment" or "Executive agency" and the Library. Add.12. But like all canons of statutory interpretation, the rule against superfluity "is not absolute," *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004), as "Congress commonly writes federal statutes . . . [in] a belt and suspenders manner," *Snyder v. United States*, 603 U.S. 1, 19 (2024).

Moreover, the provisions the panel cites (Add.12-13) define the term "agency" with respect to a specific section or chapter of the U.S. Code. These definitions may be narrower or specialized for various reasons. For example, the definition of "agency" for purposes of the APA, 5 U.S.C. § 701(b), is different than the definition of "Executive agency" under the FVRA, 5 U.S.C. § 101. It therefore does not follow

that Congress's explicit reference to the Library in one section implies that the Library is excluded in others.  Indeed, precisely because courts have long held that the Library is not an "agency" under the APA, *see, e.g.*, *Ethnic Emps. of Libr. of Cong. v. Boorstin*, 751 F.2d 1405, 1416 n.15 (D.C. Cir. 1985), it makes sense that Congress decided to list the Library by name when drafting specialized definitions of "agency" for other parts of the U.S. Code.  By contrast, that belt-and-suspenders approach was not necessary when defining "independent establishment."

Nor do *Haddon v. Walters*, 43 F.3d 1488 (D.C. Cir. 1995) (per curiam), or *Davis v. Billington*, 681 F.3d 377, 386 (D.C. Cir. 2012), Add.13, support the panel's conclusion.  *Haddon* held that the Executive Residence at the White House is not an "independent establishment," and thus Title VII does not apply.  43 F.3d at 1489-90.  The fact that the President's personal residence is not covered by Title VII or the FVRA is not surprising and does not shed light on whether the Library is an "independent establishment."  *Davis* is a *Bivens* case that held that the creation of the Civil Service Reform Act was a special factor precluding a new *Bivens* remedy.  681 F.3d at 383-86.  Nothing about *Davis* speaks

to the FVRA's application to the Library or the President's ability to

oversee the Executive Branch.

## CONCLUSION

The Court should grant rehearing or rehearing en banc.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
DANIEL AGUILAR
*/s/ Ashley C. Honold*
ASHLEY C. HONOLD
BENJAMIN HAYES
  *Attorneys*
  *Civil Division, Room 7261*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 353-9018*
  *ashley.c.honold @usdoj.gov*

SEPTEMBER 2025

**CERTIFICATE OF COMPLIANCE**

I certify that this petition complies with the requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in 14-point Century Schoolbook, a proportionally spaced font.

I further certify that this petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 40(d)(3)(A) because it contains 3,899 words, excluding the parts of the brief exempted under Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), according to the count of Microsoft Word.

*/s/ Ashley C. Honold*

Ashley C. Honold

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2025, I electronically filed the foregoing petition with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*/s/ Ashley C. Honold*

Ashley C. Honold

# ADDENDUM

# ADDENDUM TABLE OF CONTENTS

Panel Order …..................................................................... Add.1

Certificate as to Parties, Rulings, and Related Cases.................... Add.27

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 25-5285**                                    **September Term, 2025**

**1:25-cv-01659-TJK**

**Filed On:**  September 10, 2025

Shira Perlmutter, Register of Copyrights and
Director of the U.S. Copyright Office,

       Appellant

   v.

Todd Blanche, in his capacity as the person
claiming to be acting Librarian of Congress,
et al.,

       Appellees

    **BEFORE:**    Walker*, Childs, and Pan, Circuit Judges

### O R D E R

Upon consideration of the emergency motion for injunction pending appeal, the opposition thereto, the reply, and the letter regarding case status, it is

**ORDERED** that the motion for injunction be granted to the extent that appellees Todd Blanche, Paul Perkins, Sergio Gor, Trent Morse, and the Executive Office of the President, and their subordinates and agents, are hereby enjoined from interfering with appellant's service as Register of Copyrights and Director of the U.S. Copyright Office pending further order of the court.  To that extent, appellant has satisfied the stringent requirements for an injunction pending appeal.  See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); D.C. Circuit Handbook of Practice and Internal Procedures 33 (2025); see also Severino v. Biden, 71 F.4th 1038, 1042 (D.C. Cir. 2023) (explaining that a "court generally may not 'enjoin the President in the performance of his official duties'" (quoting Franklin v. Massachusetts, 505 U.S. 788, 802-03 (1992) (plurality opinion))).  A concurring statement of Circuit Judge Pan, joined by Circuit Judge Childs, and a dissenting statement of Circuit Judge Walker are attached.

#### Per Curiam

                **FOR THE COURT:**
                Clifton B. Cislak, Clerk

          BY:   /s/
                Lynda M. Flippin
                Deputy Clerk

\* Circuit Judge Walker would deny the motion for injunction pending appeal.

PAN, *Circuit Judge*, joined by CHILDS, *Circuit Judge*, concurring:

The Register of Copyrights (the "Register") is a unique position within the Legislative Branch, housed within the Library of Congress. The Register serves as the Director of the U.S. Copyright Office and is the primary advisor to Congress on copyright issues. 17 U.S.C. § 701(b)(1). The Librarian of Congress appoints and supervises the Register. *Id.* § 701(a). And only the Librarian of Congress has authority to remove the Register. That much is undisputed.

Shira Perlmutter has served as the Register since October 2020, when she was duly appointed by the Librarian of Congress. On May 9, 2025, Perlmutter released a prepublication version of a report analyzing the use of copyrighted materials to train generative artificial-intelligence models (the "AI Report"). Perlmutter prepared the report in fulfillment of her statutory duty to "[c]onduct studies" and "[a]dvise Congress on national and international issues relating to copyright." 17 U.S.C. § 701(b)(1), (4). As Register, she supports Congress's enumerated constitutional power to enact copyright laws that "promote the Progress of Science and useful Arts." U.S. Const. art. I, § 8, cl. 8.

