[NOT YET SCHEDULED FOR ARGUMENT]
**25-5285**

---

**IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

SHIRA PERLMUTTER, Register of Copyrights and
Director of the U.S. Copyright Office,
Plaintiff-Appellant,

*v.*

TODD BLANCHE, in his capacity as the person claiming to have been
acting Librarian of Congress, et al.,
Defendants-Appellees,

---

On Appeal from the United States District Court
for the District of Columbia
No. 25-cv-1659
Hon. Timothy J. Kelly, U.S. District Judge

---

**OPENING BRIEF FOR PLAINTIFF-APPELLANT**

---

Allyson R. Scher
Brian D. Netter
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
ascher@democracyforward.org
bnetter@democracyforward.org

*Counsel for Plaintiff-Appellant*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

As required by Circuit Rules 27(a)(4) and 28(a)(1), undersigned counsel for Appellant Shira Perlmutter hereby provides the following information:

### I. Parties Appearing Below

The parties who appeared before the U.S. District Court were:

1. Shira Perlmutter, *Plaintiff-Appellant*.
2. Todd Blanche, *Defendant-Appellee*.
3. Paul Perkins, *Defendant-Appellee*.
4. Sergio Gor, *Defendant-Appellee*.
5. Trent Morse, *Defendant-Appellee*.
6. Executive Office of the President, *Defendant-Appellee*.
7. Donald J. Trump, *Defendant-Appellee*.

### II. Parties Appearing in this Court

1. Shira Perlmutter, *Plaintiff-Appellant*.
2. Todd Blanche, *Defendant-Appellee*.
3. Paul Perkins, *Defendant-Appellee*.
4. Sergio Gor, *Defendant-Appellee*.

5. Trent Morse, *Defendant-Appellee*.

6. Executive Office of the President, *Defendant-Appellee*.

7. Donald J. Trump, *Defendant-Appellee*.

### III. Rulings Under Review

The ruling under review in this case is United States District Court Judge Timothy J. Kelly's July 30, 2025, "Memorandum Opinion and Order" denying Ms. Perlmutter's motion for a preliminary injunction.

### IV. Related Cases

This case has not previously been filed with this Court or any other court. Counsel for Plaintiff-Appellant is unaware of any other related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

## TABLE OF CONTENTS

INTRODUCTION ........ 1

STATEMENT OF JURISDICTION ........ 3

STATEMENT OF ISSUE ON APPEAL ........ 4

STATUTES AND REGULATIONS ........ 4

STATEMENT OF THE CASE ........ 4

A. The Register of Copyrights and the U.S. Copyright Office ........ 4

B. The Attempted Takeover of the Library of Congress and the Copyright Office ........ 6

C. Prior Proceedings ........ 8

SUMMARY OF ARGUMENT ........ 13

STANDARD OF REVIEW ........ 15

ARGUMENT ........ 15

I. The District Court Abused Its Discretion by Concluding that the Equities Preclude the Provision of Relief ........ 15

A. The district court erred when it concluded that Perlmutter cannot demonstrate irreparable harm ........ 15

B. The balance of the equities and public interest weigh in favor of preliminary relief for a wrongfully dismissed federal officer ........ 19

II. Perlmutter Is Likely to Prevail on the Merits ........ 23

A. The President lacks statutory authority to remove Perlmutter directly ........ 23

B. The President lacks statutory authority to appoint Blanche, who therefore does not possess the authority to remove Perlmutter ........ 26

C. The President does not have inherent constitutional authority to overcome his lack of statutory authority ......... 33

1. The President does not have inherent Article II authority to appoint Blanche ...................................... 35

2. The President does not have inherent Article II authority to remove Perlmutter directly ..................... 39

CONCLUSION ........................................................................... 43

CERTIFICATE OF COMPLIANCE ...................................................... 44

CERTIFICATE OF SERVICE ............................................................ 45

ADDENDUM ........................................................................... Add.01

## TABLE OF AUTHORITIES

Page(s)

**CASES**


*Aviel v. Gor*,
No. 25-cv-5105, 2025 WL 1600446 (D.C. Cir. June 5, 2025) .......... 10, 34, 35, 36, 42

*Blanche v. Perlmutter*,
No. 25A478, 2026 WL 1871314 (U.S. June 30, 2026).......... 1, 13, 20

*Blanche v. Perlmutter*,
146 S. Ct. 844 (2025) .......... 13

*Cook v. Trump*,
804 F. Supp. 3d 14 (D.D.C. 2025).......... 19

*Davis v. Billington*,
681 F.3d 377 (D.C. Cir. 2012).......... 3, 9, 26, 29, 30

*Edmond v. United States*,
520 U.S. 651 (1997) .......... 27

*Eltra Corp. v. Ringer*,
579 F.2d 294 (4th Cir. 1978) .......... 25

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010) .......... 24, 41

*Freytag v. Commissioner*,
501 U.S. 868 (1991) .......... 37

*Haddon v. Walters*,
43 F.3d 1488 (D.C. Cir. 1995).......... 31

*In re Hennen*,
38 U.S. 230 (1839) .......... 25, 40, 42

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*,
684 F.3d 1332 (D.C. Cir. 2012) .......... 25

*Jama v. Immigr. & Customs Enf't*,
543 U.S. 335 (2005) .......... 26

*Judd v. Billington*,
863 F.2d 103 (D.C. Cir. 1988) .......... 32

*Kennedy v. Braidwood Mgmt., Inc.*,
606 U.S. 748 (2025) .......... 24

*Kissinger v. Reps. Comm. for Freedom of the Press*,
445 U.S. 136 (1980) .......... 32

*League of Women Voters of U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) .......... 15, 22

*Lebron v. Nat'l R.R. Passenger Corp.*,
513 U.S. 374 (1995) .......... 30

*Marbury v. Madison*,
5 U.S. 137 (1803) .......... 38

*Mistretta v. United States*,
488 U.S. 361 (1989) .......... 30

*Nat'l Treasury Emps. Union v. Reagan*,
663 F.2d 239 (D.C. Cir. 1981) .......... 24, 25, 42

*NLRB v. Noel Canning*,
573 U.S. 513 (2014) .......... 37

*NLRB v. SW Gen., Inc.*,
580 U.S. 288 (2017) .......... 27

*Perlmutter v. Blanche*,
No. 25-cv-5285, 2025 WL 2627965 (D.C. Cir. Sept. 10, 2025) .......................... 1, 9, 10, 18, 19, 21, 22, 23, 26, 28, 34, 36, 42

*Sampson v. Murray*,
415 U.S. 61 (1974) .................................................................. 2, 17, 18

*Trump v. Boyle*,
145 S. Ct. 2653 (2025) .................................................................. 12

*Trump v. Cook*,
146 S. Ct. 2234 (2026) .................................. 1, 2, 16, 17, 18, 19, 21

*Trump v. Slaughter*,
146 S. Ct. 2283 (2026) ............................ 1, 9, 13, 20, 34, 38, 41, 42

*Trump v. Wilcox*,
145 S. Ct. 1415 (2025) .......................................................... 11, 12, 20

*Wash. Legal Found. v. U.S. Sent'g Comm'n*,
17 F.3d 1446 (D.C. Cir. 1994)........................................................ 32

**U.S. CONSTITUTIONAL PROVISIONS**

U.S. Const. art. I, § 8 .................................................................. 5

U.S. Const. art. II ...........................................3, 12, 14, 23, 35, 36, 38, 39

U.S. Const. art. II, § 2 ............................................................ 24, 40

U.S. Const. art. II, § 3 .................................................................. 35

**FEDERAL STATUTES**

2 U.S.C. § 136 .................................................................. 6

2 U.S.C. § 141 note (107 Stat. 1043, 1044) .............................................. 32

2 U.S.C. § 181 .......... 32

5 U.S.C. § 101 .......... 28

5 U.S.C. § 103 .......... 28

5 U.S.C. § 104 .......... 28

5 U.S.C. § 105 .......... 28, 30

5 U.S.C. § 3102 .......... 31

5 U.S.C. § 3401 .......... 31

5 U.S.C. § 3345 .......... 2, 26, 27, 28

5 U.S.C. § 3347 .......... 28

5 U.S.C. § 4101 .......... 31

5 U.S.C. § 4501 .......... 31

5 U.S.C. § 5102 .......... 31

5 U.S.C. § 5521 .......... 31

5 U.S.C. § 5541 .......... 31

5 U.S.C. § 5584 .......... 31

5 U.S.C. § 5595 .......... 31

5 U.S.C. § 5721 .......... 31

5 U.S.C. § 5921 .......... 31

5 U.S.C. § 5948 .......... 31

5 U.S.C. § 6121 .......... 31

5 U.S.C. § 7103 .......... 30, 31

5 U.S.C. § 13101 .......... 30

5 U.S.C. § 13142 .......... 30

17 U.S.C. § 205 .......... 5

17 U.S.C. § 701 .......... 4, 5, 6, 25

17 U.S.C. § 702 .......... 6

28 U.S.C. § 1292 .......... 3

28 U.S.C. § 1331 .......... 3

31 U.S.C. § 1105 note (132 Stat. 5430, 5430) .......... 32

**LEGISLATIVE MATERIALS**

H.R. Conf. Rep. No. 105-796 (1998) .......... 4, 32

**OTHER AUTHORITIES**

7 Patry on Copyright § 28:16 (Mar. 2025) .......... 33

Bray, Remedies in the *Officer Removal Cas*es, 17 J. Legal Analysis 236, 246 (2025) .......... 17