When Perlmutter's AI Report was released, the President allegedly disagreed with its recommendations. And the next day — a Saturday — the White House Presidential Personnel Office notified Perlmutter by email that she had been terminated from her position "effective immediately."

Perlmutter sued to block her removal, seeking declaratory and injunctive relief. The district court denied Perlmutter's request for a preliminary injunction that would have allowed her to remain in her post until the litigation concluded. The district court based its ruling solely on its determination that Perlmutter had failed to show that she would suffer irreparable

2

harm from her immediate removal.  It relied on precedents which hold that the President's desire to remove an official who exercises executive power generally outweighs the official's interest in performing her duties.  But the district court abused its discretion by failing to consider "unusual actions relating to the discharge itself" and a "genuinely extraordinary situation" — factors that inform the irreparable-harm analysis and distinguish this case from other removal cases.  *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974).

The "unusual" and "extraordinary" features of this case include the following:  (1) Perlmutter alleges an unprecedented violation of the separation of powers — she contends that the President removed the Register, an official in the Legislative Branch, based on his disagreement with advice that the Register provided to Congress in support of its constitutional power to formulate laws and policies concerning copyrights; (2) the President's removal of Perlmutter was likely unlawful; and (3) Perlmutter likely does not exercise substantial executive power, making this case markedly different from most precedents addressing the removal of government officials.  Under the circumstances, the district court should have weighed all the preliminary-injunction factors.  Those factors all favor granting Perlmutter's requested preliminary injunction.

## I.

Congress established the Library of Congress in 1800 as a part of the Legislative Branch.  *See* 2 U.S.C. § 171(1); Compl., ECF No. 1 ¶ 10 n.1 (citing Library of Congress Information Bulletin (1984)).  The Library "serves as the research arm of Congress and is recognized as the national library of the United States."  *Frequently Asked Questions*, Libr. of Cong., https://perma.cc/6Z77-ZRE4.  Congress provided the President

3

with authority to appoint the Librarian of Congress, who heads the Library, subject to the advice and consent of the Senate. *See* 2 U.S.C. § 136-1(a). The Librarian is appointed for a term of ten years. *Id.* § 136-1(b).

Housed within the Library of Congress is the U.S. Copyright Office. The Constitution vests Congress with the power to "secur[e] for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8. Relying on that constitutional authority, Congress has protected copyrights in some form under federal law since 1790. *See* Act of May 31, 1790, ch. 15, 1 Stat. 124. And in 1897, Congress established the Copyright Office within the Library of Congress. *History of U.S. Copyright Office*, U.S. Copyright Off., https://perma.cc/BJ9R-2KTS.

The Register of Copyrights oversees the Copyright Office and administers the nation's copyright system. The Register is appointed by the Librarian of Congress and acts under the Librarian's general direction and supervision. *See* 17 U.S.C. § 701(a); *Med. Imaging & Tech. All. v. Libr. of Cong.*, 103 F.4th 830, 833 (D.C. Cir. 2024). She "is the principal advisor to Congress on national and international copyright matters, testifying upon request and providing ongoing leadership and impartial expertise on copyright law and policy." *Overview*, U.S. Copyright Off., https://perma.cc/6BQN-J5Z5; *see also* 17 U.S.C. § 701(b) (listing statutory functions of the Register). The Office also "registers copyright claims, records information about copyright ownership, provides information to the public, and assists Congress and other parts of the government on a wide range of copyright issues." *Overview*, U.S. Copyright Off., *supra*.

Add.4

4

By statute, the Librarian of Congress bears sole responsibility for appointing the Register. The Librarian also has sole authority to remove the Register. *See Nat'l Treasury Emps. Union v. Reagan*, 663 F.2d 239, 247 (D.C. Cir. 1981) ("Absent relevant legislation" "the power to remove is held by the appointing authority, and only by the appointing authority.").

In October 2020, the Librarian of Congress, Dr. Carla D. Hayden, appointed Shira Perlmutter to serve as the Register. On May 8, 2025, the President fired Hayden. Under the regulations promulgated pursuant to 2 U.S.C. § 136 and longstanding practice, the interim Principal Deputy Librarian, Robert R. Newlen, replaced Hayden as Acting Librarian of Congress. Newlen has been an employee of the Library of Congress for more than forty years.

On May 9, 2025, Perlmutter released the AI Report — a prepublication version of a report analyzing the fair use doctrine's application to the use of copyrighted materials in the training of generative AI models. She prepared the report pursuant to the Register's statutory responsibility to "[c]onduct studies" and "[a]dvise Congress on national and international issues relating to copyright," 17 U.S.C. § 701(b)(1), (4). *See* U.S. Copyright Off., *Copyright and Artificial Intelligence Part 3: Generative AI Training* (May 2025), https://perma.cc/3J9F-7SQN. The AI Report concluded that some uses of copyrighted works in generative AI training were likely to qualify as "fair use," but some uses were likely to require licensing. Compl. ¶ 19. The Copyright Office is reportedly in the process of finalizing a separate aspect of the report to Congress, which will address the topic of potential liability for infringing AI outputs.

5

Perlmutter alleges that the President disagreed with her on the substance of the AI Report, as evidenced by his subsequent statements. On the day after the AI Report was released, May 10, 2025, Trent Morse, Deputy Assistant to the President and Deputy Director of the White House Presidential Personnel Office, sent an email to Perlmutter on behalf of the President, stating that her "position as the Register of Copyrights and Director at the U.S. Copyright Office is terminated effective immediately." Compl. ¶ 20.