Ivan Moreno, *Unsigned Copyright Certificates Raise Validity Questions*, Law360 (June 3, 2025), https://perma.cc/9HFT-Z893 .......... 7

Mohar Chatterjee, Trump Derides Copyright and State Rules in AI Action Plan Launch, POLITICO (July 23, 2025), https://perma.cc/YV55-QP7S .......... 8

*Register of Copyrights Selection and Accountability Act: Hearing on H.R. 1695 Before the S. Comm. on Rules and Admin.*, 115th Cong. 3 (2018) .......... 5

## GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| CSRA | Civil Service Reform Act |
| FOIA | Freedom of Information Act |
| FVRA | Federal Vacancies Reform Act |
| IAF | Inter-American Foundation |
| PCAOB | Public Company Accounting Oversight Board |

## INTRODUCTION

Plaintiff-appellant Shira Perlmutter filed suit after the President purported, without a lawful basis, to remove her from her position as Register of Copyrights and Director of the U.S. Copyright Office. The district court denied her motion for a preliminary injunction, JA039, but a motions panel of this Court granted Perlmutter's motion for an injunction pending appeal (*Perlmutter v. Blanche*, No. 25-cv-5285, 2025 WL 2627965 (D.C. Cir. Sept. 10, 2025) (per curiam), *reh'g en banc denied* (Oct. 1, 2025)). Defendants then sought emergency relief from the Supreme Court. The Court deferred the application pending its resolution of *Trump v. Slaughter*, 146 S. Ct. 2283 (2026), and *Trump v. Cook*, 146 S. Ct. 2234 (2026). After those cases were decided, the Court denied Defendants' application without noted dissent. *Blanche v. Perlmutter*, No. 25A478, 2026 WL 1871314 (U.S. June 30, 2026). For nearly a year since this Court entered the injunction pending appeal, Perlmutter has continued to serve as Register.

*Cook* establishes that the district court's denial of Perlmutter's motion was in error. The district court assumed that there was no lawful basis for Perlmutter's removal but nevertheless concluded that it lacked authority to grant her relief based on its view that "preliminary

equitable intervention in government-personnel cases" is available only in a "genuinely extraordinary situation." JA097 (quoting *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974)). But the Supreme Court considered the Government's assertion "that federal courts cannot grant a preliminary injunction ordering reinstatement during the pendency of litigation" and concluded that "[t]he law does not require such a result." *Cook*, 146 S. Ct. at 2250; *compare id. with id.* at 2276 (Thomas, J., dissenting) (interpreting *Sampson* to foreclose such relief), *and id.* at 2278 (Alito, J., dissenting) (same).

As in *Cook*, then, Perlmutter is entitled to preliminary relief if she is likely to prevail on her claim that her purported removal was unlawful. And she is. The President purported to remove Perlmutter himself, but she serves as an inferior officer who can be removed only by the principal officer who appointed her—the Librarian of Congress. The President also purported to have appointed an acting Librarian of Congress who purported to remove Perlmutter under the authority of his temporary appointment. But the President's supposed statutory authority for appointing an acting Librarian—the Federal Vacancies Reform Act of 1998 (FVRA), 5 U.S.C. § 3345—reaches only to a vacancy

at an "Executive agency," and this Court has already determined that the "narrowing term 'Executive agency' . . . plainly does not contain the Library of Congress within the meaning of the statute." *Davis v. Billington*, 681 F.3d 377, 386 (D.C. Cir. 2012). No court at any level has taken a contrary view.

Nor does the Constitution confer the authority that Congress has withheld. Defendants asserted below that Article II invests the President with inherent authority to appoint acting officials, but ample authority establishes otherwise.

This Court should reverse the district court's decision denying Perlmutter's motion for a preliminary injunction and confirm what it has already recognized in granting injunctive relief pending this appeal: that Perlmutter is entitled to continue serving as Register during the pendency of district court proceedings.

## STATEMENT OF JURISDICTION

The district court had jurisdiction of this matter under 28 U.S.C. § 1331. The district court denied Plaintiff's motion for a preliminary injunction on July 30, 2025. JA093. Plaintiff filed a notice of appeal on July 31, 2025. JA109–10. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF ISSUE ON APPEAL

Whether Perlmutter is entitled to a preliminary injunction enjoining Defendants' unlawful attempts to remove Perlmutter from her position as the Register of Copyrights and Director of the U.S. Copyright Office.

## STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A. The Register of Copyrights and the U.S. Copyright Office

Shira Perlmutter is the Register of Copyrights. The Register is the "director of the Copyright Office," 17 U.S.C. § 701(a), which has a "longstanding role as advisor to Congress on matters within its competence." H.R. Conf. Rep. No. 105-796, at 77 (1998). The Register's role "is separate from testimony or other recommendations by the Administration pursuant to the President's concurrent constitutional power to make recommendations to Congress." *Id.* The Register is required to "[a]dvise Congress on national and international issues relating to copyright," to "[c]onduct studies and programs regarding copyright," and to "[p]erform such other functions as Congress may

direct." 17 U.S.C. § 701(b); *see also Register of Copyrights Selection and Accountability Act: Hearing on H.R. 1695 Before the S. Comm. on Rules and Admin.*, 115th Cong. 3 (2018) (statement of Sen. Klobuchar) (describing the Register of Copyrights as Congress's "chief copyright policy adviser").

In her role as advisor to Congress, Perlmutter has produced multiple reports on copyright law and policy issues, most recently addressing the thorny issues raised by artificial intelligence. Perlmutter issued Part 3 of her report on fair use of copyrighted materials and generative artificial intelligence ("AI Report") in pre-publication format on May 9, 2025; the next day, the President purported to remove her. *See* JA028–29.

Pursuant to its authority "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries," U.S. Const. art. I, § 8, cl. 8, Congress has also entrusted the Register with the responsibilities to register works protected by copyright, to collect copyright deposits, and to record documents pertaining to copyright. 17 U.S.C. §§ 407–11, 205; *see* JA027–28. She proposes rules for the

administration of these functions that may be promulgated after review by the Librarian of Congress, *see id.* § 702. "The Register of Copyrights, together with the subordinate officers and employees of the Copyright Office, shall be appointed by the Librarian of Congress, and shall act under the Librarian's general direction and supervision." *Id.* § 701(a).

### B. The Attempted Takeover of the Library of Congress and the Copyright Office

On Thursday, May 8, 2025, President Trump removed Dr. Carla D. Hayden from her Senate-confirmed position as Librarian of Congress. JA018. In accordance with the Library's regulations—issued pursuant to authority delegated by Congress, 2 U.S.C. § 136—Principal Deputy Librarian of Congress Robert Newlen replaced Dr. Hayden as acting Librarian. JA019; *see also* JA027.

On Friday, May 9, Perlmutter issued the pre-publication version of Part 3 of the AI Report. JA019. On Saturday, May 10, Trent Morse, then-Deputy Assistant to the President and Deputy Director of the White House Presidential Personnel Office, sent an email to Perlmutter, stating, on the President's behalf, that her position as the Register of Copyrights and Director of the U.S. Copyright Office was terminated, effective immediately. *Id.*; JA029; JA033–34. The

following Monday, May 12, Justice Department employees Paul Perkins and Brian Nieves arrived at the Library of Congress with a letter from the President purporting to appoint then-Deputy Attorney General Todd Blanche as acting Librarian of Congress pursuant to the FVRA, and an email from Blanche purporting to appoint Perkins and Nieves as acting Register and acting Deputy Librarian, respectively. JA029; JA035–37. Officials at the Library did not recognize Blanche, Perkins, or Nieves as proper acting officials. JA029–30; D. Ct. Dkt. 49-2 at 2. At no point during the ensuing 15 months has any of them performed any of the responsibilities of an acting Library official. JA029–30; D. Ct. Dkt. 49-2 at 2. Defendants later represented that Blanche left his purported position at the Library on December 4, 2025. D. Ct. Dkt. 54 at 2 n.1.