The President subsequently invoked the Federal Vacancies Reform Act ("FVRA"), 5 U.S.C. § 3345(a), to purportedly appoint Deputy Attorney General Todd Blanche as Acting Librarian of Congress. Blanche then purportedly appointed Justice Department official Paul Perkins as Acting Register.

Perlmutter sued the President and other officials in the district court, arguing that her termination was unlawful. First, she argued that only the Librarian of Congress — and not the President — has the authority to fire her. Second, she argued that Blanche was unlawfully appointed as Acting Librarian and therefore lacks authority to ratify the President's actions, *i.e.*, to effectuate her termination.

The district court denied Perlmutter's requests for a temporary restraining order and a preliminary injunction. *Perlmutter v. Blanche*, No. 25-1659, 2025 WL 2159197, at *1 (D.D.C. July 30, 2025). The district court did not consider whether Perlmutter was likely to succeed on the merits of her claims; rather, the court denied Perlmutter's motion solely by evaluating irreparable harm. *See id.* at *2–8. Specifically, the district court reasoned that Perlmutter's asserted loss of her "statutory right to function" was not a "genuinely extraordinary situation such that her temporary removal is irreparable harm — or at least, harm that outweighs any corresponding risk of

6

harm to the Government." *Id.* at *7. The district court relied on the Supreme Court's recent order in *Trump v. Wilcox*, which states that the harm to the government "from an order allowing a removed officer to continue exercising the executive power" is generally greater than the harm to a government official who is wrongfully removed. *Id.* at *5 (quoting 145 S. Ct. 1415, 1415 (2025)).

Perlmutter filed an appeal and asked the district court for a stay of its order pending appeal. The district court denied her request. *Perlmutter v. Blanche*, No. 25-1659, 2025 WL 2409755, at *1 (D.D.C. Aug. 20, 2025).

Perlmutter then filed the instant motion for an injunction pending appeal, asking this court to "act swiftly to enjoin Defendants from interfering with Perlmutter's service as Register during the pendency of this appeal." Mot. at 3.

Notwithstanding Perlmutter's purported removal, and the purported appointment of Blanche as Acting Librarian, it appears that Perlmutter is still serving in her role as Register. In support of her motion for a preliminary injunction in the district court, Perlmutter asserted that, to her knowledge, "no official at the Library of Congress has recognized Mr. Blanche as the acting Librarian of Congress," and that she "[remains] Register of Copyrights and therefore [is] required by law to fulfill [her] above-described statutory obligations." ECF No. 24-3 at 4–5.

## II.

An injunction pending appeal is an "exceptional remedy," and the party seeking one on appeal from the denial of a preliminary injunction faces the "difficult task" of showing that the district court likely abused its discretion in denying

7

preliminary relief. *John Doe Co. v. CFPB*, 849 F.3d 1129, 1131
(D.C. Cir. 2017) (per curiam).  To obtain either a preliminary
injunction or an injunction pending appeal, the movant must
demonstrate (1) a likelihood of success on the merits, (2) a
likelihood of irreparable harm absent injunctive relief, (3) that
the balance of equities favors an injunction, and (4) that an
injunction is in the public interest. *See Winter v. Nat. Res. Def.
Council, Inc.*, 555 U.S. 7, 20 (2008).  "The first two factors of
the traditional standard are the most critical," *Nken v. Holder*,
556 U.S. 418, 434 (2009), and the showing of likelihood of
success must be "substantial," *Citizens for Resp. & Ethics in
Wash. v. FEC*, 904 F.3d 1014, 1018 (D.C. Cir. 2018).  Where
the federal government is the opposing party — as is the case
here — the balance of equities and public interest factors
merge.  *Nken*, 556 U.S. at 435.

*Winter* "can be read to require movants to establish each
preliminary injunction factor independently."  *Clevinger v.
Advoc. Holdings, Inc.*, 134 F.4th 1230, 1235 (D.C. Cir. 2025).
But in general, a "movant's failure to show any irreparable
harm is grounds for refusing to issue a preliminary injunction,
even if the other three factors merit such relief."  *Id.* at 1236
(cleaned up).  In the context of the Executive's removal of a
government employee, courts may consider "unusual actions
relating to the discharge itself" and "genuinely extraordinary
situation[s]" to support a finding of irreparable harm.
*Sampson*, 415 U.S. at 92 n.68.  At bottom, an injunction is an
exercise of judicial discretion that turns on the circumstances
of the case.  *Winter*, 555 U.S. at 24.

In determining whether an injunction pending appeal is
warranted, we must evaluate whether the district court abused
its discretion, and that analysis necessarily overlaps with the
issues that will be raised in Perlmutter's appeal of the
preliminary-injunction order.  *See John Doe*, 849 F.3d at 1131.

8

We review the district court's "legal conclusions as to each of the four [preliminary-injunction] factors *de novo*, and its weighing of them for abuse of discretion." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016).

## III.

As previously noted, the district court's order denying injunctive relief rested solely on its determination that Perlmutter had failed to show that she would suffer irreparable harm if removed during the pendency of further proceedings. The district court therefore performed no weighing of the other preliminary-injunction factors. Although courts may generally rely solely on a movant's failure to show irreparable harm to deny injunctive relief, the district court nonetheless erred in this instance. The district court's order leaned heavily on the Supreme Court's statement in *Wilcox* that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty" — but *Wilcox* addressed circumstances that were different in important respects. *Perlmutter*, 2025 WL 2159197, at *5 (quoting 145 S. Ct. at 1415). The district court also failed to appropriately follow the Supreme Court's guidance in *Sampson* that "unusual actions relating to the discharge itself" and "genuinely extraordinary situation[s]" can support a finding of irreparable harm. 415 U.S. at 92 n.68. In our view, the district court abused its discretion by neglecting to adequately consider the specific circumstances of this case.