Between the initiation of this lawsuit and the D.C. Circuit's injunction pending appeal, there was public uncertainty around the status of the Copyright Office and its actions. *See* Ivan Moreno, *Unsigned Copyright Certificates Raise Validity Questions*, Law360 (June 3, 2025), https://perma.cc/9HFT-Z893. In July 2025, when President Trump released a 28-page "AI Action Plan," he publicly

expressed a position on the use of copyrighted materials in generative AI training that contradicts Perlmutter's analysis and advice to Congress in the AI Report. *See* Mohar Chatterjee, *Trump Derides Copyright and State Rules in AI Action Plan Launch*, POLITICO (July 23, 2025), https://perma.cc/YV55-QP7S.

### C. Prior Proceedings

Perlmutter filed suit on May 22, 2025, and moved that same day for a temporary restraining order. JA012–25; D. Ct. Dkt. 1. The district court denied the motion on May 28, 2025. *See* D. Ct. Dkt. May 28, 2025 Min. Order. Without addressing Perlmutter's likelihood of success on the merits, the district court concluded that Perlmutter had not demonstrated that the loss of her position as Register would cause her to be irreparably harmed in the next 14 days. *See* D. Ct. Dkt. 15, Tr. of Oral Arg. at 37:22–24, 47:20–23, 51:23–24. Perlmutter asked the court to proceed to expedited summary judgment proceedings, *see* D. Ct. Dkt. 16, but the court declined to expedite consideration, whereafter Perlmutter filed a motion for a preliminary injunction. *See* D. Ct. Dkt. 24. On July 30, 2025, the district court denied that motion, again taking the view that, irrespective of the merits of her claim, Perlmutter would not be irreparably harmed during the pendency of litigation. *See*

JA094–108.[1]

Perlmutter noticed an interlocutory appeal. On September 10, 2025, this Court entered an injunction pending appeal, precluding Defendants from interfering with Perlmutter's continued service as Register of Copyrights. *Perlmutter v. Blanche*, 2025 WL 2627965 (D.C. Cir. Sept. 10, 2025), *reh'g en banc denied* (Oct. 1, 2025).

Judge Pan, joined by Judge Childs, filed a concurring opinion, explaining that Perlmutter was likely to prevail on the merits of her challenge to the appointment of Blanche under the FVRA because "[t]he plain language of the statute indicates that the Library of Congress is not an 'Executive agency' for purposes of the FVRA." *Id.* at *5. Indeed, as explained below, Defendants' contrary argument is squarely foreclosed by this Court's decision in *Davis v. Billington*, 681 F.3d 377 (D.C. Cir. 2012). The motions panel also concluded that the President

[1] Pursuant to the parties' jointly requested briefing schedule, Perlmutter filed a motion for summary judgment in district court on September 8, 2025. D. Ct. Dkt. 49. Defendants cross-moved for summary judgment on September 22. D. Ct. Dkt. 50. Briefing on the parties' cross-motions has since been completed. Following the Supreme Court's decision in *Trump v. Slaughter*, 146 S. Ct. 2283 (2026), the district court directed supplemental briefing on the effect of the decision on the pending cross-motions, which the parties completed on August 14, 2026. D. Ct. Dkts. 58–61.

lacked extra-statutory authority to appoint an acting Librarian and noted that it did not need to decide whether the President could directly remove the Register, because the government had not so argued. *See Perlmutter*, 2025 WL 2627965, at *5 (Pan, J., concurring, joined by Childs, J.).

Next, the motions panel concluded that Perlmutter had demonstrated irreparable harm from "[t]he President's attempt to reach into the Legislative Branch to fire an official that he has no statutory authority to either appoint or remove, and to impede Congress's ability to carry out an enumerated constitutional duty." *See id.* at *6–8 (Pan, J., concurring, joined by Childs, J.). The Court's conclusion was informed by a different motions panel's decision in *Aviel v. Gor*, No. 25-cv-5105, 2025 WL 1600446 (D.C. Cir. June 5, 2025), where "[b]y declining to stay the preliminary injunction, we implicitly agreed with the district court that Aviel would be irreparably harmed absent the preliminary injunction." *Perlmutter*, 2025 WL 2627965, at *8 (Pan, J., concurring, joined by Childs, J.).

Lastly, as to the balance of the equities and public interest, the motions panel concluded that "Perlmutter's situation differs

significantly from the Executive Branch officials whose removals have been repeatedly upheld" because an injunction "would not require the President to work with a removed principal officer at an Executive Branch agency; and it would not interfere with the President's constitutional prerogative to supervise the Executive Branch." *See id.* at *8–9 (Pan, J., concurring, joined by Childs, J.). On the other side of the balance, the public has a profound interest in the Register's continued work because "requiring that Perlmutter be removed while this litigation proceeds would deprive Congress of her valuable services as Register while it considers important issues such as the intersection of copyright law and the development of generative AI." *See id.* (Pan, J., concurring, joined by Childs, J.).

Judge Walker dissented. He did "not dispute that Perlmutter is likely to succeed on the merits of her lawsuit, that Perlmutter would suffer irreparable harm absent an injunction pending appeal, or that those two factors are the most critical in deciding whether to grant the requested injunction." *Id.* at *9 (majority describing the dissent); *see id.* at *10–12 (Walker, J., dissenting). But he interpreted the Supreme Court's emergency-application decisions in *Trump v. Wilcox*, 145 S. Ct.

1415 (2025), and *Trump v. Boyle*, 145 S. Ct. 2653 (2025), to mean that the balance of equities will necessarily favor the Government when a dismissed officer seeks to continue performing a statutory duty. *Id.* at *10.

Defendants filed a petition for rehearing or rehearing en banc, both of which were denied without noted dissent. *See Perlmutter v. Blanche,* No. 25-5285 (D.C. Cir. Oct. 1, 2025) (per curiam) (denying reh'g and reh'g en banc). Defendants then filed an emergency application with the Supreme Court, seeking a stay of this Court's injunction. *See* Application for Stay, *Blanche v. Perlmutter*, No. 25A478 (U.S. filed Oct. 27, 2025). There, Defendants chose not to raise the argument that the President has inherent Article II authority to appoint acting principal officers. Instead, Defendants argued that the President has inherent Article II authority to directly remove Perlmutter—even though they had not raised such an argument in this Court. They also raised for the first time an argument that this Court exceeded its equitable powers when it issued an injunction pending appeal.

On November 26, 2025, the Supreme Court deferred consideration

of the application pending its decisions in *Trump v. Slaughter*, No. 25-332, and *Trump v. Cook*, No. 25A312. *See Blanche v. Perlmutter*, 146 S. Ct. 844 (2025). The day after the Court issued its decisions in *Slaughter* and *Cook*, the Court denied Defendants' stay application, without any noted dissent, leaving in place the injunction permitting Perlmutter to continue serving as Register of Copyrights. *See Blanche v. Perlmutter*, No. 25A478, 2026 WL 1871314 (U.S. June 30, 2026).

## SUMMARY OF ARGUMENT

This Court should reverse the district court's denial of a preliminary injunction. The district court believed that it was required to deny relief to Perlmutter regardless of whether the President and his subordinates had a legal right to remove her from her post. But, as *Cook* confirms, there is "[n]o equitable bar" that prevents a court from protecting an incumbent's possession of a government job "if the court holds that [the President] broke the law" in purporting to remove her. 146 S. Ct. at 2250.

**I.** Under *Cook*, it was an abuse of discretion for the district court to conclude that it was powerless to remedy interference with Perlmutter's continued service as Register of Copyrights, regardless of the legality of the supposed removal from her post. Instead, in a case of

this nature, the equities follow the merits. Indeed, this outcome was required even before *Cook*. As the motions panel properly recognized, even if courts should generally be reluctant to intervene in run-of-the-mill matters of government personnel, different considerations apply here—particularly given the Congress-facing responsibilities delegated by statute to the Register.

**II.** Perlmutter is likely to succeed on the merits because no duly appointed Librarian removed her. Defendants' justifications for Perlmutter's removal each independently fail. First, because Congress vested the power to appoint the Register exclusively in the Librarian of Congress, only the Librarian—not the President—holds the power to remove her; the President's purported termination was therefore *ultra vires* from the outset. Second, Blanche fares no better: he never validly held the office of acting Librarian in the first place. The Federal Vacancies Reform Act authorizes the President to install acting officials only in an "Executive agency," and this Court has already held that the Library of Congress is not one, so Blanche's own purported removal of Perlmutter was equally void. Third, Defendants' fallback theory that the President holds inherent, extra-statutory authority under Article II

to appoint an acting Librarian or to remove an inferior officer directly finds no support in the Constitution's text, structure, or nearly 250 years of practice, and this Court has already twice rejected it—most recently in this very case.

For these reasons, the district court's order denying preliminary injunctive relief should be reversed, and Perlmutter should continue to serve as Register of Copyrights while this litigation proceeds—relief this Court has already granted, and the Supreme Court has declined to disturb.

## STANDARD OF REVIEW

This Court reviews "the district court's legal conclusions as to each of the four [preliminary injunction] factors *de novo* and its weighing of them for abuse of discretion." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016).