Perlmutter is employed by the Legislative Branch as Register, a role that requires her to provide advice to Congress about copyright issues. She alleges that the President sought to remove her from her job because he disapproved of the

9

advice that she gave to Congress in the AI Report. The Executive's alleged blatant interference with the work of a Legislative Branch official, as she performs statutorily authorized duties to advise Congress, strikes us as a violation of the separation of powers that is significantly different in kind and in degree from the cases that have come before. This case is also distinguishable from *Wilcox* because of the diminished amount of executive power that is at stake: The Register likely does not exercise substantial executive power because the position is housed within the Legislative Branch; its primary responsibility is advising Congress on matters of copyright law; and the President has no statutory removal authority over the Register at all. And finally, it is significant that Perlmutter's removal was likely unlawful because the President has no direct authority to fire her, and his installment of an Acting Librarian of Congress was likely ineffective.

On *de novo* review of the district court's finding of no irreparable harm, we reach the opposite conclusion: Based on "unusual actions relating to the discharge itself" and "genuinely extraordinary" circumstances, *Sampson*, 415 U.S. at 92 n.68, Perlmutter has demonstrated irreparable harm. The other preliminary-injunction factors — Perlmutter's likelihood of success on the merits, the balance of equities, and the public interest — also favor issuing an injunction pending appeal.

### A. Likelihood of Success on the Merits

Perlmutter's purported removal was likely unlawful. The Librarian of Congress — not the President — is authorized by statute to appoint the Register. 17 U.S.C. § 701(a). And because the governing statute is silent regarding the question of removal, the Librarian — not the President — has the power to remove Perlmutter. *See Nat'l Treasury Emps. Union*, 663 F.2d at 247 ("Absent relevant legislation" "the power to

10

remove is held by the appointing authority, and only by the appointing authority."); *see also Aviel v. Gor*, No. 25-5105, 2025 WL 1600446, at *1 (D.C. Cir. June 5, 2025) (Katsas, J., concurring) (citing *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 493, 509 (2010)). The government does not argue otherwise in its opposition. Thus, the dispute on the merits focuses on the appointment of the Acting Librarian of Congress.[1]

Blanche's purported appointment to serve as Acting Librarian of Congress was likely unlawful because any Librarian appointee must be confirmed by the Senate, 2 U.S.C. § 136-1(a), but here, Senate approval is lacking. As a result, Blanche's purported appointment of Perkins to serve as Acting Register also was likely unlawful. *See* 17 U.S.C. § 701(a).

The FVRA is likely an unavailing workaround for the government. That statute gives the President authority to appoint another Senate-confirmed official as the acting principal officer of an "Executive agency," subject to certain limitations. *See* 5 U.S.C. § 3345. The FVRA states that it is "the exclusive means for temporarily authorizing an acting [principal] official." *Id.* § 3347(a). And an action taken by any

---

[1]     The government also argues that the President's Article II duty to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, grants him unrestricted authority to designate an Acting Librarian. We disagree. "The Appointments Clause prohibits the appointment of principal officers without the advice and consent of the Senate. Such consent 'is a critical structural safeguard' against presidential overreach — a feature of our constitutional system, not a bug." *Aviel*, 2025 WL 1600446, at *2 (Katsas, J., concurring) (quoting *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 293 (2017)). It "is unlikely that the Take Care Clause gives the President unfettered discretion to designate acting principal officers with neither Senate confirmation nor a Senate recess nor even statutory authorization through the FVRA." *Id.*

11

person who was not properly appointed "shall have no force or effect." *Id.* § 3348(d)(1). For purposes of the FVRA, the phrase "Executive agency" means (1) "an Executive department," (2) "a Government corporation," or (3) "an independent establishment." *Id.* § 105.

The plain language of the statute indicates that the Library of Congress is not an "Executive agency" for purposes of the FVRA. First, Title 5 specifically enumerates the "Executive departments" and does not include the Library. *See* 5 U.S.C. § 101. Second, the Library is not a corporation owned by the government, so it does not fit the statutory definition of "Government corporation." *See id.* § 103. Third, the Library is likely not an "independent establishment" because it is not "an establishment in the executive branch." *Id.* § 104. In determining whether an entity qualifies as an "independent establishment," we have previously looked to statutes where Congress has treated the term "independent establishment" as distinct from the entity in question. *See Haddon v. Walters*, 43 F.3d 1488, 1490 (D.C. Cir. 1995) (determining that the "Executive residence" is not an "independent establishment" by considering Congress's separate use of both terms in the U.S. Code). Such is the case here, where the U.S. Code refers to the "Library of Congress" and "independent establishment" as distinct entities. 5 U.S.C § 4101 (defining "independent establishment" and the "Library of Congress" as separate agencies).

We also note that throughout Title 5, in which the FVRA is codified, Congress commonly refers to the "Library of Congress" as separate and distinct from an "Executive agency." *See* 5 U.S.C. §§ 3102(a)(1) (listing "the Library of Congress" separately from the term "Executive agency"), 3401(1) (same), 4501(1) (same), 5102(a)(1) (same), 5521(1) (same), 5541(1) (same), 5584(g) (same), 5595(a)(1) (same), 5921(2) (same),

12

5948(g)(2) (same), 6121(1) (same), 7103(a)(3) (same), 13101 (defining the "Library Congress" as a component of the "legislative branch," distinct from the "executive branch" and "Executive agency"), 4101(1) (listing the "Library of Congress" separately from "Executive department"); *see also* 2 U.S.C. § 181(b)(1) (defining "offices and agencies of the legislative branch" as including the Library of Congress); *Davis v. Billington*, 681 F.3d 377, 386 (D.C. Cir. 2012) (analyzing the Civil Service Reform Act and concluding that the statute's use of the term "'Executive agency' . . . plainly does not contain the Library of Congress within the meaning of the statute" (citing 5 U.S.C. § 7103(a)(3))); *Haddon*, 43 F.3d at 1490 (similar). That lends further support to our conclusion.