## ARGUMENT

### I. The District Court Abused Its Discretion by Concluding that the Equities Preclude the Provision of Relief

#### A. The district court erred when it concluded that Perlmutter cannot demonstrate irreparable harm

The district court's conclusion that Perlmutter was ineligible for relief regardless of the merits of her claim does not survive the Supreme

Court's decision in *Cook*. In that case, the Government made the same arguments that persuaded the district court here—that "the district court lacked authority to order reinstatement as an equitable remedy for the removal of an officer of the United States" and that the "prospect of back pay at the end of [the] case" meant that Cook lacked "the type of irreparable harm that can justify issuing an injunction." Government's Stay Application 4, 37, *Trump v. Cook*, No. 25A312 (U.S. filed Sept. 2025).

The *Cook* Court rejected those arguments, holding that "[t]he law does not require such a result." *Cook*, 146 S. Ct. at 2250. The Court held that a court may act to protect "the actual incumbents of an office . . . from interference with their possession, and with the exercise of their functions" while a wrongful-removal claim is litigated, *id.* at 2250 (quoting 2 J. High, Law of Injunctions § 1315, at 866).

Before the Supreme Court's decision in *Cook*, the district court concluded in this case that Perlmutter was not entitled to injunctive relief because, under *Sampson*, "preliminary equitable intervention in government-personnel cases is disfavored" unless a plaintiff demonstrates a "genuinely extraordinary situation." JA097 (*quoting*

415 U.S. at 92 n.68). *Sampson*, by its terms, announced a rule applicable "when discharge of probationary employees is an issue," 415 U.S. at 92 n.68. The Court has now declined to expand *Sampson* to all cases in which somebody who works for the Government is removed from a position, and with good reason: equity has long provided immediate protection to wrongfully ousted officers because they require relief "'to protect [their] status . . . during the course of th[e] litigation' at law." *Cook*, 146 S. Ct. at 2250 (alteration in original) (quoting Bray, *Remedies in the Officer Removal Cases*, 17 J. Legal Analysis 236, 246 (2025)). To allow an unlawful removal to stand throughout litigation would, the Court explained, let a President "remove a [federal official] even while litigation over the removal was ongoing—and could do so for very lengthy periods of time without substantial cause for removal," thereby "significantly interfer[ing] with the independence" of the institution she oversees. *Cook*, 146 S. Ct. at 2250–51. That concern applies with particular force here: Congress deliberately situated the Library of Congress and the Copyright Office within the legislative branch to insulate them from the kind of unilateral executive interference Defendants now attempt.

Nowhere in *Cook* did the Court invoke *Sampson*'s "genuinely extraordinary situation" gloss. *Sampson*, 415 U.S. at 92 n.68. If *Sampson*'s civil-service framework had any claim to govern the interim-relief question for removed federal officers, *Cook* was the occasion to say so. The Court did not, relying instead on an equitable tradition addressed specifically to officer-title disputes, not general federal employment. Indeed, three justices in two separate dissents disagreed with the majority precisely because it did not apply *Sampson*, and Justice Thomas articulated the view that *Sampson* foreclosed the majority's decision. *See Cook*, 146 S. Ct. at 2276 (Thomas, J., dissenting); *id.* at 2278 (Alito, J., joined by Gorsuch, J., dissenting).

The motions panel in this case reached a similar conclusion: that "Perlmutter's appointment as Register of Copyrights is very different from the government employment at issue in *Sampson*," and that the "unusual actions relating to the discharge itself" here reflect a "genuinely extraordinary situation" even under *Sampson*'s own terms. *Perlmutter*, 2025 WL 2627965, at *1 (Pan, J., concurring, joined by Childs, J.).

Defendants' efforts to oust Perlmutter also irreparably harm the

Library's and the Copyright Office's ability to perform the functions Congress assigned them, including serving as neutral, non-partisan advisors to Congress. *See Cook v. Trump*, 804 F. Supp. 3d 14, 40–41 (D.D.C. 2025) (collecting cases weighing an agency's ability to function as part of the irreparable-harm analysis). Because the President does not possess the authority to remove Perlmutter, her wrongful removal is inextricable from the President's unlawful assault on the institutional independence and integrity of the Library and Copyright Office, and as this Court has held, "a grave intrusion by the President into the constitutional powers of a coordinate branch of government." *Perlmutter*, 2025 WL 2627965, at *7 (Pan, J., concurring, joined by Childs, J.).

### B. The balance of the equities and public interest weigh in favor of preliminary relief for a wrongfully dismissed federal officer

Nor are there other equitable factors that could override the merits here. The balance of the equities and the public interest likewise track the merits. Because it is clear that Defendants' attempts to seize control of the Library of Congress are in reckless disregard of the law, *see infra* Part II, Perlmutter is entitled to an order that allows her to remain in office during the pendency of litigation. *See Cook*, 146 S. Ct.

at 2250. In district court, Defendants nonetheless insisted that the court was powerless to do anything about it—meaning that Defendants' lawless misconduct would be rewarded with months of unchecked power. As the Supreme Court elucidated in *Cook*, *supra* Part I.A, the equities permit no such result.

The Supreme Court's own handling of this case confirms as much. After this Court enjoined Defendants "from interfering with [Perlmutter's] service as Register" pending appeal, Defendants asked the Supreme Court to stay that injunction. The Court held the application for its decisions in *Slaughter* and *Cook*, then denied the stay—even after resolving *Slaughter* in the Government's favor—with no noted dissent. *See Blanche v. Perlmutter*, No. 25A478, 2026 WL 1871314 (U.S. June 30, 2026).

The district court below read the Supreme Court's earlier stay order in *Wilcox*, 145 S. Ct. 1415 (2025), to require the opposite conclusion, JA102, but the Court's decision in *Cook* renders that position untenable. In *Cook*, the Court denied the government's stay application after concluding that the government "has not shown that it is likely to prevail on the various legal arguments advanced in its stay

application." *Cook*, 146 S. Ct. at 2246. *Wilcox*'s stay, by contrast, turned on the government being likely to prevail. That distinction controls here: because, as discussed below (and as previewed by the motions panel), Perlmutter's purported removal was likely illegal, the injunction would not "require the President to work with a removed principal officer at an Executive Branch agency," and it "would not interfere with the President's constitutional prerogative to supervise the Executive Branch," *Perlmutter*, 2025 WL 2627965, at *8 (Pan, J., concurring, joined by Childs, J.), the balance of the equities decisively favors Perlmutter.

This Court is thus empowered to provide effective interim relief from these unlawful actions, where it is clear that the President faces no harm—and has no lawful authority to remove the officer in question.

Perlmutter, in vivid contrast, will suffer serious harm in the absence of an injunction, as explained *supra* Part I.A. The President and his subordinates sidelined Perlmutter unlawfully, in the midst of her efforts to discharge her statutory obligations to advise Congress,

during a period of time when her advice to Congress is particularly critical.

There is a substantial public interest in requiring the executive branch to "abide by the federal laws that govern their existence and operations." *League of Women Voters*, 838 F.3d at 12. That substantial public interest has particular bite here. If Defendants were permitted to disregard Congress's restrictions on the President's appointment and removal powers, the Appointments Clause would be rendered a practical nullity—in defiance of the careful balance of executive and legislative power that the Constitution itself strikes. It is also undoubtedly in the public interest that the Court prevent the President's unconstitutional actions, rather than permit him to act illegally.

Moreover, the public has a profound interest in the Register's continued work because "requiring that Perlmutter be removed while this litigation proceeds would deprive Congress of her valuable services as Register while it considers important issues such as the intersection of copyright law and the development of generative AI." *Perlmutter*, 2025 WL 2627965, at *9. The same is true for the Library of Congress

and Copyright Office's overall ability to continue their statutory roles as neutral advisors to Congress.

## II. Perlmutter Is Likely to Prevail on the Merits

Perlmutter is likely to prevail on her claim that she remains lawfully entitled to serve as Register of Copyrights. She was properly appointed by the Librarian of Congress, could not lawfully have been removed by the President, and could not be removed by Blanche because he had no legal right to serve as acting Librarian. This Court's precedent squarely forecloses Defendants' only statutory argument that the President may appoint Blanche under the FVRA; and no court has ever accepted Defendants' extraordinary claims of inherent Article II authority to circumvent the laws enacted by Congress. As this Court recently concluded, Defendants' untenable justifications do not withstand scrutiny. *See Perlmutter*, 2025 WL 2627965, at *5–6 (Pan, J., concurring, joined by Childs, J.). Blanche's purported appointment and Perlmutter's purported removal are undoubtedly unlawful.