### B.  Irreparable Harm

We next turn to whether Perlmutter has shown that she is likely to suffer irreparable harm if removed during the pendency of her lawsuit. We hold that she has.

The mere loss of government employment is normally not enough to show irreparable harm during the pendency of litigation about the employee's removal because the plaintiff usually can be made whole through the issuance of back pay. *See Sampson*, 415 U.S. at 91 (Congress contemplated that the Back Pay Act would be "the usual, if not the exclusive, remedy for wrongful discharge."). In *Sampson*, the Supreme Court held that a probationary employee, who was terminated from her job with the General Services Administration, failed to make a showing of irreparable injury based on her claims of lost income and reputational damage. *Id.* at 89. The Court observed that the administrative scheme governing civil servants would be disrupted by temporary relief; that "the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs"; and that courts of

13

equity generally are "unwilling" to enforce contracts for personal service. *Id.* at 83 (cleaned up). Under the circumstances, the Court determined that a discharged government employee must make a showing of irreparable injury "sufficient in kind and degree to override these factors," which cut "against the general availability of preliminary injunctions in Government personnel cases." *Id.* at 84. Notably, however, the Court recognized that "cases may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found." *Id.* at 92 n.68. Indeed, "genuinely extraordinary situation[s]," such as those involving "any unusual actions relating to the discharge itself," might support a finding of irreparable harm in cases that are not "routine." *Id.*

Perlmutter's appointment as Register of Copyrights is very different from the government employment at issue in *Sampson*. The plaintiff in *Sampson* was a probationary employee in her first year on the job. 415 U.S. at 63–64. By contrast, Perlmutter is a government official engaged in "lead[ing] and direct[ing] the important work of the Copyright Office at a critical juncture." Mot. at 19. In the unique role of Register of Copyrights, Perlmutter has the opportunity to influence Congress on copyright matters of national importance, such as the development of generative AI. She administers the Copyright Act, which requires the examination of copyright applications, the issuance of copyright registrations, the maintenance of copyright deposits, and the recordation of transfers of copyright ownership. 17 U.S.C. §§ 205, 410–11, 705. She has rulemaking authority that is subject to review by the Librarian of Congress. *See id.* § 702. And she may set copyright fees, under the supervision of Congress. *See id.* § 708(b)(5) (The Register must "prepare a proposed fee schedule and submit the schedule with the accompanying

Add.14

14

economic analysis to the Congress."). Her statutory right to function as the Register of Copyrights is thus far weightier than the mere loss of income implicated in *Sampson*. *See Wilcox*, 145 S. Ct. at 1415 (recognizing that a "wrongfully removed officer" faces "risk of harm" from "being unable to perform her statutory duty"). The uniqueness of her role and the opportunities it gives her "transcend[] the loss of income or embarrassment involved in the typical employment action." Mot. at 19.

To be sure, Perlmutter's inability to perform her statutory functions likely does not, in itself, constitute *irreparable* harm, even if the harm is very significant. *See Dellinger v. Bessent*, No. 25-5052, 2025 WL 887518, at *4 (D.C. Cir. Mar. 10, 2025) (per curiam) (recognizing that the alleged deprivation of "the statutory right to function" is not necessarily irreparable). But here, there is more.

Certain "unusual actions relating to the discharge itself" and "genuinely extraordinary" circumstances also support a finding of irreparable harm. *Sampson*, 415 U.S. at 92 n.68. Unlike the plaintiff in *Sampson*, who claimed that her employer had violated civil-service regulations, Perlmutter alleges that the President of the United States unlawfully removed her in a manner that violates the separation of powers. Perlmutter has a statutory mandate to serve as the principal advisor to Congress on issues of copyright, 17 U.S.C. §§ 701, 702, and she plays a critical supporting role in Congress's constitutional mission to establish a system of copyright laws, U.S. Const. art. I, § 8, cl. 8. The President purported to remove Perlmutter because he allegedly disagreed with her conclusions in the AI Report, which was prepared to assist Congress in the exercise of its constitutional authority to make law and policy related to copyrights. The President then purported to install Executive Branch officials — Blanche and Perkins — as Acting Librarian

15

of Congress and Acting Register of Copyrights. If those facts are proven true, that would be a grave intrusion by the President into the constitutional powers of a coordinate branch of government. Moreover, as already explained, Perlmutter's removal was likely illegal because only a lawfully appointed and Senate-confirmed Librarian can remove the Register. The President's attempt to reach into the Legislative Branch to fire an official that he has no statutory authority to either appoint or remove, and to impede Congress's ability to carry out an enumerated constitutional duty, presents a "genuinely extraordinary situation," *Sampson*, 415 U.S. at 92 n.68, that threatens irreparable harm to the constitutional structure of our government. The President's purported removal of the Legislative Branch's chief advisor on copyright matters, based on the advice that she provided to Congress, is akin to the President trying to fire a federal judge's law clerk.