### A. The President lacks statutory authority to remove Perlmutter directly

The President lacks any authority to directly remove the Register of Copyrights. The Appointments Clause confers on Congress the

authority to vest the appointment of inferior officers "in the President alone, in the Courts of Law, or in the Heads of Departments" as it "think[s] proper." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 487 (2010); U.S. Const. art. II, § 2, cl. 2. If Congress vests the authority to appoint inferior officers in a Head of Department, "it is ordinarily the department head, rather than the President, who enjoys the power of removal." *Free Enter. Fund*, 561 U.S. at 493. In other words, the power to fire follows the power to hire. Congress may depart from this default rule; however, "[a]bsent relevant legislation," "the power to remove is held by the appointing authority, and *only by* the appointing authority." *Nat'l Treasury Emps. Union v. Reagan*, 663 F.2d 239, 247 (D.C. Cir. 1981) (emphasis added); *see also Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 764 (2025) ("[W]hen as here Congress vests appointment of inferior officers in 'heads of departments,' 'it is ordinarily the department head . . . who enjoys the power of removal.'" (second alteration in original) (quoting *Free Enter. Fund*, 561 U.S. at 493)).

Congress has not departed from the default rule here. The Librarian, who is appointed by the President with the advice and

consent of the Senate, "is a Head of Department." *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1342 (D.C. Cir. 2012). Congress unambiguously vested the Librarian with the authority to appoint the Register. *See* 17 U.S.C. § 701(a) ("The Register of Copyrights . . . shall be appointed by the Librarian of Congress, and shall act under the Librarian's general direction and supervision."); *see also Eltra Corp. v. Ringer*, 579 F.2d 294, 300 (4th Cir. 1978) ("The Librarian of Congress is an Officer of the United States, with the usual power of such officer to appoint such inferior officers (i.e., the Register), as he thinks proper.") (cleaned up). Because Congress vested only the Librarian with the authority to appoint the Register, it follows that only the Librarian has the authority to remove her. The President does not have the power to do so. *See Nat'l Treasury Emps. Union*, 663 F.2d at 247; *see also In re Hennen*, 38 U.S. 230, 260 (1839) (if Congress vests a department head with the power to appoint and remove an inferior officer, "the President has certainly no power to remove" the inferior officer directly).

This Court should "not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to

apply." *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005). Accordingly, and as this Court previously concluded, the purported termination of Perlmutter from her position as the Register of Copyrights by the President was *ultra vires* and did not have the legally binding effect of displacing Perlmutter from her role. *See Perlmutter*, 2025 WL 2627965, at *5 ("[T]he Librarian—not the President—has the power to remove Perlmutter." (Pan, J., concurring, joined by Childs, J.)).

**B. The President lacks statutory authority to appoint Blanche, who therefore does not possess the authority to remove Perlmutter**

Nor could Blanche have removed Perlmutter as Register, because he was not properly serving as acting Librarian. The President purported to rely on the FVRA to appoint Blanche, *see* JA029; JA035–37, but the FVRA undoubtedly does not supply the President with authority to appoint a Librarian absent Senate confirmation.

The FVRA applies only to an "Executive agency," 5 U.S.C. § 3345(a), and binding authority holds that the Library of Congress is "plainly" not an Executive agency. *Davis*, 681 F.3d at 386. Binding precedent thus squarely forecloses Defendants' only statutory argument. As this Court recently concluded, *see Perlmutter*, 2025 WL 2627965, at *5 (Pan, J., concurring, joined by Childs, J.), the President

did not have authority to unilaterally appoint Blanche as acting Librarian, and in turn, Blanche did not possess the authority to remove Perlmutter from her post.

**1.** In the ordinary course, when a principal officer of the United States resigns a post, the position may be filled only after the President has nominated and the Senate has confirmed a successor. This limitation is a "critical 'structural safeguard[] of the constitutional scheme.'" *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 293 (2017) (alteration in original) (quoting *Edmond v. United States*, 520 U.S. 651, 659 (1997)).

Through the FVRA, 5 U.S.C. § 3345, Congress "has given the President *limited authority* to appoint acting officials to temporarily perform the functions of a vacant [principal] office without first obtaining Senate approval." *SW Gen., Inc.*, 580 U.S. at 294 (emphasis added). Critically, Congress applied the FVRA to any Senate-confirmed office in an "Executive agency." 5 U.S.C. § 3345(a). For such offices, the FVRA permits the President to direct a person "to perform the functions and duties of the vacant office temporarily [and] in an acting capacity subject to the time limitations" set forth in the statute. 5 U.S.C.

§ 3345(a). The FVRA is "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency" for which Senate confirmation is required. *Id.* § 3347(a).

**2.** The FVRA does not supply the President with the authority to appoint Blanche as acting Librarian because Congress did not include the Library of Congress within its definition of "Executive agency." *See Perlmutter*, 2025 WL 2627965, at *5 ("The plain language of the statute indicates that the Library of Congress is not an 'Executive agency' for purposes of the FVRA." (Pan, J., concurring, joined by Childs, J.)). Congress did not provide a special definition of "Executive agency" in the FVRA, so the phrase takes on the definition prescribed "[f]or the purpose of [Title 5]," 5 U.S.C. § 105, where Congress defined "Executive agency" to include an agency (1) on the enumerated list of "Executive department[s]," *id.* § 101; (2) that is a "Government corporation," *id.* § 103; or (3) that is an "independent establishment," which is defined to mean either "an establishment in the executive branch" not previously covered or "the Government Accountability Office," *id.* § 104.

Defendants argued that the Library is an "independent establishment," *see, e.g.*, D. Ct. Dkt. 33 at 5, but it quite obviously is not.

This Court has decided unequivocally that the "narrowing term 'Executive agency' . . . plainly does not contain the Library of Congress within the meaning of the statute." *Davis*, 681 F.3d at 386. In *Davis*, the Court considered the availability of *Bivens* relief for a former Library of Congress employee alleging wrongful termination. The Court reasoned that the answer turned on whether Congress had adopted a comprehensive remedial scheme that foreclosed an implied remedy. The Court found such a scheme in the Civil Service Reform Act (CSRA), concluding that, although Library of Congress employees are generally covered by the Act, they are not entitled to invoke the Act's remedial provisions, which are available only to employees of an "Executive agency":

> Here, the unambiguous use of the narrowing term "Executive agency"—a term which plainly does not contain the Library of Congress within the meaning of the statute, *see* 5 U.S.C. § 7103(a)(3)—and the express exclusion of probationary employees from the "agencies" and types of "employees" subject to the CSRA's remedial protections evidences an explicit congressional design for the subsets of civil-service employees that would and would not have access to those protections.

681 F.3d at 386. As with the FVRA, 5 U.S.C. § 7103(a)(3) uses the very same definitional statute—5 U.S.C. § 105—to define "Executive agency."

Even were this not an open-and-shut application of binding circuit precedent, "Congress can divide up the Government any way it wishes, and employ whatever terminology it desires, for nonconstitutional purposes." *Mistretta v. United States*, 488 U.S. 361, 422–23 (1989) (Scalia, J., dissenting); *accord Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 392–93 (1995). Here, Congress has made it abundantly clear that the Library of Congress is not to be treated as an "Executive agency" for purposes of Title 5.

In the Ethics in Government Act, Congress defined "executive branch" to "include[] each Executive agency (as defined in section 105 of [title 5]), other than the Government Accountability Office" and separately defined "legislative branch" to "include[] . . . the Library of Congress." 5 U.S.C. § 13101(4), (11). Under the statute, different ethics rules apply to employees of the "executive branch" and the "legislative branch," *see, e.g.*, *id.* § 13142, so the Library cannot be both an

"Executive agency" and simultaneously part of the "legislative branch" as defined by Congress.

The rest of Title 5 confirms this point. *First*, in more than a dozen parts of Title 5, Congress distinguished between an "Executive agency" or an "independent establishment," on one hand, and the "Library of Congress," on the other. *See, e.g.*, 5 U.S.C. § 5948(g)(2) ("'agency' means an Executive agency, as defined in section 105 of this title, the Library of Congress, and the District of Columbia government"); *see also id.* §§ 3102(a)(1), 3401(1), 4101(1), 4501(1), 5102(a)(1), 5521(1), 5541(1), 5584(g), 5595(a)(1), 5721(1), 5921(2), 6121(1), 7103(a)(3). Clearly, then, Congress does not regard the Library to be an "independent establishment" or an "Executive agency," as it defined those terms for purposes of Title 5. *See Haddon v. Walters*, 43 F.3d 1488 (D.C. Cir. 1995) (per curiam) (holding that the Executive Residence is not an "independent establishment" for purposes of Title 5 because Congress had distinguished between the Executive Residence and an "independent establishment").