The district court failed to recognize the "extraordinary situation" presented by this case and erred in mechanically applying the Supreme Court's reasoning in *Wilcox*. *Wilcox* involved the constitutionality of for-cause removal protections for members of the National Labor Relations Board and the Merit Systems Protection Board, agencies that are housed within the Executive Branch. *See* 145 S. Ct. at 1415. That case and others like it implicate the President's Article II authority as the head of the Executive Branch, and his statutory power to exercise at least some control over the involved officials, such as by appointing them (with the advice and consent of the Senate) and removing them (for cause). *See id.*; *see also Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025); *Dellinger*, 2025 WL 887518, at *3. In *Wilcox*, where the Supreme Court held that the government was likely to succeed on the merits of its claim that the President was entitled to exercise at-will removal authority, it was more difficult for the ousted officials to demonstrate irreparable injury. There, under the Court's

16

analysis, the "actions relating to the discharge[s]" suggested that the officials had no entitlement to keep their jobs, and so their removals were not "extraordinary." *Sampson*, 415 U.S. at 92 n.68; *see also Wilcox*, 145 S. Ct. at 1415 (The "Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power" at an agency that likely exercises "considerable executive power," than does a "wrongfully removed officer."); *Boyle*, 145 S. Ct. at 2654 (same).

    The case most similar to the one before us is *Aviel v. Gor*, where we ruled in favor of the removed official. *See* 2025 WL 1600446, at *1 (Katsas, J., concurring). There, we declined to stay the district court's preliminary injunction enjoining various government officials from removing Aviel from her position as Chief Executive Officer of the Inter-American Foundation, a government grant-making corporation. *See id.* at *1–2. In explaining the court's ruling, Judge Katsas (joined by Judge Pillard) noted that the government, which had moved for the stay, did not demonstrate a likelihood of success on the merits of its claim that Aviel had been lawfully removed. *Id.* at *1. He explained that, similar to this case, the President likely had no statutory authority to appoint or remove Aviel, and his appointment of a Board member who purported to ratify her removal also was likely unlawful under governing statutes. *Id.* at *1–2. Regarding irreparable harm, the district court had determined that Aviel would be irreparably harmed by the loss of her "right to function" and because "the very survival of her organization [was] at stake." *Aviel v. Gor*, 780 F. Supp. 3d 1, 14 (D.D.C. 2025). By declining to stay the preliminary injunction, we implicitly agreed with the district court that Aviel would be irreparably harmed absent the preliminary injunction. *See Aviel*, 2025 WL 1600446, at *1–2 (Katsas, J., concurring); *see also Nken*, 556 U.S. at 426 (requiring courts to examine whether a stay will substantially

17

injure the other party); *Clevinger*, 134 F.4th at 1236 ("Even under the sliding-scale approach, a movant's failure to show any irreparable harm is grounds for refusing to issue a preliminary injunction, even if the other three factors merit such relief." (cleaned up)). *Aviel* supports our conclusion that Perlmutter has made the requisite showing of irreparable harm where she, like Aviel, has alleged a loss of her "right to function" plus "genuinely extraordinary" circumstances.

In sum, "unusual actions relating to the discharge itself" support a finding of irreparable harm to Perlmutter absent an injunction. Perlmutter can likely establish that she was unlawfully removed from her post as Register of Copyrights, and that her removal was motivated by the President's disapproval of her work in service of Congress — work that was related to legislative, not executive, functions. Moreover, she was purportedly replaced by an Executive Branch official. That alleged violation of the separation of powers is irreparably harmful to both Perlmutter and to our system of government. In a system of checked and balanced power, the Executive has no authority to punish a Legislative Branch official for the advice that she provides to Congress. Moreover, if Perlmutter is temporarily barred from "[c]onduct[ing] studies" and "[a]dvis[ing] Congress on national and international issues relating to copyright," 17 U.S.C. § 701(b)(1), (4), no amount of back pay will compensate her or Congress for her interim inability to support Congress's consideration of copyright law and policy during a critical time. This presents a "genuinely extraordinary situation," such that she has made the requisite showing of irreparable harm.

## C. Balance of Equities and the Public Interest

Because the "first two factors of the traditional standard are the most critical," *Nken*, 556 U.S. at 434, Perlmutter

18

advances to this final, combined factor, in a strong position. In our view, the balance of equities and the public interest also weigh in favor of Perlmutter remaining in her job.

In cases involving the removal of government officials, the Supreme Court has balanced the parties' competing assertions of harm and ruled in the government's favor where the government was likely to show that the agencies in question "exercise *considerable executive power*," and that the removed executive official sought to "*continue exercising the executive power*." *Wilcox*, 145 S. Ct. at 1415 (emphases added); *see also Boyle*, 145 S. Ct. at 2654 ("[T]he Consumer Product Safety Commission *exercises executive power* in a similar manner as the National Labor Relations Board." (emphasis added)). Reinstating an already-ousted official under such circumstances would be "obviously disruptive" and would likely inflict irreparable injury on the government because it would interfere with the President's constitutional power to supervise the Executive Branch. *Sampson*, 415 U.S. at 83; *see also Dellinger*, 2025 WL 887518, at *3. By contrast, the injunction requested by Perlmutter would not require the President to work with a removed principal officer at an Executive Branch agency; and it would not interfere with the President's constitutional prerogative to supervise the Executive Branch. Because Perlmutter leads an agency that is housed in the Legislative Branch and her primary role is to advise Congress, Perlmutter's situation differs significantly from the Executive Branch officials whose removals have been repeatedly upheld. And because she continues to serve as Register at the present time, ruling in her favor would not disrupt the work of the U.S. Copyright Office. To the contrary, it is her removal that would be disruptive.