*Second*, Congress has elsewhere regulated the Library as part of the legislative branch, so there is good reason why it would not have

given the President *carte blanche* to designate an acting Librarian without any congressional input. Congress established the Library in Title 2 ("The Congress") and has repeatedly defined the Library as a "legislative branch agency." *E.g.*, 2 U.S.C. § 181(b)(1); 31 U.S.C. § 1105 note (132 Stat. 5430, 5430); 2 U.S.C. § 141 note (107 Stat. 1043, 1044). Indeed, when Congress last "clarifie[d] the duties and functions of the Register of Copyrights," the Conference Report emphasized "the Copyright Office's role as a legislative branch agency." H.R. Conf. Rep. No. 105-796, at 77 (1998). And courts have recognized, for a host of purposes, that Congress intended to treat the Library as part of the legislative branch for statutory purposes. *See, e.g.*, *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 145–46 (1980) (FOIA does not apply to Library of Congress because it does not apply to "Congress"); *Wash. Legal Found. v. U.S. Sent'g Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994) (APA does not apply to Library of Congress because it does not apply to "Congress"); *Judd v. Billington*, 863 F.2d 103, 104 (D.C. Cir. 1988) (provisions of the Rehabilitation Act do not apply to Library of Congress employees because those provisions are "limited in scope to the executive branch" and "the Library of Congress,

as part of the legislative branch, was not included"). Congress has routinely organized the Library within the legislative branch; it did so here, too, which means that it did not authorize the President to appoint an acting Librarian without the advice and consent of the Senate.

For purposes of the FVRA, the "Library of Congress is in Congress, (surprise surprise)," as one leading treatise colorfully puts it, 7 Patry on Copyright § 28:16 (Mar. 2025), and Congress did not authorize the President to appoint an acting Librarian. For good reason. Congress has an obvious and direct interest in who is permitted to access the Library's confidential research and advice for Members of Congress, as well as other confidential congressional records it holds, and who controls the Library's discharge of its duties as a non-partisan advisor to Congress. Indeed, the purported appointment of Blanche, who serves concurrently in the executive branch, starkly confirms why Congress would not have cut itself out of the process of selecting acting leadership for the Library.

### C. The President does not have inherent constitutional authority to overcome his lack of statutory authority

Because the President decisively lacks statutory authority to

remove Perlmutter directly or remove Perlmutter through the appointment of Blanche, Defendants offered in district court backup, *post hoc* constitutional arguments to justify their overbroad assertions of executive power. But these claims, too, are easily proved incorrect. No court has ever accepted either of Defendants' extraordinary positions. In *Aviel* and in this very case, this Court found unpersuasive Defendants' novel theory in support of the President's purported constitutional authority to unilaterally appoint principal officers. *Aviel*, 2025 WL 1600446, at *2 (Katsas, J., concurring, joined by Pillard, J.); *accord id.* at *4 n.1 (Rao, J., dissenting); *Perlmutter*, 2025 WL 2627965, at *5 n.1 (Pan, J., concurring, joined by Childs, J.). And this Court rejected Defendants' inventive view that the President has constitutional authority to directly remove inferior officers in *Aviel*, which Defendants previously declined to present to the D.C. Circuit in this case, betraying the weakness of their position. *See Perlmutter*, 2025 WL 2627965, at *5 (Pan, J., concurring, joined by Childs, J.).

The Supreme Court recently confirmed both points in *Slaughter*. *See* 146 S. Ct. at 2295, 2310 (explaining that the words of the Appointments Clause were chosen carefully and that "it is up to the

Senate to decide whether to confirm those with whom the President would *prefer* to work"); *id.* at 2298, 2301–02 (overruling *Humphrey's Executor* but leaving in place the line of cases that hold that the power to remove is incident to the power to appoint).

### 1. The President does not have inherent Article II authority to appoint Blanche

Because their statutory claim is foreclosed by D.C. Circuit precedent and therefore does not provide the President with the authority that Defendants require, they asked the district court to recognize an unprecedented expansion of executive power: that the President has inherent Article II authority to appoint Blanche in order to "faithfully execute[]" the laws. D. Ct. Dkt. 33 at 18 (quoting U.S. Const. art. II, § 3). Defendants' arguments find no precedent in our nearly 250-year constitutional record. Instead, the structure of the Constitution requires the President to work with Congress; he may exercise his authority over the Librarian, but unless Congress has given him such power, he cannot unilaterally appoint an acting Librarian.

The D.C. Circuit has now twice cast doubt on the President's claim of inherent Article II authority, in *Aviel* and in this case. *See Aviel*, 2025 WL 1600446, at *2 (Katsas, J., concurring, joined by Pillard, J.);

*accord id.* at *4 n.1 (Rao, J., dissenting); *Perlmutter*, 2025 WL 2627965, at *5 n.1 (Pan, J., concurring, joined by Childs, J.). In *Aviel*, Judge Rao dissented in other respects, but sided with the majority on the absence of inherent Article II authority:

> I agree with my colleagues that this argument is unlikely to succeed because the text and structure of the Constitution strongly suggest the President has no inherent authority to appoint officers of the United States, like IAF Board members, outside the strictures of the Appointments Clause. U.S. Const. art. II, § 2; *see NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 946 (2017) (Thomas, J., concurring) ("[T]he Appointments Clause forbids the President to appoint principal officers without the advice and consent of the Senate."). And the Federal Vacancies Reform Act does not apply to the IAF. 5 U.S.C. §§ 3349c(1)(B), 3345. If Marocco was not properly appointed as an acting IAF Board member, he lacked the authority to remove Aviel.

*Aviel*, 2025 WL 1600446, at *4 n.1 (Rao, J., dissenting). Judge Katsas in *Aviel* and Judge Pan in this case likewise found that "it is unlikely that the Take Care Clause gives the President unfettered discretion to designate acting principal officers with neither Senate confirmation nor a Senate recess nor even statutory authorization through the FVRA." *Id.* at *2 (Katsas, J., concurring, joined by Pillard, J.); *Perlmutter*, 2025 WL 2627965, at *5 n.1 (Pan, J., concurring, joined by Childs, J.).

Were it otherwise, none of the Appointments Clause, Recess Appointments Clause, or FVRA would make any sense. *First*, the

Appointments Clause forecloses a Presidential power to unilaterally appoint principal officers of the United States. The Framers believed that such an unchecked power was "the most insidious and powerful weapon of eighteenth-century despotism." *Freytag v. Commissioner*, 501 U.S. 868, 883 (1991) (citation omitted). The Appointments Clause accordingly limits that power by "dividing" it "between the Executive and Legislative Branches." *Id.* at 884. Defendants' theory therefore would bulldoze the Appointments Clause. There is no need to require Senate approval in the first place if the President can appoint an "acting" principal officer to a vacant position—especially where, as here, the position is only vacant because the President prematurely removed that officer.

*Second*, the Recess Appointments Clause is a narrow "exception" to the Appointments Clause, and as the Supreme Court has emphasized, does "not offer[] the President the authority routinely to avoid the need for Senate confirmation." *NLRB v. Noel Canning*, 573 U.S. 513, 519, 523–24 (2014) (cleaned up). But under Defendants' view, the President could routinely avoid the need for Senate confirmation, simply by purporting to appoint an acting official of his choice to serve

indefinitely in the principal officer's position. That would render the Recess Appointments Clause surplusage. *See Marbury v. Madison*, 5 U.S. 137, 174 (1803) ("It cannot be presumed that any clause in the constitution is intended to be without effect.").

*Third*, if the President has the power to appoint acting officials to any principal office by default, then the FVRA would be meaningless. Under Defendants' view, the FVRA does nothing more than give the President permission to do what he already has permission to do. And to the extent that Defendants argue that the President has inherent authority under Article II to name acting officials only when the FVRA does not apply, that assertion runs contrary to Defendants' expansive interpretation of Article II.

The Supreme Court's intervening decision in *Slaughter* reinforces this conclusion. There, the Court reaffirmed that principal officers take office only through the Appointments Clause's confirmation process: "it is up to the Senate to decide whether to confirm those with whom the President would *prefer* to work." 146 S. Ct. at 2310. That proposition assumes the President's remedy for an unconfirmed or absent officer is a new nomination, not a unilateral, extra-statutory installation of an

acting official outside the FVRA's terms.

Defendants cannot contend with the irrefutable evidence and circuit precedent against them. It is unquestionably correct that the President did not lawfully appoint Blanche, and so Blanche cannot lawfully exercise the powers of that office. Blanche's removal of Perlmutter from her position was therefore invalid.

#### 2. The President does not have inherent Article II authority to remove Perlmutter directly

In a last-ditch effort to justify the President's lawless actions, Defendants advanced another plea of unprecedented executive power before the district court: that "if the President is *unable* to appoint an acting officer upon removal of the principal officer, then Article II supplies the background rule, and the President has the constitutional authority—and obligation—to oversee and supervise the inferior officer until a new principal officer is confirmed by the Senate." D. Ct. Dkt. 33 at 23. Their position is impossible to reconcile with the unambiguous text of the Appointments Clause.

The Constitution entitles Congress to adopt legislation to "vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."