19

Notably, the Register likely does not exercise considerable or substantial executive power.[2]  The Register serves Congress, executive agencies, and the Judiciary by providing advice, information, and assistance on national and international issues relating to copyright.  17 U.S.C. § 701(b)(1)–(3).  She conducts "studies and programs regarding copyright," and performs "other functions as Congress may direct."  *Id.* § 701(b)(4), (5). In so doing, the Register primarily works for Congress, similar to the Congressional Research Service, the powers of which "are exercised primarily for legislative purposes." *Intercollegiate Broad. Sys.*, 684 F.3d at 1341; *see also Bowsher v. Synar*, 478 U.S. 714, 746 n.11 (1986) (Stevens, J., concurring) (explaining that the Library's Congressional Research Service is a "congressional agent" for purposes of the nondelegation doctrine).  To the extent that any of the Register's duties might be characterized as "executive" in nature, they likely do not involve the exercise of "substantial" executive power.  Indeed, Congress chose to house the Copyright Office in the Legislative Branch, to subject the Register to close supervision by both the Librarian of Congress

---

[2]    That is not true of all offices within the Library of Congress, which "perform[] a range of different functions."  *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1341 (D.C. Cir. 2012).  For example, the Copyright Royalty Board — which is not part of the Copyright Office — has the power "to promulgate copyright regulations, to apply the statute to affected parties, and to set rates and terms case by case," which are functions "generally associated in modern times with executive agencies rather than legislators."  *Id.* at 1342.  That category of Library offices is "undoubtedly a 'component of the Executive Branch.'"  *Id.* (quoting *Free Enter. Fund*, 561 U.S. at 511).  Although the Register has some oversight responsibilities regarding Copyright Royalty Judges, any control leaves those judges with "vast discretion," is "likely to be quite faint," and is "short of the kind that would render the [Copyright Royalty Judges] inferior officers."  *Id.* at 1339.

20

and Congress itself, and to assign prominent Congress-facing duties to the Register. Those factors set the Register apart from traditional Executive Branch officials and suggest that the Register likely does not wield "substantial" executive power.

The public interest also favors granting Perlmutter's requested relief. There is no public interest in implementing Perlmutter's likely illegal removal. *See League of Women Voters of U.S.*, 838 F.3d at 13 ("There is a substantial public interest in having" the government "abide by the federal laws." (cleaned up)). Moreover, requiring that Perlmutter be removed while this litigation proceeds would deprive Congress of her valuable services as Register while it considers important issues such as the intersection of copyright law and the development of generative AI. The public has a profound interest in the Register's continued work.

Our dissenting colleague does not dispute that Perlmutter is likely to succeed on the merits of her lawsuit, that Perlmutter would suffer irreparable harm absent an injunction pending appeal, or that those two factors are the most critical in deciding whether to grant the requested injunction. Instead, our colleague would deny the requested relief based solely on his assessment of the balance of equities. In his view, the equities in this case are identical to those that were considered in *Wilcox* and *Boyle*. But, as we have explained, this case is different.

On one side of the scale, Perlmutter asserts her interest in performing her statutory functions at a critical time, as well as the structural harm to our government from an unprecedented violation of the separation of powers. The constitutional violation alleged here is different in kind and in degree from that discussed in *Wilcox* and *Boyle* because Perlmutter is a Legislative Branch official whom the President purportedly

21

fired in retaliation for advice that she gave Congress; and the President has no statutory authority to appoint or remove the Register of Copyrights. On the other side of the scale, the President asserts an interest in removing Perlmutter that is far weaker than in *Wilcox* and *Boyle* because Perlmutter is closely supervised by the Librarian and by Congress and therefore does not exercise "considerable" or "substantial" executive power. *See supra* at 13–14, 18–20, 19 n.2. Because our dissenting colleague does not engage with the particular facts of the case before us, his analysis is flawed.

\*    \*    \*

In sum, all of the preliminary-injunction factors weigh in favor of granting an injunction pending appeal. Perlmutter has shown a likelihood of success on the merits of her claim that the President's attempt to remove her from her post was unlawful because she may be discharged only by a Senate-confirmed Librarian of Congress. She also has made the requisite showing of irreparable harm based on the President's alleged violation of the separation of powers, which deprives the Legislative Branch and Perlmutter of the opportunity for Perlmutter to provide valuable advice to Congress during a critical time. And Perlmutter has shown that the balance of equities and the public interest weigh in her favor because she primarily serves Congress and likely does not wield substantial executive power, which greatly diminish the President's interest in her removal. For the foregoing reasons, we grant Perlmutter's requested injunction pending appeal.

WALKER, *Circuit Judge*, dissenting:

The Register of Copyrights exercises "executive" power.[1] And "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty."[2] So the district court did not permit the Register of Copyrights to remain in her post while she challenges the legality of her removal, and neither should we.

\*     \*     \*

The Register of Copyrights exercises executive power in a host of ways. From within the Library of Congress, she "administers the Copyright Act, which requires the examination of copyright applications, the issuance of copyright registrations, the maintenance of copyright deposits, and the recordation of transfers of copyright ownership."[3] In addition, she "has rulemaking authority that is subject to review by the Librarian of Congress."[4] And she "has some oversight responsibilities regarding Copyright Royalty Judges," who have "the power 'to promulgate copyright regulations, to apply the statute to affected parties, and to set rates and terms case by case,' which are functions 'generally associated in modern

---

[1] *Medical Imaging & Technology Alliance v. Library of Congress*, 103 F.4th 830, 840 n.4 (D.C. Cir. 2024).

[2] *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025); *see also Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) (same); *cf. Slaughter v. Trump*, No. 25-5261, slip op. 7 (D.C. Cir. Sept. 2, 2025) ("the Supreme Court's stay orders in *Wilcox* and *Boyle* teach that the balance of equities in removal cases not governed by on-point Supreme Court precedent generally favors the government"); *but see id.* ("the equitable calculus in this case differs").

[3] Concurring Op. 13 (citing 17 U.S.C. §§ 205, 410-11, 705).