U.S. Const. art. II, § 2, cl. 2. Under Defendants' approach, however, the President could render Congress's choice to vest authority to appoint an inferior officer in someone other than the President a nullity by serially firing whomever the appointing authority selected for the post. Defendants' approach would also enable the President to circumvent the general restriction on firing inferior officers by simply firing the principal officer first to create a vacancy and then using that vacancy as a justification to usurp the appointment power that Congress vested elsewhere. And if the President has inherent constitutional authority to hire or fire any officer in the executive branch, the FVRA, which definitionally restricts who can fill certain vacancies, would necessarily be unconstitutional. This makes no sense.

It is thus unsurprising that the Supreme Court has made clear for nearly two centuries that the power to remove an inferior officer is "incident to the power of appointment." *Hennen*, 38 U.S. at 259. Reasoning by analogy to clerks appointed by the secretaries of the departments of state, war, and treasury—over whom "the President has certainly no power to remove," since Congress vested their appointment (and, with it, removal) in the department heads, *id.* at 259–60—the

Court held that a clerk appointed by a district judge likewise held office at the discretion of that judge. *Id.* at 261. *Free Enterprise Fund* confirmed this point 171 years later. There, the Court struck down the second layer of good-cause removal protections for members of the PCAOB precisely because it left the President able to reach the Board only through the Securities and Exchange Commission—and its remedy proves the point. Rather than hold that the President could remove Board members directly regardless of the statute, the Court severed only the Board's protection, leaving the Board "removable by the Commission at will" and leaving "the President separated from Board members by only a single level of good-cause tenure." *Free Enter. Fund*, 561 U.S. at 509. That remedy makes sense only if removal of inferior officers runs through the principal officer, not around him. If the President already had an inherent right to reach into the agency and remove the Board directly, the Commission's own tenure protection would have been beside the point, and there would have been only one layer to begin with.

*Slaughter*, 146 S. Ct. 2283, too, forecloses Defendants' argument. Far from supplying the President with a freestanding removal power,

*Slaughter* grounds the President's removal authority in the Appointments Clause itself: "[h]e who appoints may remove." *Id.* at 2295. Nor did *Slaughter* disturb the settled rule, which this Court has already applied in this case, that when Congress vests appointment of an inferior officer in a department head, the President has no power to remove that officer directly. *See Perlmutter*, 2025 WL 2627965, at *1; *see also Aviel,* 2025 WL 1600446, at *1 (if a department head holds the power to appoint and remove an inferior officer, "the President has certainly no power to remove" that officer directly (quoting *Hennen*, 38 U.S. at 260)); *see also Nat'l Treasury Emps. Union*, 663 F.2d at 247 (citing *Hennen*, 38 U.S. at 259) ("The only one authorized to revoke an appointment is one authorized to make it.").

Regardless, Defendants' unprecedented assertion of power would not even apply here, where Newlen serves as the rightful acting Librarian under the Library's own succession rules. Contrary to Defendants' apparent concerns, D. Ct. Dkt. 33 at 25, there *is* a clear chain of command at the Library: the acting Librarian is a principal officer subject to the President's supervision.

In short, the Constitution does not give the President the right to

circumvent the Appointments Clause through a freestanding removal power, and Defendants can offer no plausible support for their contrary position that was already rejected by this Court. The President's purported removal of Perlmutter was therefore invalid.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be reversed.

Dated: August 31, 2026

Respectfully submitted,

*/s/ Allyson R. Scher*
Allyson R. Scher
Brian D. Netter
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
ascher@democracyforward.org
bnetter@democracyforward.org

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface and type-volume limitations in Federal Rule of Appellate Procedure 32(a)(7) because it contains 8,353 words, excluding the accompanying documents authorized by Federal Rule of Appellate Procedure 27(a)(2)(B) and the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Cir. Rule 32(e)(1). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: August 31, 2026

*<u>/s/ Allyson R. Scher</u>*
Allyson R. Scher

## CERTIFICATE OF SERVICE

I certify that on August 31, 2026, a true and correct copy of this Brief was filed with the Clerk for the United States Court of Appeals for the District of Columbia Circuit via the Court's electronic filing system, which will forward a copy to all counsel of record.

Dated: August 31, 2026

*<u>/s/ Allyson R. Scher</u>*
Allyson R. Scher

# ADDENDUM: STATUTES AND REGULATIONS


2 U.S.C. § 181(b)(1) ........................................ Add.03

5 U.S.C. § 3102(a)(1)........................................ Add.03

5 U.S.C. § 3345(a)........................................ Add.03

5 U.S.C. § 3347(a)........................................ Add.04

5 U.S.C. § 3349c(1)(B) ........................................ Add.05

5 U.S.C. § 3401(1)........................................ Add.05

5 U.S.C. § 4101(1)........................................ Add.06

5 U.S.C. § 4501(1)........................................ Add.07

5 U.S.C. § 5102(a)(1)........................................ Add.08

5 U.S.C. § 5521(1)........................................ Add.09

5 U.S.C. § 5541(1)........................................ Add.09

5 U.S.C. § 5584(g)........................................ Add.10

5 U.S.C. § 5595(a)(1)........................................ Add.10

5 U.S.C. § 5721(1)........................................ Add.11

5 U.S.C. § 5921(2)........................................ Add.11

5 U.S.C. § 5948(g)(2)........................................ Add.12

5 U.S.C. § 6121(1)........................................ Add.12

5 U.S.C. § 7103(a)(3)........................................ Add.12

5 U.S.C. § 13101(4)........................................ Add.13

5 U.S.C. § 13101(11)........................................ Add.13

17 U.S.C. § 701(a)........................................ Add.14

17 U.S.C. § 701(b) ........................................................................ Add.14

Pub. L. 103-110, § 122, 107 Stat 1037 (Oct. 21, 1993) (2 U.S.C. § 141 note) ........................................................................ Add.15

Pub. L. 115–414, §2, 132 Stat. 5430 (Jan. 3, 2019) (31 U.S.C. § 1105 note) ........................................................................ Add.15

**2 U.S.C. § 181(b)(1)**

**Program for exchange of information among legislative branch agencies**

**(b)** As used in this section--

**(1)** the term "offices and agencies of the legislative branch" means, the office of the Clerk of the House, the office of the Secretary of the Senate, the office of the Architect of the Capitol, the Government Accountability Office, the Government Publishing Office, the Library of Congress, the Congressional Research Service, the Congressional Budget Office, the Chief Administrative Officer of the House of Representatives, and the Sergeant at Arms of the Senate; and

**5 U.S.C. § 3102(a)(1)**

**Employment of personal assistants for handicapped employees, including blind and deaf employees**

**(a)** For the purpose of this section--

**(1)** "agency" means--

**(A)** an Executive agency;

**(B)** the Library of Congress; and

**(C)** an office, agency, or other establishment in the judicial branch;

**5 U.S.C. § 3345(a)**

**Acting officer**

**(a)** If an officer of an Executive agency (including the Executive Office of the President, and other than the Government Accountability Office) whose appointment to office is required to be made by the President, by

and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office--

**(1)** the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346;

**(2)** notwithstanding paragraph (1), the President (and only the President) may direct a person who serves in an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate, to perform the functions and duties of the vacant office temporarily in an acting capacity subject to the time limitations of section 3346; or

**(3)** notwithstanding paragraph (1), the President (and only the President) may direct an officer or employee of such Executive agency to perform the functions and duties of the vacant office temporarily in an acting capacity, subject to the time limitations of section 3346, if--

**(A)** during the 365-day period preceding the date of death, resignation, or beginning of inability to serve of the applicable officer, the officer or employee served in a position in such agency for not less than 90 days; and

**(B)** the rate of pay for the position described under subparagraph (A) is equal to or greater than the minimum rate of pay payable for a position at GS-15 of the General Schedule.

**5 U.S.C. § 3347(a)**

**Exclusivity**

**(a)** Sections 3345 and 3346 are the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency (including the Executive Office of the President, and other than the Government Accountability Office) for

which appointment is required to be made by the President, by and with the advice and consent of the Senate, unless--

**(1)** a statutory provision expressly--

**(A)** authorizes the President, a court, or the head of an Executive department, to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity; or

**(B)** designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity; or

**(2)** the President makes an appointment to fill a vacancy in such office during the recess of the Senate pursuant to clause 3 of section 2 of article II of the United States Constitution.