[4] *Id.* (citing 17 U.S.C. § 702).

2

times with executive agencies rather than legislators.'"[5]  These are among the reasons we have "recently recognized the important executive power exercised by the Library, suggesting that whatever the Library's historical association with Congress, it is squarely a component of the Executive Branch *in its role as a copyright regulator*."[6]

Recently, repeatedly, and unequivocally, the Supreme Court has stayed lower-court injunctions that barred the President from removing officers exercising executive power. *Trump v. Wilcox* reasoned that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty."[7]  And *Trump v. Boyle* applied the same reasoning with the same language to reach the same result.[8]

Applying those precedents, the district court denied a request for a preliminary injunction to reinstate Register of Copyrights Shira Perlmutter after President Donald Trump fired her.  Perlmutter then asked this court for an injunction pending appeal.

---

[5] *Id.* at 19 n.2 (quoting *Intercollegiate Broadcasting System, Inc. v. Copyright Royalty Board*, 684 F.3d 1332, 1342 (D.C. Cir. 2012)).

[6] *Medical Imaging & Technology Alliance*, 103 F.4th at 840 n.4 (citing *Intercollegiate Broadcasting System, Inc.*, 684 F.3d at 1341-42) (emphasis added).

[7] *See* 145 S. Ct. at 1415.

[8] *See* 145 S. Ct. at 2654 (same) (quoting *Wilcox*, 145 S. Ct. at 1415); *see also id.* ("The application is squarely controlled by *Trump v. Wilcox*.  Although our interim orders are not conclusive as to the merits, they inform how a court should exercise its equitable discretion in like cases." (cleaned up)).

3

My colleagues grant the injunction, holding that the district court likely "abused its discretion"[9] by "mechanically applying the Supreme Court's reasoning in *Wilcox*."[10] Instead, they say the district court should have considered the "specific circumstances of this case."[11]    In their view, those circumstances are (1) the relationship between Congress and the Register of Copyrights; (2) the amount of executive power at stake; and (3) the suit's merits.[12]

I respectfully dissent.

First, whether or not the Register of Copyrights is best labeled "a Legislative Branch official,"[13] the Register of Copyrights is housed within the Library of Congress, which "is squarely a component of the Executive Branch in its role as a copyright regulator."[14]

Second, whether or not the Register of Copyrights exercises less executive power than do some other executive officers,[15] *Wilcox* and *Boyle* cover *any* officer "exercising the executive power."[16]

---

[9] Concurring Op. 2, 8.

[10] *Id.* at 15.

[11] *Id.* at 8.

[12] *Id.* at 8-9.

[13] *Id.* at 9.

[14] *Medical Imaging & Technology Alliance*, 103 F.4th at 840 n.4.

[15] *See* Concurring Op. 9 (arguing that it is a "diminished amount of executive power that is at stake" — which appears to mean some "executive power" but less than "substantial executive power").

[16] *Wilcox*, 145 S. Ct. at 1415; *Boyle*, 145 S. Ct. at 2654.

4

And third, whether or not "Perlmutter's removal was likely unlawful,"[17] *Wilcox* and *Boyle* referred to "a wrongfully removed officer" when they said that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty."[18]

\*   \*   \*

I do not doubt that my colleagues are attempting in good faith to interpret and apply *Wilcox* and *Boyle*.[19] But today they repeat the mistake that *Wilcox* and *Boyle* twice corrected.[20] We must apply those precedents even if "Perlmutter alleges that the President of the United States unlawfully removed her in a manner that violates the separation of powers."[21]

Gwynne Wilcox alleged the same thing.[22] So did Cathy Harris.[23] And so did Mary Boyle.[24]

---

[17] Concurring Op. 9.

[18] *Wilcox*, 145 S. Ct. at 1415; *Boyle*, 145 S. Ct. at 2654.

[19] *See* Harry T. Edwards, *The Effects of Collegiality on Judicial Decision Making*, 151 U. PENN. L. REV. 1639 (2003).

[20] *Cf.* R. Reagan, 1980 Presidential Debate ("There you go again.").

[21] Concurring Op. 14; *cf.* Trevor N. McFadden & Vetan Kapoor, *The Precedential Effects of The Supreme Court's Emergency Stays*, 44 Harv. J.L. & Pub. Pol'y 827 (2021).

[22] *Cf. Wilcox*, 145 S. Ct. at 1415 (staying Wilcox's injunction).

[23] *Cf. Wilcox*, 145 S. Ct. at 1415 (staying Harris's injunction).

[24] *Cf. Boyle*, 145 S. Ct. at 2654 (staying Boyle's injunction); *see also* Order, *Trump v. Slaughter*, No. 25A264, S. Ct. (Sept. 8, 2025).

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

## A.    Parties and Amici

Plaintiff-Appellant is Shira Perlmutter.  Defendants-Appellees are Todd Blanche, Paul Perkins, Sergio Gor, Trent Morse, the Executive Office of the President, and Donald J. Trump.

## B.    Rulings Under Review

The rulings under review are the Order, Dkt. No. 39 (July 30, 2025), App.13a, and the Memorandum Opinion, Dkt. No. 40 (July 30, 2025), App.14a, denying plaintiff's motion for a preliminary injunction in *Perlmutter v. Blanche*, No. 25-cv-1659 (D.D.C.) (Kelly, J.).  The district court's opinion is available at *Perlmutter v. Blanche*, No. 25-cv-1659 (TJK), 2025 WL 2159197 (D.D.C. July 30, 2025).

## C.    Related Cases

This case has not previously been before this Court.  Counsel for defendants-appellees are unaware of any other related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

*/s/ Ashley C. Honold*
Ashley C. Honold