**5 U.S.C. § 3349c(1)(B)**

**Exclusion of certain officers**

Sections 3345 through 3349b shall not apply to--

**(1)** any member who is appointed by the President, by and with the advice and consent of the Senate to any board, commission, or similar entity that--

***

**(B)** governs an independent establishment or Government corporation;

**5 U.S.C. § 3401(1)**

**Definitions**

For the purpose of this chapter--

**(1)** "agency" means--

**(A)** an Executive agency;

**(B)** a military department;

**(C)** an agency in the judicial branch;

**(D)** the Library of Congress;

**(E)** the Botanic Garden; and

**(F)** the Office of the Architect of the Capitol; but does not include--

**(i)** a Government controlled corporation;

**(ii)** the Tennessee Valley Authority;

**(iii)** the Virgin Islands Corporation;

**(iv)** the Federal Bureau of Investigation, Department of Justice;

**(v)** the Central Intelligence Agency; and

**(vi)** the National Security Agency, Department of Defense; and

**5 U.S.C. § 4101(1)**

**Definitions**

For the purpose of this chapter--

**(1)** "agency", subject to section 4102 of this title, means--

**(A)** an Executive department;

**(B)** an independent establishment;

**(C)** a Government corporation subject to chapter 91 of title 31;

**(D)** the Library of Congress;

**(E)** the Government Publishing Office; and

**(F)** the government of the District of Columbia;

**5 U.S.C. § 4501(1)**

**Definitions**

For the purpose of this subchapter--

**(1)** "agency" means--

**(A)** an Executive agency;

**(B)** the Library of Congress;

**(C)** the Office of the Architect of the Capitol;

**(D)** the Botanic Garden;

**(E)** the Government Publishing Office;

**(F)** the government of the District of Columbia; and

**(G)** the United States Sentencing Commission;

but does not include--

**(i)** the Tennessee Valley Authority; or

**(ii)** the Central Bank for Cooperatives;

**5 U.S.C. 5102(a)(1)**

**Definitions; application**

**(a)** For the purpose of this chapter--

**(1)** "agency" means--

**(A)** an Executive agency;

**(B)** the Library of Congress;

**(C)** the Botanic Garden;

**(D)** the Government Publishing Office;

**(E)** the Office of the Architect of the Capitol; and

**(F)** the government of the District of Columbia;

but does not include--

**(i)** a Government controlled corporation;

**(ii)** the Tennessee Valley Authority;

**(iii)** the Virgin Islands Corporation;

**(iv)** the Atomic Energy Commission;

**(v)** the Central Intelligence Agency;

**(vi)** the National Security Agency, Department of Defense;

**(vii)** the Government Accountability Office;

**(viii)** the Office of the Director of National Intelligence;

**(ix)** the Defense Intelligence Agency, Department of Defense; or

**(x)** the National Geospatial-Intelligence Agency, Department of Defense;

**5 U.S.C. § 5521(1)**

**Definitions**

For the purpose of this subchapter--

**(1)** "agency" means--

**(A)** an Executive agency;

**(B)** the judicial branch;

**(C)** the Library of Congress;

**(D)** the Government Publishing Office; and

**(E)** the government of the District of Columbia;

**5 U.S.C. § 5541(1)**

**Definitions**

For the purpose of this subchapter--

**(1)** "agency" means--

**(A)** an Executive agency;

**(B)** a military department;

**(C)** an agency in the judicial branch;

**(D)** the Library of Congress;

**(E)** the Botanic Garden;

**(F)** the Office of the Architect of the Capitol; and

**(G)** the government of the District of Columbia;

**5 U.S.C. § 5584(g)**

**Claims for overpayment of pay and allowances, and of travel, transportation and relocation expenses and allowances**

**(g)**[1] For the purpose of this section, "agency" means--

**(1)** an Executive agency;

**(2)** the Government Publishing Office;

**(3)** the Library of Congress;

**(4)** the Office of the Architect of the Capitol;

**(5)** the Botanic Garden;

**(6)** the Administrative Office of the United States Courts, the Federal Judicial Center, and any of the courts set forth in section 610 of title 28; and

**(7)** the Congressional Budget Office.

**5 U.S.C. § 5595(a)(1)**

**Severance Pay**

**(a)** For the purpose of this section--

**(1)** "agency" means--

**(A)** an Executive agency;

**(B)** the Library of Congress;

**(C)** the Government Publishing Office;

**(D)** the government of the District of Columbia;

**(E)** the Administrative Office of the United States Courts, the Federal Judicial Center, and the courts named by section 610 of title 28; and

**(F)** the Office of the Architect of the Capitol; and

**5 U.S.C. § 5721(1)**

**Definitions**

For the purpose of this subchapter--

**(1)** "agency" means--

**(A)** an Executive agency;

**(B)** a military department;

**(C)** a court of the United States;

**(D)** the Administrative Office of the United States Courts;

**(E)** the Library of Congress;

**(F)** the Botanic Garden;

**(G)** the Architect of the Capitol;

**(H)** the Government Publishing Office; and

**(I)** the government of the District of Columbia;

but does not include a Government controlled corporation;

**5 U.S.C. § 5921(2)**

**Definitions**

For the purpose of this subchapter--

***

**(2)** "agency" means an Executive agency and the Library of Congress, but does not include a Government controlled corporation;

**5 U.S.C. § 5948(g)(2)**

**Physicians comparability allowances**

**(g)** For the purpose of this section—

***

**(2)** "agency" means an Executive agency, as defined in section 105 of this title, the Library of Congress, and the District of Columbia government.

**5 U.S.C. § 6121(1)**

**Definitions**

For purposes of this subchapter--

**(1)** "agency" means any Executive agency, any military department, the Government Publishing Office, the Library of Congress, the Architect of the Capitol, and the Botanic Garden;

**5 U.S.C. § 7103(a)(3)**

**Definitions; application**

**(a)** For the purpose of this chapter—

***

**(3)** "agency" means an Executive agency (including a nonappropriated fund instrumentality described in section 2105(c) of this title and the Veterans' Canteen Service, Department of Veterans Affairs), the Library of Congress, the Government Publishing Office, and the Smithsonian Institution[1] but does not include--

**(A)** the Government Accountability Office;

**(B)** the Federal Bureau of Investigation;

**(C)** the Central Intelligence Agency;

**(D)** the National Security Agency;

**(E)** the Tennessee Valley Authority;

**(F)** the Federal Labor Relations Authority;

**(G)** the Federal Service Impasses Panel; or

**(H)** the United States Secret Service and the United States Secret Service Uniformed Division.

**5 U.S.C. § 13101**

**Definitions**

In this subchapter:

**(4) Executive branch.**--The term "executive branch" includes each Executive agency (as defined in section 105 of this title), other than the Government Accountability Office, and any other entity or administrative unit in the executive branch.

***

(11) Legislative branch.--The term "legislative branch" includes--

**(A)** the Architect of the Capitol;

**(B)** the Botanic Gardens;

**(C)** the Congressional Budget Office;

**(D)** the Government Accountability Office;

**(E)** the Government Publishing Office;

**(F)** the Library of Congress;

**(G)** the United States Capitol Police;

**(H)** the Office of Technology Assessment; and

**(I)** any other agency, entity, office, or commission established in the legislative branch.

**17 U.S.C. § 701**

**The Copyright Office: General responsibilities and organization**

**(a)** All administrative functions and duties under this title, except as otherwise specified, are the responsibility of the Register of Copyrights as director of the Copyright Office of the Library of Congress. The Register of Copyrights, together with the subordinate officers and employees of the Copyright Office, shall be appointed by the Librarian of Congress, and shall act under the Librarian's general direction and supervision.

**(b)** In addition to the functions and duties set out elsewhere in this chapter, the Register of Copyrights shall perform the following functions:

**(1)** Advise Congress on national and international issues relating to copyright, other matters arising under this title, and related matters.

**(2)** Provide information and assistance to Federal departments and agencies and the Judiciary on national and international issues relating to copyright, other matters arising under this title, and related matters.

**(3)** Participate in meetings of international intergovernmental organizations and meetings with foreign government officials relating to copyright, other matters arising under this title, and related matters, including as a member of United States delegations as authorized by the appropriate Executive branch authority.

**(4)** Conduct studies and programs regarding copyright, other matters arising under this title, and related matters, the administration of the Copyright Office, or any function vested in the Copyright Office by law, including educational programs conducted cooperatively with foreign

intellectual property offices and international intergovernmental organizations.

**(5)** Perform such other functions as Congress may direct, or as may be appropriate in furtherance of the functions and duties specifically set forth in this title.

**Pub. L. 103-110, § 122, 107 Stat 1037 (Oct. 21, 1993) (2 U.S.C. § 141 note)**

**Transfer of Property by Secretary of Army To Provide Facilities To Accommodate Long-Term Storage and Service Needs**

**(b)** The Architect of the Capitol shall, upon completion of the survey performed pursuant to subsection (c) and the transfer effected pursuant to subsection (a), utilize the transferred property to provide facilities to accommodate the varied long-term storage and service needs of the Library of Congress and other Legislative Branch agencies.

**Pub. L. 115–414, §2, 132 Stat. 5430 (Jan. 3, 2019) (31 U.S.C. § 1105 note)**

**Reports on Outstanding Government Accountability Office and Inspector General Recommendations**

**(a)** Definition.—In this section, the term 'agency' means—

***

**(3)** legislative branch agencies, including the Government Publishing Office, the Library of Congress, the Office of the Architect of the Capitol, and the United States Capitol Police.