**[ORAL ARGUMENT NOT SCHEDULED]**

**No. 25-5285**

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

SHIRA PERLMUTTER,

Plaintiff-Appellant,

v.

TODD BLANCHE, et al.,

Defendants-Appellees.

---

On Appeal from the United States District Court
for the District of Columbia

---

# BRIEF FOR APPELLEES

---


BRETT A. SHUMATE
*Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
DANIEL AGUILAR
ASHLEY C. HONOLD
DAVID L. PETERS
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*202-598-6735*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A. Parties and Amici

Plaintiff-Appellant is Shira Perlmutter. Defendants-Appellees are Todd Blanche, Paul Perkins, Sergio Gor, Trent Morse, the Executive Office of the President, and Donald J. Trump.

### B. Rulings Under Review

The rulings under review are the district court's Order, JA093, and Memorandum Opinion, JA094, denying plaintiff's motion for a preliminary injunction in *Perlmutter v. Blanche*, No. 25-cv-1659 (D.D.C.) (Kelly, J.). The district court's preliminary-injunction opinion is available at *Perlmutter v. Blanche*, 2025 WL 2159197 (D.D.C. July 30, 2025).

### C. Related Cases

This case has not previously been before this Court. Counsel for the government is unaware of any other related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

*/s/ David L. Peters*
David L. Peters

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1

STATEMENT OF JURISDICTION ........ 4

STATEMENT OF THE ISSUE ........ 4

PERTINENT STATUTES AND REGULATIONS ........ 4

STATEMENT OF THE CASE ........ 5

A. Legal Background ........ 5

B. Factual Background and Prior Proceedings ........ 9

SUMMARY OF ARGUMENT ........ 14

STANDARD OF REVIEW ........ 19

ARGUMENT ........ 19

I. Plaintiff Is Unlikely To Prevail On The Merits ........ 20

A. Plaintiff was removed by a lawfully designated Acting Librarian. ........ 21

B. The President must have authority to remove the Register in these circumstances. ........ 35

II. Plaintiff Suffered No Irreparable Harm. ........ 44

III. The Equities Decisively Favor The Government ........ 48

CONCLUSION ........ 52

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Ali v. Federal Bureau of Prisons*,
552 U.S. 214 (2008) .................................................................. 31

*Aviel v. Gor*,
2025 WL 1600446 (D.C. Cir. June 5, 2025) .......................... 35, 37, 42

*Belbacha v. Bush*,
520 F.3d 452 (D.C. Cir. 2008) ..................................................... 20

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
403 U.S. 388 (1971) .................................................................. 29

*Blanche v. Perlmutter*,
2026 WL 1871314 (U.S. June 30, 2026) ..................................... 14, 51

*Bowsher v. Synar*,
478 U.S. 714 (1986) .............................................................. 39, 44

*Buckley v. Valeo*,
424 U.S. 1 (1976) ................................................................ 22, 33

*City of Arlington v. FCC*,
569 U.S. 290 (2013) .................................................................. 26

*Clevinger v. Advocacy Holdings, Inc.*,
134 F.4th 1230 (D.C. Cir. 2025) .................................................. 19

*Collins v. Yellen*,
594 U.S. 220 (2021) .................................................................. 51

*Davis v. Billington*,
681 F.3d 377 (D.C. Cir. 2012) ................................................. 29, 30

*Dellinger v. Bessent*,
2025 WL 887518 (D.C. Cir. Mar. 10, 2025) ..................... 18, 45, 47, 49

*Eltra Corp. v. Ringer*,
579 F.2d 294 (4th Cir. 1978) .................................................. 23, 33

*Ethnic Emps. of the Libr. of Cong. v. Boorstin*,
751 F.2d 1405 (D.C. Cir. 1985) .......................................................... 31

*Feliciano v. Department of Transp.*,
605 U.S. 38 (2025) ........................................................................ 30

*Free Enter. Fund v. Public Co. Acct. Oversight Bd.*,
561 U.S. 477 ....................................................... 28, 36, 37, 38, 43, 44

*Freytag v. Commissioner*,
501 U.S. 868 (1991)......................................................................28

*Hennen, In re*,
38 U.S. 230 (1839) ........................................................................ 41

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*,
684 F.3d 1332 (D.C. Cir. 2012) ............... 6, 8, 15, 22, 23, 24, 25, 26, 50

*Kennedy v. Braidwood Mgmt., Inc.*,
606 U.S. 748 (2025) ........................................................ 3, 18, 38, 44

*Medical Imaging & Tech. All. v. Library of Cong.*:
--- F.4th ---, 2026 WL 2576556 (D.C. Cir. Sep. 1, 2026) .................... 23
103 F.4th 830 (D.C. Cir. 2024) .............. 1, 7-8, 8, 13, 15, 22, 23, 27, 50

*Mistretta v. United States*,
488 U.S. 361 (1989) ...................................................................... 34

*Morrison v. Olson*,
487 U.S. 654 (1988) ...................................................................... 39

*Myers v. United States*,
272 U.S. 52 (1926) ............................................... 35-36, 36, 37, 39, 40

*Nken v. Holder*,
556 U.S. 418 (2009) ...................................................................... 20

*Perlmutter v. Blanche*,
2025 WL 2627965 (D.C. Cir. Sep. 10, 2025)
........................................................... 2, 12, 13, 28, 30, 47, 48, 49, 50

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
566 U.S. 639 (2012) ...................................................................... 32

*Raines v. Byrd*,
521 U.S. 811 (1997) .......... 45

*Rimini St., Inc. v. Oracle USA, Inc.*,
586 U.S. 334 (2019) .......... 31

*Sampson v. Murray*,
415 U.S. 61 (1974) .......... 45

*Sawyer, In re*,
124 U.S. 200 (1888) .......... 46

*Seila Law LLC v. CFPB*,
591 U.S. 197 (2020) .......... 17, 35, 40, 51

*Swan v. Clinton*,
100 F.3d 973 (1996) .......... 39

*Trump v. Boyle*,
145 S. Ct. 2653 (2025) .......... 13, 19, 48, 49

*Trump v. Cook*,
146 S. Ct. 2234 (2026) .......... 18, 19, 45, 46

*Trump v. Slaughter*,
146 S. Ct. 2283 (2026) .......... 26, 27, 36, 38, 40, 42, 43

*Trump v. Wilcox*,
145 S. Ct. 1415 (2025) .......... 2, 4, 11, 13, 19, 47, 48, 49

*United States v. Arthrex, Inc.*,
594 U.S. 1 (2021) .......... 38

*United States v. Curtiss-Wright Exp. Corp.*,
299 U.S. 304 (1936) .......... 26

*United States v. Welden*,
377 U.S. 95 (1964) .......... 33

*Williams v. Phillips*,
482 F.2d 669 (D.C. Cir. 1973) .......... 35

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 20

**U.S. Constitution:**

Art. I, § 2, cl. 5 .......... 24

Art. I, § 3 .......... 24

Art. I, § 5 .......... 24

Art. II, § 2, cl. 2 .......... 28

Art. II, § 3 .......... 42

**Statutes:**

Act of Apr. 24, 1800, ch. 37, 2 Stat. 55 .......... 6

Act of Jan. 26, 1802, ch. 2, 2 Stat. 128 .......... 6, 7, 23, 24

Act of Feb. 19, 1897, ch. 265, 29 Stat. 538 .......... 8

Civil Service Reform Act of 1978,
5 U.S.C. § 1101 *et seq.* .......... 29

Federal Vacancies Reform Act:
5 U.S.C. §§ 3345-3349d .......... 5
5 U.S.C. § 3345(a) .......... 5, 15, 16, 21, 22
5 U.S.C. § 3345(a)(2) .......... 3, 5
5 U.S.C. § 3346(a)(1) .......... 6, 10

2 U.S.C. § 136 .......... 6

2 U.S.C. § 136-1(a) .......... 6, 24

2 U.S.C. § 181(b)(1) .......... 32

5 U.S.C. §§ 101-103 .......... 22

5 U.S.C. § 104 .......... 5, 22, 30

5 U.S.C. § 104(1) .......... 3, 15, 16, 21, 22, 27

5 U.S.C. § 104(2) .......... 34

5 U.S.C. § 105 .............................................. 5, 16, 21, 22, 27, 30, 32

5 U.S.C. § 551(1) .............................................. 31

5 U.S.C. § 3102(a)(1) .............................................. 31

5 U.S.C. § 3401(1) .............................................. 31

5 U.S.C. § 4101(1) .............................................. 31

5 U.S.C. § 4501(1) .............................................. 31

5 U.S.C. § 5102(a)(1) .............................................. 31

5 U.S.C. § 5521(1) .............................................. 31

5 U.S.C. § 5541(1) .............................................. 31

5 U.S.C. § 5584(g) .............................................. 31

5 U.S.C. § 5595(a)(1) .............................................. 31

5 U.S.C. § 5721(1) .............................................. 31

5 U.S.C. § 5921(2) .............................................. 31

5 U.S.C. § 6121(1) .............................................. 31

5 U.S.C. § 7103(a)(3) .............................................. 29, 31

5 U.S.C. § 13101(11) .............................................. 32

5 U.S.C. § 13101(11)(D) .............................................. 34

5 U.S.C. § 13101(11)(F) .............................................. 32

12 U.S.C. § 242 .............................................. 46

17 U.S.C. § 407 .............................................. 25

17 U.S.C. § 410 .............................................. 25

17 U.S.C. § 701(a) .............................................. 1, 8, 9, 28

17 U.S.C. § 701(b)(3) ........................................................ 25

17 U.S.C. § 702 ........................................................ 8, 9, 25

17 U.S.C. § 708 ........................................................ 8

17 U.S.C. § 708(b) ........................................................ 25

17 U.S.C. § 801 ........................................................ 25

17 U.S.C. § 801(a) ........................................................ 25

17 U.S.C. § 802(f)(1)(A)(ii) ........................................................ 25

28 U.S.C. § 1292(a)(1) ........................................................ 4

28 U.S.C. § 1331 ........................................................ 4

28 U.S.C. § 1361 ........................................................ 4

28 U.S.C. § 1651 ........................................................ 4

28 U.S.C. § 2201 ........................................................ 4

28 U.S.C. § 2202 ........................................................ 4

**Rule:**

Fed. R. App. P. 4(a)(1)(B) ........................................................ 4

**Legislative Material:**

29 Cong. Rec. 318 (1896) ........................................................ 7

**Other Authorities:**

R.R. Bowker, *The American National Library*, 21 Libr. J. 357 (1896) ........................................................ 8

John Y. Cole, *For Congress and the Nation: A Chronological History of the Library of Congress* (1979) ........................................................ 7

*Executive*, Webster's New International Dictionary (2d ed. 1958) ........................................................ 22

Libr. of Cong., *George Watterston (1783-1854)*, https://perma.cc/S72M-DGFK .......... 7

Libr. of Cong., *John Silva Meehan (1790-1863)*, https://perma.cc/83PD-7JGB .......... 7

Libr. of Cong., *Librarians of Congress, 1802-1974* (1977) .......... 7

Theodore Roosevelt, *Message to the Senate and the House of Representatives* (Dec. 3, 1901), https://perma.cc/6XPV-JQ53 .......... 8

U.S. House of Representatives, *Parliamentarian of the House,* https://perma.cc/B6NM-3EZY .......... 25

U.S. House of Representatives, *Sergeant at Arms*, https://perma.cc/R6HD-D6VF .......... 25

18B Wright & Miller, *Federal Practice & Procedure* (3d ed.), Westlaw (database updated Apr. 2026) .......... 20

## GLOSSARY

| | |
|---|---|
| CSRA | Civil Service Reform Act |
| FTC | Federal Trade Commission |
| FVRA | Federal Vacancies Reform Act |

## INTRODUCTION

The Library of Congress, notwithstanding its name, is a component of the Executive Branch under the Constitution. It is led by the Librarian of Congress, who is a "Head of Department" appointed by the President and subject to at-will removal. The Librarian is authorized to appoint and remove inferior executive officers under the Appointments Clause, and one such officer is the Register of Copyrights, who leads the Copyright Office. 17 U.S.C. § 701(a). Both the Librarian and Register exercise quintessential executive power, including promulgating rules, conducting administrative adjudications, and enforcing federal statutes and regulations. This Court thus has explained that "whatever the Library's historical association with Congress, it is squarely a component of the Executive Branch." *Medical Imaging & Tech. All. v. Library of Cong.*, 103 F.4th 830, 840 n.4 (D.C. Cir. 2024).

Plaintiff Shira Perlmutter was the Register of Copyrights. In May 2025, the President removed the previous Librarian and designated Todd Blanche, at the time the Senate-confirmed Deputy Attorney General, as Acting Librarian. The President then directed plaintiff's

removal, and Blanche appointed her successor. In this litigation, plaintiff does not dispute that the President lawfully removed the former Librarian, or that a lawful Acting Librarian could remove her from her position. Rather, she contends that the President lacked the authority under the Federal Vacancies Reform Act (FVRA) to designate an Acting Librarian. The district court declined to grant plaintiff's request for a preliminary injunction, explaining that the Supreme Court has many times stayed lower-court injunctions that prevented the President from removing officers wielding executive power. JA102 (citing *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025)).

On appeal, however, a divided motions panel of this Court issued an injunction pending appeal restoring plaintiff to office based on the panel majority's view that the Register is a *legislative* officer whose removal violated the separation of powers. *See Perlmutter v. Blanche*, 2025 WL 2627965 (D.C. Cir. Sep. 10, 2025) (Pan, J., concurring). Now at the merits stage, plaintiff has essentially abandoned the panel majority's reasoning, and for good reason. The decision cannot be reconciled with decisions of this Court and the Supreme Court, which make clear that the Librarian and Register exercise executive power

and thus must be components of the Executive Branch for constitutional purposes.

Plaintiff nonetheless maintains that the district court erred in denying a preliminary injunction because the President lacks statutory authority under the FVRA to appoint an Acting Librarian. That is also incorrect. The FVRA authorizes the President to appoint acting officials in an "Executive agency," 5 U.S.C. § 3345(a)(2), which is defined to include, *inter alia*, "an establishment in the executive branch" that meets certain textual criteria, all of which the Library satisfies, *id.* § 104(1). The Library thus is part of the Executive Branch for FVRA purposes, just as it is for constitutional ones. In any case, even if the President lacked the power to designate an Acting Librarian in these circumstances, Article II allowed him to remove plaintiff directly in order to maintain the "chain of political accountability" that the Constitution demands. *Kennedy* v. *Braidwood Mgmt., Inc.*, 606 U.S. 748, 794 (2025).

The remaining equitable factors also decisively favor the government. It is now well established that "the Government faces greater risk of harm from an order allowing a removed officer to

continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Wilcox*, 145 S. Ct. at 1416-17. That precedent forecloses plaintiff's request for preliminary relief. Accordingly, this Court should vacate the injunction pending appeal and affirm the district court's denial of a preliminary injunction.

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1361, 1651, 2201, and 2202. JA015. On July 30, 2025, the district court denied plaintiff's request for a preliminary injunction. JA093. Plaintiff filed a timely notice of appeal on July 31, 2025. JA109; *see* Fed. R. App. P. 4(a)(1)(B). This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUE

The question presented is whether the district court abused its discretion in denying plaintiff's request for a preliminary injunction restoring her to the office of the Register of the Copyright.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A. Legal Background

**1.** In the Federal Vacancies Reform Act (FVRA), 5 U.S.C. §§ 3345-3349d, Congress provided procedures to designate an acting officer to perform the duties of "an officer of an Executive agency" whenever the incumbent "dies, resigns, or is otherwise unable to perform the functions and duties of the office," *id.* § 3345(a). The statute defines "Executive agency" as "an Executive department, a Government corporation, and an independent establishment." *Id.* § 105. An "independent establishment" is defined, in turn, as "an establishment in the executive branch (other than the United States Postal Service or the Postal Regulatory Commission) which is not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment" or "the Government Accountability Office." *Id.* § 104.

The FVRA authorizes the President to designate another Senate-confirmed officer as an acting officer to perform the duties of a Senate-confirmed officer of an "Executive agency" when a vacancy arises. 5 U.S.C. § 3345(a)(2). An acting officer who is serving under the FVRA

generally may perform the duties of the vacant office for no more than 210 days. *Id.* § 3346(a)(1).

**2.** The Library of Congress is a statutorily created entity that is headed by the Librarian of Congress. 2 U.S.C. § 136. Although the Library was initially created for "use [by] Congress," Act of Apr. 24, 1800, ch. 37, § 5, 2 Stat. 55, 56, it has for over two centuries operated under the control of the Executive Branch and provided services to the federal government broadly, not just to Congress. Since the position of Librarian was created in 1802, Congress has directed that the Librarian be appointed by the President—now, with the advice and consent of the Senate. *See* Act of Jan. 26, 1802, ch. 2, § 3, 2 Stat. 128, 129 (1802 Act) (providing that "a librarian [is] to be appointed by the President of the United States solely"); 2 U.S.C. § 136-1(a) ("The President shall appoint the Librarian of Congress, by and with the advice and consent of the Senate."). Because no statutory provision expressly addresses the Librarian's removal, it is undisputed that the President may remove the Librarian at will. *See Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1341 (D.C. Cir. 2012). And, historically, Presidents have done so—including Presidents Jackson and Lincoln.

*See* Libr. of Cong., *George Watterston (1783-1854)*, https://perma.cc/S72M-DGFK (President Jackson removing Librarian George Watterston); Libr. of Cong., *John Silva Meehan (1790-1863)*, https://perma.cc/83PD-7JGB (President Lincoln removing Librarian John Silva Meehan).

Presidents also have exerted control over Librarians in other ways, including with respect to such mundane matters as which books the Library should purchase. *See* Libr. of Cong., *Librarians of Congress, 1802-1974*, at 20 (1977) (describing President Jefferson as taking active oversight over the first Librarian's purchase of books). In the statute that created the office of Librarian, Congress authorized the President and Vice-President to borrow books from the Library, 1802 Act § 4, 2 Stat. at 129, and privileges were soon extended to cabinet officials, *see* John Y. Cole, *For Congress and the Nation: A Chronological History of the Library of Congress* 12, 15 (1979). It is thus "a misnomer to call [the Library of Congress] the Congressional Library. It is a great national Library … and belongs to the Government of the United States." 29 Cong. Rec. 318-19 (1896) (Rep. Dockery); *accord id.* at 387 (Rep. Stone); *id.* (Rep. Fairchild). It is "the Nation's library." *Medical*

*Imaging & Tech. All. v. Library of Cong.*, 103 F.4th 830, 833 (D.C. Cir. 2024); *see also* R.R. Bowker, *The American National Library*, 21 Libr. J. 357, 357 (1896) ("[T]he Library of Congress, so called, is now the library of the nation as well as of Congress …"); Theodore Roosevelt, *Message to the Senate and the House of Representatives* (Dec. 3, 1901), https://perma.cc/6XPV-JQ53 ("[T]he Federal library, which, though still the Library of Congress, and so entitled, is the one national library of the United States.").

The Library is composed of several divisions, including the Copyright Office. *See* Act of Feb. 19, 1897, ch. 265, 29 Stat. 538, 545. The Register of Copyrights is the head of the Copyright Office and is appointed by the Librarian. 17 U.S.C. § 701(a). The Register has "broad authority … to make copyright rules," *Medical Imaging*, 103 F.4th at 833, including the authority "to promulgate copyright regulations, to apply the statute to affected parties, and to set rates and terms case by case," *Intercollegiate Broad. Sys.*, 684 F.3d at 1342; *see* 17 U.S.C. §§ 702, 708. The Register "acts under the direction and supervision of the Librarian," *Medical Imaging*, 103 F.4th at 833 (citing

17 U.S.C. § 701(a)), and "[a]ll regulations established by the Register … are subject to the approval of the Librarian," 17 U.S.C. § 702.

### B. Factual Background and Prior Proceedings

**1.** In 2016, President Obama appointed Carla Hayden as Librarian. JA018. In 2020, Hayden appointed plaintiff Shira Perlmutter as Register. JA015.

On May 8, 2025, the President exercised his authority under Article II of the Constitution to remove Hayden as Librarian. JA018. Invoking the FVRA, the President designated Todd Blanche, then the Senate-confirmed Deputy Attorney General, as Acting Librarian. JA021. On May 10, the President directed the removal of plaintiff from the position of Register. JA019. Blanche, as Acting Librarian, confirmed plaintiff's removal by appointing Paul Perkins, Associate Deputy Attorney General, to serve as Acting Register. JA021. Plaintiff alleges that the President removed her due to disagreements regarding a pre-publication version of a report about the use of copyrighted materials to train generative artificial-intelligence models. JA019.

Blanche's period of service as Acting Librarian expired on December 4, 2025—210 days after former Librarian Hayden's removal

from office. *See* 5 U.S.C. § 3346(a)(1). Prior to the expiration of his service, on May 11, 2025, Blanche designated Brian Nieves to be Acting Principal Deputy Librarian, and he still serves in that position. *See* Dkt. No. 54, at 2 n.1.[1]

**2.** Plaintiff brought suit challenging her removal and seeking an injunction prohibiting Blanche and Perkins from serving, and reinstating plaintiff as Register. JA023-24. Plaintiff also moved for a temporary restraining order. The district court denied plaintiff's motion from the bench, concluding that plaintiff had "not met her burden of showing that she will suffer imminent irreparable harm" absent a temporary restraining order. Dtk. No. 15, at 51:25-52:6. The court also noted that plaintiff had not explained why the Copyright Office "should function with any degree of independence from control by the Executive Branch, especially when, as the D.C. Circuit has held … it exercises executive authority." *Id.* at 42:23-43:6.

**3.** The district court then denied plaintiff's subsequent motion for a preliminary injunction, again concluding that plaintiff had not

[1] On September 18, 2026, Perkins resigned from his role as Acting Register.

demonstrated irreparable harm. JA093. The court rejected plaintiff's argument that the temporary loss of her "statutory right to function" as Register constituted irreparable harm. JA098. The court further concluded that plaintiff could not rely on harms to the Library or the Copyright Office to meet her burden, both because "injuries to third parties are not a basis to find irreparable harm," and because plaintiff made no showing that either the Library or the Copyright Office could not perform its statutory duties absent an injunction. JA106. The court also recognized that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." JA102 (quoting *Trump v. Wilcox*, 145 S. Ct. 1415, 1416-17 (2025)).

**4.** Plaintiff appealed and sought an injunction pending appeal from the district court and this Court. The district court denied plaintiff's motion. JA111. But a divided motions panel of this Court granted plaintiff's request and enjoined defendants (other than the President) "from interfering with [plaintiff's] service as Register." Order (Sep. 10, 2025).

Judge Pan, joined by Judge Childs, issued a concurring opinion, concluding that plaintiff was likely to prevail on the merits of her appeal. *See Perlmutter v. Blanche*, 2025 WL 2627965 (D.C. Cir. Sep. 10, 2025) (Pan, J., concurring). The panel majority characterized the Librarian and Register as parts of "the Legislative Branch" that "do[] not exercise substantial executive power." *Id.* at *1-2. From that premise, the panel majority concluded that the Library is not an Executive agency for purposes of the FVRA and thus plaintiff's removal was unlawful because the President lacked authority to designate Blanche as Acting Librarian, and Blanche in turn lacked authority to remove plaintiff. *See id.* at *5. The panel majority further concluded that plaintiff suffered irreparable harm as a result of her removal. *Id.* at *6. It recognized that plaintiff's "inability to perform her statutory functions likely does not, in itself, constitute *irreparable* harm," but reasoned that "here, there is more," *id.* at *7, because plaintiff "alleged violation of the separation of powers," which was "irreparably harmful to both Perlmutter and to our system of government," *id.* at *8. Lastly, the panel majority concluded that the remaining equitable factors weighed in favor of an injunction. *Id.* at *9-10.

Judge Walker dissented, explaining that the Supreme Court has "[r]ecently, repeatedly, and unequivocally" "stayed lower-court injunctions that barred the President from removing officers exercising executive power." *Perlmutter*, 2025 WL 2627965, at *11 & nn. 7-8 (Walker, J., dissenting) (first citing *Wilcox*, 145 S. Ct. at 1415; and then citing *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025)). Judge Walker pointed out that "[t]he Register of Copyrights exercises executive power in a host of ways," and that this Court thus "'recently recognized the important executive power exercised by the Library, suggesting that whatever the Library's historical association with Congress, it is squarely a component of the Executive Branch in its role as a copyright regulator.'" *Id.* at *10 (emphasis omitted) (quoting *Medical Imaging*, 103 F.4th at 840 n.4). Judge Walker concluded that "whether or not Perlmutter's removal was likely unlawful, *Wilcox* and *Boyle* referred to 'a wrongfully removed officer' when they said that 'the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty.'" *Id.* at *11 (citations omitted).

**5.** The government petitioned for rehearing en banc of the order granting the injunction pending appeal. The en banc Court denied the government's request. *See* En Banc Order (Oct. 1, 2025). The government then applied to the Supreme Court for a stay of the injunction. The Supreme Court deferred ruling on the request pending decisions in *Trump v. Slaughter*, No. 25-332 (U.S.), and *Trump v. Cook*, No. 25A312 (U.S.). After the Supreme Court issued its decisions in those cases, on June 30, 2026, the Court denied the government's stay request but explained that the denial was "not a ruling on the merits of the legal issues presented in the litigation." *Blanche v. Perlmutter*, 2026 WL 1871314, at *1 (U.S. June 30, 2026).

## SUMMARY OF ARGUMENT

The Court should affirm the denial of a preliminary injunction, and vacate the injunction pending appeal, because plaintiff has not established her entitlement to preliminary injunctive relief. Plaintiff is unlikely to prevail on the merits of her appeal because she was lawfully removed from her role as Register of Copyrights. Plaintiff also suffered no irreparable harm from her removal, and the equities strongly weigh

against restoring plaintiff to an office that exercises quintessential executive authority.

**I.A.** The President lawfully designated Todd Blanche to serve as the Acting Librarian under the FVRA, and, as Acting Librarian, Blanche could lawfully remove plaintiff from her office. The FVRA authorizes the President to designate an acting officer of "an Executive agency," 5 U.S.C. § 3345(a), which is defined to include "an establishment in the executive branch," *id.* § 104(1). Because the term "executive branch" is not defined, it carries its ordinary meaning as the branch that executes the law. The Library satisfies that definition because it is "undoubtedly a component of the Executive Branch," as this Court has already determined, and as the Library's structure and operation confirm. *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1342 (D.C. Cir. 2012) (quotation marks omitted); *see also Medical Imaging & Tech. All. v. Library of Cong.*, 103 F.4th 830, 840 n.4 (D.C. Cir. 2024) ("[W]hatever the Library's historical association with Congress, it is squarely a component of the Executive Branch …"). The Library is headed by the Librarian of Congress, who is appointed by the President and subject to at-will removal by him. And both the

Librarian and Register exercise quintessential executive power, including promulgating rules, conducting administrative adjudications, and enforcing federal statutes and regulations. Because the Library is "an establishment in the executive branch," 5 U.S.C. § 104(1), it is an "Executive agency" covered by the FVRA, *id.* §§ 105, 3345(a). The President thus lawfully designated an Acting Librarian, who lawfully removed plaintiff as Register.

Plaintiff does not dispute that she could be removed by a properly designated Acting Librarian. Nor does she dispute that the FVRA applies so long as the Library is part of the "executive branch," as that term is ordinarily understood. And, critically, she does not dispute that the statutory duties of both the Librarian and Register involve the exercise of executive power. In fact, plaintiff has abandoned the central premise of the motions panel's ruling that the Library is part of the Legislative Branch for constitutional purposes.

Plaintiff nonetheless maintains that the FVRA does not apply here based on Congress's treatment of the Library in other statutes. But courts do not subordinate the clear text of a statute to context clues derived from other provisions. In any event, none of the statutory

provisions invoked by plaintiff show that Congress meant to treat the Library as part of the Legislative Branch as a general matter, or for purposes of the FVRA in particular.

**B.** Because plaintiff's removal was lawful under the plain language of the FVRA, the Court should affirm the denial of the preliminary injunction based on that ground alone. But even if the FVRA did not authorize the President to designate an Acting Librarian, plaintiff is still unlikely to prevail on the merits because in these circumstances Article II empowered the President to remove plaintiff directly. Article II vests the President with the "power to remove—and thus supervise—those who wield executive power on his behalf," including inferior officers appointed by a Department Head. *Seila Law LLC v. CFPB*, 591 U.S. 197, 204 (2020). Typically, the President exercises the power to remove such inferior officers through the Department Head rather than on his own. But when there is no Department Head and the President lacks the power to designate an Acting Department Head, Article II empowers the President to remove inferior officers in that Department directly. Otherwise, inferior officers could wield executive power without answering to anyone,

breaking the "chain of political accountability" that Article II demands. *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 794 (2025). Indeed, that is precisely what has occurred here: As a result of the injunction pending appeal, plaintiff has been exercising executive power outside the control and supervision of the President and in contravention of Article II.

**II.** Plaintiff's request for a preliminary injunction independently fails because she faces no threat of irreparable harm. The ordinary loss of employment does not amount to irreparable harm, and public officials suffer no cognizable injury from being deprived of the statutory right to function in office. This Court thus has rejected requests by removed officers for preliminary injunctions reinstating them to their role. *See Dellinger v. Bessent*, 2025 WL 887518 (D.C. Cir. Mar. 10, 2025) (per curiam).

The Supreme Court's decision in *Trump v. Cook*, 146 S. Ct. 2234 (2026), in no way changes that analysis. *Cook* turned on whether the President had provided requisite notice and an opportunity to be heard pursuant to a statutory restriction on the President's ability to remove Federal Reserve Governors held to be constitutional given the "unique

historical status and role" of the Federal Reserve. *Id.* at 2249. The Court nowhere suggested that a preliminary injunction was the normal or automatic remedy where, as here, the President lawfully directs the removal of an officer exercising core executive power.

**III.** The remaining equitable factors decisively favor the government. The Supreme Court has made clear that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Trump v. Wilcox*, 145 S. Ct. 1415, 1416-17 (2025); *see also Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) (same). That reasoning controls here.

## STANDARD OF REVIEW

This Court reviews the district court's denial of a preliminary injunction for abuse of discretion, with findings of fact reviewed for clear error and conclusions of law reviewed de novo. *See Clevinger v. Advocacy Holdings, Inc.,* 134 F.4th 1230, 1233 (D.C. Cir. 2025).

## ARGUMENT

To obtain the "extraordinary remedy" of a preliminary injunction, plaintiff must show (1) a likelihood of success on the merits, (2) that she

will suffer irreparable harm absent an injunction (3) that the balance of equities favors an injunction, and (4) that an injunction is in the public interest, *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008), with the last two factors merging because the federal government is the opposing party, *see Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiff satisfied none of prerequisites for preliminary relief here. Accordingly, the Court should affirm the district court's denial of the preliminary injunction and vacate the motions panel's grant of an injunction pending appeal.[2]

## I. Plaintiff Is Unlikely To Prevail On The Merits.

Plaintiff is unlikely to prevail on the merits because she was lawfully removed from her position as the Register of Copyrights. The Acting Librarian undisputedly has the power to remove the Register, and the President lawfully designated Blanche to serve in that role pursuant to the FVRA. Alternatively, if the President lacked the power

[2] The motions panel's grant of an injunction pending appeal does not bind the merits panel because "[p]reliminary or tentative rulings," such as "an appellate injunction pending appeal," "do not establish law of the case." 18B Wright & Miller, *Federal Practice & Procedure* § 4478.5 (3d ed.), Westlaw (database updated Apr. 2026); *see also Belbacha v. Bush*, 520 F.3d 452, 458 (D.C. Cir. 2008).

to designate an Acting Librarian who could remove plaintiff from her executive office, Article II allowed the President to remove plaintiff directly.

### A. Plaintiff was removed by a lawfully designated Acting Librarian.

There is no dispute that the President lawfully removed former-Librarian Hayden, and that a lawfully designated Acting Librarian could properly remove plaintiff from the office of Register. Because the President lawfully designated Blanche as Acting Librarian under the FVRA, plaintiff's removal was lawful.

**1.** The FVRA authorizes the President to designate an acting officer if a Senate-confirmed "officer of an Executive agency" dies, resigns, or is otherwise unable to perform his duties. 5 U.S.C. § 3345(a). The term "Executive agency," as used in that provision, "means an Executive department, a Government corporation, [or] an independent establishment." *Id.* § 105. An "independent establishment," in turn, is defined to include "an establishment in the executive branch (other than the United States Postal Service or the Postal Regulatory Commission) which is not an Executive department, military department, Government corporation, or part thereof, or part

of an independent establishment." *Id.* § 104(1). The Library is an "independent establishment," *id.* § 104, and thus an "Executive agency" under the FVRA, *id.* §§ 105, 3345(a).

The Library satisfies every element of the statutory definition of an "independent establishment." Most critically, the Library is "an establishment in the executive branch." 5 U.S.C. § 104(1).[3] The FVRA includes no special definition of the term "executive branch," so the term bears its ordinary meaning as the branch of government "which carries [laws] into effect or secures their due performance." *Executive*, Webster's New International Dictionary 892 (2d ed. 1958); *see Buckley v. Valeo*, 424 U.S. 1, 135 (1976) (per curiam). The Library satisfies that definition because, as this Court has already concluded, it is "undoubtedly a component of the Executive Branch." *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1342 (D.C. Cir. 2012) (quotation marks omitted); *see also Medical Imaging & Tech.*

---

[3] There is no dispute that the Library satisfies the other elements of the statutory definition because it is not the United States Postal Service or Postal Regulatory Commission, and it is not an "Executive department," "military department," "Government corporation," a part of one of those entities, or a part of another independent establishment. *See* 5 U.S.C. §§ 101-103 (defining those terms).

*All. v. Library of Cong.*, 103 F.4th 830, 840 n.4 (D.C. Cir. 2024) ("[W]e have … recognized the important executive power exercised by the Library, suggesting that whatever the Library's historical association with Congress, it is squarely a component of the Executive Branch in its role as a copyright regulator."); *Medical Imaging & Tech. All. v. Library of Cong.*, --- F.4th ---, 2026 WL 2576556, at *4 (D.C. Cir. Sep. 1, 2026) (reviewing the Librarian's rulemaking under the Administrative Procedure Act); *Eltra Corp. v. Ringer*, 579 F.2d 294, 301 (4th Cir. 1978) ("[T]he Copyright Office is an executive office, operating under the direction of an Officer of the United States… ."). Indeed, this Court has relied on that understanding in a variety of contexts, including in rejecting Appointments Clause challenges to copyright royalty adjudications, *see Intercollegiate Broad. Sys.*, 684 F.3d at 1341-42, and constitutional challenges to the Librarian's exercise of rulemaking power, *see Medical Imaging*, 103 F.4th at 835.

The Library's structure and statutory duties confirm that conclusion. Since the Library's inception, it has been headed by the Librarian of Congress, who has been appointed by the President. *See* 1802 Act § 3, 2 Stat. at 129. When Congress first created the position of

Librarian in 1802, it provided "[t]hat a librarian [was] to be appointed by the President of the United States solely," without any congressional input. *Id.* The Librarian is now appointed by the President with the advice and consent of the Senate. 2 U.S.C. § 136-1(a). The Librarian's manner of appointment stands in stark contrast to the appointment of congressional officers under Article I, such as the Speaker of the House of Representatives and the Senate Parliamentarian, who are appointed by the Houses of Congress. *See* U.S. Const. art. I, § 2, cl. 5; § 3; *id.* § 5.

The President also exercises direct control over the Library, including through the removal authority. Because no statutory provision expressly addresses the Librarian's removal, it is undisputed that the President may remove the Librarian at will. *See Intercollegiate Broad. Sys.*, 684 F.3d at 1341. Presidents have long exercised that authority: President Jackson, a Democrat, removed Librarian George Watterston, a Whig, and replaced him with Democrat John Silva Meehan, who, in turn, was removed by President Lincoln and replaced by a Republican. *See supra* pp. 6-7. Presidents have also exerted control over Librarians in other ways, such as directing what books the Library should purchase. *See supra* p. 7. The President's authority to

oversee and direct the Librarian's actions contrasts with the President's lack of authority over congressional entities, such as the House Sergeant at Arms or the House Parliamentarian. *See* U.S. House of Representatives, *Sergeant at Arms*, https://perma.cc/R6HD-D6VF; U.S. House of Representatives, *Parliamentarian of the House,* https://perma.cc/B6NM-3EZY.

The Librarian and Register are also part of the Executive Branch because they exercise executive power. For example:

- The Register, with the Librarian's approval, issues regulations concerning copyright registration. *See* 17 U.S.C. §§ 702, 708(b).
- The Register, under the Librarian's supervision, interprets and applies the copyright laws in adjudicating applications for copyright registration. *See* 17 U.S.C. § 410.
- The Register enforces the requirement that copyright owners deposit copies of their works with the Library of Congress, including by seeking fines from those who violate that requirement. *See* 17 U.S.C. § 407.
- The Librarian and Register oversee the Copyright Royalty Board, which adjudicates statutory copyright-royalty proceedings. *See* 17 U.S.C. § 801. The Librarian appoints and removes the Board's members. *See id.* § 801(a); *Intercollegiate Broad. Sys.*, 684 F.3d at 1342. A Board member or a party to a copyright-royalty adjudication also may refer a legal issue to the Register, and the Board "shall apply the legal interpretation embodied in the [Register's] response." 17 U.S.C. § 802(f)(1)(A)(ii).
- The Register, under the Librarian's supervision, participates "in meetings of international intergovernmental organizations and meetings with foreign government

> officials relating to copyright," "including as a member of United States delegations." 17 U.S.C. § 701(b)(3).

Rulemaking, administrative adjudication, law enforcement, and diplomacy are all "unquestionably exercises [of] executive power." *Trump v. Slaughter*, 146 S. Ct. 2283, 2305 (2026); *see City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013); *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936). Indeed, this Court has already recognized that these "powers" are "generally associated in modern times with executive agencies rather than legislators." *Intercollegiate Broad. Sys.*, 684 F.3d at 1341-42.

If any doubt remained, the Supreme Court's decision in *Slaughter* confirms that the Library exercises executive power. There, the Supreme Court held invalid the for-cause removal protections applicable to members of the Federal Trade Commission (FTC) because the FTC "exercises executive power, and must therefore be controlled by the Chief Executive, in whom such power is vested." *Slaughter*, 146 S. Ct. at 2305. The Court observed that the FTC has the power to "flesh out … statutory regimes" by "promulgat[ing] substantive rules that carry the force of law," and to "enforce[] those statutes and rules through in-house adjudication[]." *Id*. at 2304-05. The Court explained

that these authorities are "executive through and through" and could not be "cleaved off from the Executive Branch." *Id.* at 2305. The Librarian and Register exercise those same authorities here, which "fall well within the heartland of executive power." *Id.*

Because the Library "is squarely a component of the Executive Branch," *Medical Imaging*, 103 F.4th at 840 n.4, it is an "independent establishment," 5 U.S.C. § 104, and thus an "Executive agency," *id.* § 105, under the plain meaning of the FVRA. The President thus lawfully designated Blanche as Acting Librarian, and Blanche lawfully removed plaintiff as Register.

**2.** Plaintiff does not dispute that the term "Executive agency" includes an "independent establishment," 5 U.S.C. § 105, and that the term "independent establishment" includes an "establishment in the executive branch" (subject to qualifications not at issue here), *id.* § 104(1); *see* Opening Br. 28. Nor does plaintiff dispute that the term "executive branch" bears its ordinary meaning as the branch that executes the laws. And, critically, plaintiff no longer disputes that the Librarian and Register exercise executive power and thus are components of the Executive Branch for constitutional purposes. *See*

Opening Br. 5-6 (recognizing the Register exercises such authority); Opening Br. 24-25 (acknowledging the Librarian is a "Head of Department").[4] Indeed, plaintiff has abandoned the central premise of the motions panel's ruling that the Librarian and Register are part of "the Legislative Branch." *Perlmutter v. Blanche*, 2025 WL 2627965, at *1-2 (D.C. Cir. Sep. 10, 2025) (Pan, J., concurring). Thus, the Library is part of the Executive Branch for purposes of the FVRA, just as it is for constitutional purposes. That makes sense: The FVRA relates to the President's appointment power and is limited to those officers (like the Librarian) appointed pursuant to the default method under the Appointments Clause, so it is appropriate that the statute would track constitutional lines.

[4] If the Library were a legislative body, plaintiff's own appointment as Register would be invalid. The Register is appointed by the Librarian, *see* 17 U.S.C. § 701(a), a method of selection that complies with the Appointments Clause only if the Librarian is the "Hea[d]" of a "Departmen[t]." U.S. Const. art. II, § 2, cl. 2. A "Department" is a "free-standing, self-contained entity *in the Executive Branch*." *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 511 (emphasis added) (quoting *Freytag v. Commissioner*, 501 U.S. 868, 915 (1991) (Scalia, J., concurring in part and concurring in the judgment)).

Plaintiff nonetheless contends (at 3) that this Court "already determined" that the Library falls outside the scope of the FVRA in *Davis v. Billington*, 681 F.3d 377 (D.C. Cir. 2012). But plaintiff vastly overreads that decision, which did not concern the FVRA at all. Rather, *Davis* addressed whether Library employees complaining about allegedly unconstitutional employment actions possessed a cause of action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See Davis*, 681 F.3d at 380-88. As part of that analysis, the Court considered whether Congress deliberately precluded Library employees from recovering for damages under the Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. § 1101 *et seq*. The Court concluded that Congress did so, in part because the relevant CSRA provision "list[ed] the Library of Congress separately from Executive agency." *Davis*, 681 F.3d at 385 (citing 5 U.S.C. § 7103(a)(3)). The Court thus reasoned that the "term 'Executive agency' … does not contain the Library of Congress within the meaning of the statute, *see* 5 U.S.C. § 7103(a)(3)." *Id*. at 386.

*Davis* does not address the FVRA provisions that are at issue here, much less conclude that the Library falls outside them. Instead,

*Davis* stands for the unremarkable proposition that, if a statute like the CSRA explicitly distinguishes between the Library and executive agencies, then the Library is not an executive agency "within the meaning of [that] statute." *Davis*, 681 F.3d at 386. But the FVRA makes no such distinction. *See* 5 U.S.C. §§ 104, 105. Plaintiff ignores this critical context in suggesting that *Davis* "squarely" controls here. Opening Br. 26. Not even the motions panel thought that was the case. *See Perlmutter*, 2025 WL 2627965, at *6 (Pan, J., concurring) (explaining in a string cite that *Davis* "analyz[ed] the Civil Service Reform Act").

Plaintiff's remaining statutory arguments fail for much the same reason. Plaintiff contends that Congress's treatment of the Library in other statutory provisions shows that it is not an Executive agency for FVRA purposes. *See* Opening Br. 30-33. But that is not how courts normally interpret statutes. When a statute defines a term ("Executive agency" or "independent establishment"), courts must apply the definition; and when a statute does not define a term ("executive branch"), courts must apply its ordinary meaning. *See Feliciano v. Department of Transp.*, 605 U.S. 38, 45 (2025). Either way, courts may

not subordinate the clear text of the directly applicable provision to "contextual cues" from other provisions. *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 226 (2008).

Plaintiff's contextual arguments lack merit in any event. Plaintiff argues that the Library must be different than an "Executive agency" because Congress distinguishes between the two in other statutes, like in the CSRA. Opening Br. 31. But the Supreme Court has repeatedly explained that "[r]edundancy is not a silver bullet" and is "hardly unusual" in statutory drafting. *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019) (quotation marks omitted). There is also good reason that Congress may have listed the Library separately in the examples plaintiff cites, all of which define the word "agency." *See* 5 U.S.C. §§ 3102(a)(1), 3401(1), 4101(1) 4501(1), 5102(a)(1), 5521(1), 5541(1), 5584(g), 5595(a)(1), 5721(1), 5921(2), 6121(1), 7103(a)(3). This Court has held that the Library is not an "agency" within the meaning of the Administrative Procedure Act, *id.* § 551(1). *See Ethnic Emps. of the Libr. of Cong. v. Boorstin*, 751 F.2d 1405, 1416 n.15 (D.C. Cir. 1985). It thus makes sense that Congress listed the Library by name when drafting specialized definitions of "agency" in other statutes. By

contrast, Congress did not need to adopt that belt-and-suspenders approach in the statutory provisions at issue here because the definition of "Executive agency" plainly includes the Library.

Similarly, plaintiff is wrong that the Library cannot be an "Executive agency" for FVRA purposes because Congress "elsewhere regulated the Library as part of the legislative branch." Opening Br. 31. Congress has never enacted a provision stating that the Library is part of the Legislative Branch as a general matter. Instead, as the examples cited by plaintiff illustrate, *see* Opening Br. 31, Congress has enacted narrower provisions treating the Library as part of the Legislative Branch for purposes of "this section," 2 U.S.C. § 181(b)(1), or "this subchapter," 5 U.S.C. § 13101(11). These examples illustrate the "commonplace" principle of "statutory construction that the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quotation marks omitted). So while the Library satisfies the general definition of "Executive agency," 5 U.S.C. § 105, it is not an executive agency in other specific contexts—such as in the Ethics in Government Act, *id.* § 13101(11)(F)—where statutes instead treat it as part of the Legislative Branch. If anything, these

examples cut against plaintiff because they show that when Congress means to treat the Library as part of the Legislative Branch for purposes of a statute, it says so expressly—presumably because it recognizes the Library's constitutional status within the Executive Branch.

It also makes no difference that the provisions establishing the Library are codified in Title 2 of the U.S. Code. *Contra* Opening Br. 32. Unlike some other titles of the U.S. Code, Title 2 has never been enacted into positive law; instead, the provisions were "arrange[d]" there "by a codifier without the approval of Congress." *United States* v. *Welden*, 377 U.S. 95, 98 n.4 (1964) (quotation marks omitted). Such choices by the codifier "should be given no weight" in statutory interpretation. *Id.* The Fourth Circuit therefore has explained that "the mere codification of the Library" in Title 2 is "irrelevant." *Eltra Corp.*, 579 F.2d at 301; *see also Buckley*, 424 U.S. at 137-43 (holding that the Federal Election Commission exercised executive power, even though the provisions establishing that agency were at the time codified in Title 2).

Finally, plaintiff expresses concern that the Library cannot be part of the Executive Branch for some statutory purposes but not others. Opening Br. 30-31. But as plaintiff recognizes (at 30), "Congress can divide up the Government any way it wishes, and employ whatever terminology it desires, for nonconstitutional purposes," *Mistretta v. United States*, 488 U.S. 361, 422-23 (1989) (Scalia, J., dissenting) (emphasis omitted). And the Library is not unique in being treated as part of the Legislative Branch for some statutory purposes but not others. The Ethics in Government Act also treats the Government Accountability Office as part of the "legislative branch," 5 U.S.C. § 13101(11)(D), even though that agency is expressly included in the definition of an "independent establishment," *id.* § 104(2). That example shows that an entity can be treated as part of the Legislative Branch for purposes of a specific statute yet simultaneously satisfy the general definitions of "Executive agency" and "independent establishment" for FVRA purposes.

***

This Court thus should affirm the denial of the preliminary injunction based on a straightforward application of the FVRA's

statutory text, which authorized the designation of an Acting Librarian.[5]

### B. The President must have authority to remove the Register in these circumstances.

Even if the FVRA did not authorize the President to designate an Acting Librarian, plaintiff is still unlikely to prevail on the merits because in these circumstances Article II empowered the President to remove plaintiff directly.

**1.** Article II vests the President with the "power to remove—and thus supervise—those who wield executive power on his behalf." *Seila Law LLC v. CFPB*, 591 U.S. 197, 204 (2020). That removal power extends to both principal and inferior executive officers. Thus, in *Myers*

[5] The government argued below that the President also has inherent Article II authority to temporarily designate acting officers in certain circumstances to keep the government running. *See Williams v. Phillips*, 482 F.2d 669, 670 (D.C. Cir. 1973) (per curiam) (suggesting that the President has such "implied power"). *But see Aviel v. Gor*, 2025 WL 1600446, at *2 (D.C. Cir. June 5, 2025) (Katsas, J., concurring) (suggesting that the President does not have "unfettered discretion to designate acting principal officers"). The Court need not address the scope of that authority here, however, because the FVRA authorized the appointment of an Acting Librarian. And even if the FVRA does not apply to the Library, the only executive action challenged is plaintiff's removal, and the President has inherent Article II authority to remove plaintiff directly. *See infra* Part I.B.

v. *United States*, 272 U.S. 52 (1926), the Supreme Court invalidated a statute restricting the President's removal of an inferior officer, explaining that the "power to remove inferior executive officers … is in its nature an executive power." *Id.* at 161. Likewise, in *Free Enterprise Fund*, the Court invalidated a statute that infringed "the President's removal power" by granting inferior officers two layers of tenure protection. 561 U.S. at 495. And most recently, the Court explained in *Slaughter* that any "[s]ubordinate[]" official "who exercise[s] the President's power [is] subject to removal by him." 146 S. Ct. at 2310.

When Congress vests the appointment of an inferior officer in a Department Head, the President ordinarily exercises the power to remove that inferior officer through the Department Head rather than on his own. *See Free Enter. Fund*, 561 U.S. at 493. As a constitutional matter, Congress's power "to vest the appointment of … inferior officers in the heads of departments carries with it authority … to invest the heads of departments with power to remove." *Myers*, 272 U.S. at 161. And as a statutory matter, courts presume that "removal is incident to the power of appointment." *Free Enter. Fund*, 561 U.S. at 509. That approach ordinarily does not impair the President's oversight of the

Executive Branch because the President retains the ability to remove inferior officers through the Department Head, who "is and must be the President's *alter ego* in the matters of that department." *Myers*, 272 U.S. at 133.

But when there is no Department Head and the President lacks the power to designate an Acting Department Head, Article II empowers the President to remove inferior officers in that Department directly. *See Aviel*, 2025 WL 1600446, at *5 (Rao, J., dissenting). Article II vests the entire executive power, including the "power to remove inferior executive officers," in the President—not in Department Heads. *Myers*, 272 U.S. at 161. The Supreme Court thus has described restrictions on the removal of inferior officers as "limit[s] … on the President's removal power." *Free Enter. Fund*, 561 U.S. at 495. If the President cannot exercise that power through someone else, he must be able to exercise it himself.

A contrary rule would upend Article II's structure, which establishes a "chain of dependence" among "those who are employed in the execution of the law," ensuring that "the lowest officers, the middle grade, and the highest, will depend, as they ought, on the President,

and the President on the community." *Free Enter. Fund*, 561 U.S. at 498 (quoting 1 Annals of Cong. 499 (1789) (Joseph Gales ed., 1834) (James Madison)). Article II requires that inferior officers be subject to the "direction and supervision" of principal officers, who are in turn subject to the direction and supervision of the President. *United States v. Arthrex, Inc.*, 594 U.S. 1, 18 (2021). "Then, and only then, can they remain accountable to the President, and the President to the people." *Slaughter*, 146 S. Ct. at 2310. But if the President lacks the power to remove inferior officers in circumstances such as these, inferior officers could wield executive power without answering to anyone, which breaks the "chain of political accountability" that Article II demands. *Kennedy* v. *Braidwood Mgmt., Inc.*, 606 U.S. 748, 794 (2025).

This case aptly illustrates the problem. The upshot of plaintiff's position—and the effect of the injunction pending appeal—is that the President may neither designate an Acting Librarian who can remove plaintiff, nor remove her himself. Plaintiff is thus exercising executive power outside the control and supervision of the President in whom such power is vested. *See* Opening Br. 7 (explaining that plaintiff has been doing so for more than a year).

In addition, if the President may neither designate an Acting Librarian nor remove plaintiff directly, he may achieve her removal only by appointing a new Librarian with the Senate's advice and consent. And if the Senate does not consent to a new appointment, plaintiff could continue serving as Register indefinitely. This would hand the Senate an effective veto on the President's removal of the Register, violating the basic rule that Congress may not "draw to itself, or to either [House], the power to remove or the right to participate in the exercise of that power." *Myers*, 272 U.S. at 161; *see Morrison v. Olson*, 487 U.S. 654, 686 (1988) (Article II forbids "an attempt by Congress … to gain a role in the removal of executive officials"); *Bowsher v. Synar*, 478 U.S. 714, 725 (1986) ("[C]ongressional participation in the removal of executive officers is unconstitutional"). This Court has previously recognized this principle in *Swan* v. *Clinton*, 100 F.3d 973 (1996), where it explained that extending removal protections to "holdover members" of an independent agency would "raise constitutional problems" because it would enable the Senate to "keep holdover members in office by not acting on the President's nominations for successors." *Id.* at 986. The Supreme Court thus has

explained that "[a]lthough it is up to the Senate to decide whether to confirm those with whom the President would *prefer* to work, neither Congress nor the courts may saddle him with those with whom he *cannot* work." *Slaughter*, 146 S. Ct. at 2310.

**2.** Plaintiff questions whether Article II empowers the President to remove inferior officers in circumstances like these, *see* Opening Br. 39-43, but none of her arguments withstand scrutiny.

Plaintiff misunderstands the relevant inquiry in arguing that the government's position is "impossible to reconcile" with the Appointments Clause. Opening Br. 39. The argument is that the President may directly remove the Register, not that he may appoint a new Librarian for the purpose of removing the Register. Plaintiff worries that the President could circumvent Congress's decision to vest an appointment in a Department Head by "serially firing whomever the [Department Head] selected for the post." Opening Br. 40. But Article II grants the President the power to "supervise and guide" Department Heads, *Myers*, 272 U.S. at 135, as well as the "unrestricted" "power to remove" them "at will," *Seila Law*, 591 U.S. at 204-05. Thus, nothing prevents the President from directing a Department Head to appoint

his preferred candidates, and from removing the Department Head who refuses to do so—including the Librarian, whom plaintiff concedes is removable at will by the President. That routine exercise of presidential authority in no way "nulli[fies]" Congress's choice "to vest authority to appoint an inferior officer in someone other than the President." Opening Br. 40

Plaintiff also wrongly contends that Supreme Court precedent "forecloses" the exercise of the President's Article II authority here. Opening Br. 41. Plaintiff (at 40-41) principally invokes *In re Hennen*, 38 U.S. 230 (1839), but that case concerned whether a federal district judge with statutory authority to appoint a clerk of court could remove the clerk at will. *Id.* at 257-58. Because the statute was silent on removal, the Court applied the default principle that "the power of removal [i]s incident to the power of appointment" to hold that the clerk could be removed at will by the district judge because the clerk, like other inferior officers, held his office "at the discretion of the appointing power." *Id.* at 259-60. In passing, the Court also stated that "the President has certainly no power to remove" an inferior officer. *Id.* at 260. But the case did not concern the President's removal authority—

rather, it concerned a judicial officer appointed by an Article III court—and the statement was plainly "obiter dicta," as Judge Rao has explained, *Aviel*, 2025 WL 1600446, at *4 n.2 (Rao, J., dissenting). The Court's aside in *Hennen* "runs contrary to recent decisions reaffirming the breadth of the President's constitutional removal authority," and it "has never been repeated as a holding of the Supreme Court." *Id.* Nor can *Hennen* be read to mean that when the President has removed the Head of an executive Department, and inferior officers appointed by that Head continue to wield executive power within the Department—potentially contrary to the President's direction—that the President nevertheless lacks authority to remove such inferior officers who "unquestionably exercises executive power," *Slaughter*, 146 S. Ct. at 2305. The President must "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, and if there is no Department Head available to remove an inferior officer, then "those officers must be removable by the President" to "remain accountable to the President," *Slaughter*, 146 S. Ct. at 2293.

Plaintiff's invocation of *Slaughter* and *Free Enterprise Fund*—cases confirming the President's removal authority—do not advance her

case. *See* Opening Br. 41. In *Free Enterprise Fund*, the Supreme Court made clear that the authority to remove inferior officers is a component of the "President's removal power." 561 U.S. at 495. And in *Slaughter*, the Court confirmed that the President's removal power applies to *all* "[s]ubordinates who exercise the President's power"—"the lowest officers, the middle grade, and the highest." 146 S. Ct. at 2296, 2310 (quotation marks omitted). Neither decision casts doubt on the President's ability to remove an inferior officer where the President lacks the ability to do so through a Department Head.

Lastly, plaintiff argues that there is no need for the President to exercise direct removal authority because the President can supervise the Library through Robert Newlen, the former Principal Deputy Librarian, who plaintiff asserts "serves as the rightful acting Librarian under the Library's own succession rules." Opening Br. 42. But that argument only underscores plaintiff's flawed conception of Article II. Even if Newlen were the Acting Librarian,[6] under plaintiff's theory that the President lacks authority to remove any official not appointed by

---

[6] He is not. As explained, the President properly designated Blanche as Acting Librarian pursuant to the FVRA, and Blanche, in turn, designated Nieves to be Acting Principal Deputy Librarian.

him, the President could not remove Newlen. The President thus would lack the ability to supervise Newlen, let alone plaintiff through Newlen. *See Bowsher*, 478 U.S. at 726 ("Once an officer is appointed, it is only the authority that can remove him, and not the authority that appointed him, that he must fear and, in the performance of his functions, obey." (quotation marks omitted)). Indeed, under plaintiff's view, the Acting Head of an Executive Department would be exercising core executive power outside the President's supervision and control. That view cannot be squared with Article II, which demands a "chain of political accountability" from the President to those exercising executive power on his behalf. *Braidwood*, 606 U.S. at 794. So while Congress "ordinarily" may require the President to exercise the power to remove inferior officers through Department Heads, *Free Enter. Fund*, 561 U.S. at 493, the President must be able to make the removal himself when there is no Department Head or the ability to designate an Acting Department Head.

## II. Plaintiff Suffered No Irreparable Harm.

Plaintiff's request for a preliminary injunction independently fails because she faces no irreparable harm. Plaintiff's only alleged injuries

relate to her removal from her role as Register. JA022-23. But the loss of employment and any accompanying harms ordinarily "will not support a finding of irreparable injury, however severely they may affect a particular individual." *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974). And while plaintiff's removal prevents her from exercising the powers of the Register, a public official's "loss of political power" is not a judicially cognizable harm, much less the type of irreparable harm that can justify issuing an injunction. *Raines v. Byrd*, 521 U.S. 811, 821 (1997). Thus, in *Dellinger v. Bessent*, 2025 WL 887518 (D.C. Cir. Mar. 10, 2025) (per curiam), this Court rejected a removed officer's request for a preliminary injunction reinstating him to his role, explaining that even "[a]ssuming [the plaintiff] is correct that his removal is statutorily ultra vires," a deprivation of the "statutory right to function in office" was not irreparable. *Id.* at *4 (quotation marks omitted). "At worst," the Court explained, the removed officer "would remain out of office for a short period of time" and "would likely be entitled to backpay if he were to prevail on appeal." *Id.* The exact same reasoning applies here.

Plaintiff contends that the Supreme Court's decision in *Trump v. Cook*, 146 S. Ct. 2234 (2026), compels the conclusion that the district

court abused its discretion in denying a preliminary injunction. *See* Opening Br. 15-16. But that misunderstands both *Cook* and the district court's reasoning. *Cook* declined to stay a district court's preliminary injunction of the President's removal of a Governor of the Federal Reserve, both because the Federal Reserve had a constitutional removal restriction, 12 U.S.C. § 242, based on that institution's "unique historical status and role," *Cook*, 146 S. Ct. at 2249, 2254, and because the Governor had not received adequate notice of removal and an opportunity to respond before the removal took effect, *id.* at 2252. In so holding, the Court reiterated that "a court of equity has no jurisdiction over the appointment and removal of public officers," *id.* at 2250 (quoting *In re Sawyer*, 124 U.S. 200, 212 (1888)), but it explained that "a court may order that a removed Governor remain in office during the pendency of litigation if the Governor is otherwise entitled to a preliminary injunction," *id.* The Court nowhere suggested that a preliminary injunction was the normal or automatic remedy when the President removes an officer exercising core executive power.

Plaintiff's reliance on *Cook* is doubly misplaced because the district court did not deny the preliminary injunction based on a

conclusion that "it was powerless to remedy interference with Perlmutter's continued service." Opening Br. 13. Rather, the district court concluded that plaintiff failed to make the necessary showing that she would suffer irreparable harm absent an injunction. *See* JA094 ("The Court will deny her motion because she has not shown that she will be irreparably harmed without this relief."); *see also* JA103 ("[E]ven assuming Perlmutter is right that her removal was unlawful … an injunction is not warranted here." (citing *Wilcox*, 145 S. Ct. at 1416-17)). The district court was correct, and nothing in *Cook* casts doubt on that conclusion.

Plaintiff's remaining irreparable-harm arguments fare no better. Echoing the motions panel, plaintiff argues that she suffered irreparable harm because her removal violated the separation of powers. *See* Opening Br. 19 (citing *Perlmutter*, 2025 WL 2627965, at *7 (Pan, J., concurring)). But that simply restates the merits, and as this Court explained in *Dellinger*, even assuming a "removal is statutorily ultra vires," it is not sufficient to warrant a preliminary injunction. 2025 WL 887518, at *4. Plaintiff also contends that an injunction is warranted because her removal harms the Library and Copyright

Office. Opening Br. 18-19, 22; *Perlmutter*, 2025 WL 2627965, at *7 (Pan, J., concurring) (making similar argument). But as explained, Blanche appointed an Acting Register and Acting Principal Deputy Librarian to carry out the offices' duties. The district court thus correctly determined that plaintiff has made no showing that either the Library or the Copyright Office would suffer harm absent an injunction. *See* JA107-08.

## III. The Equities Decisively Favor The Government.

The balance of equities and public interest weigh against an injunction. Plaintiff seeks to be reinstated as the Register of Copyrights, but the Supreme Court has made clear that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Wilcox*, 145 S. Ct. at 1416-17; *see also Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) (same). Thus, as Judge Walker explained in dissenting from the grant of the injunction pending appeal, the Supreme Court has "[r]ecently, repeatedly, and unequivocally" "stayed lower-court injunctions that barred the President from removing

officers exercising executive power." *Perlmutter*, 2025 WL 2627965, at *11 & nn. 7-9 (Walker, J., dissenting) (first citing *Wilcox*, 145 S. Ct. at 1415; and then citing *Boyle*, 145 S. Ct. at 2654). That is because "it is impossible to unwind the days during which a President is directed to recognize and work with an [executive officer] whom he has already removed," which "impinges on the 'conclusive and preclusive' power through which the President controls the Executive Branch that he is responsible for supervising." *Dellinger*, 2025 WL 887518, at *3 (alterations and quotation marks omitted). As the district court correctly concluded, JA102, the same considerations counsel against granting preliminary relief here.

Plaintiff implausibly asserts that *Wilcox*'s reasoning does not apply here because that case "turned on the government being likely to prevail" on the merits. Opening Br. 21. The assertion cannot be squared with the Supreme Court's explanation that a stay was warranted both because the government was likely to prevail on the merits and because the equities favored interim equitable relief. *See Wilcox*, 145 S. Ct. at 1416-17 ("The stay also reflects our judgment that the Government faces greater risk of harm from an order allowing a

removed officer to continue exercising the executive power than a *wrongfully removed officer* faces from being unable to perform her statutory duty." (emphasis added)). As Judge Walker explained, *Wilcox* controls "even if 'Perlmutter alleges that the President of the United States unlawfully removed her in a manner that violates the separation of powers'" because "Gwynne Wilcox alleged the same thing … [a]nd so did Mary Boyle." *Perlmutter*, 2025 WL 2627965, at *11-12 (Walker, J., dissenting) (footnotes omitted).

Echoing the panel majority, plaintiff also seeks to distinguish *Wilcox* on the ground that "Congress deliberately situated the Library of Congress and the Copyright Office within the legislative branch." Opening Br. 17; *see Perlmutter*, 2025 WL 2627965, at *7 (Pan, J., concurring). But as explained at length above, the Register is an executive officer exercising quintessential executive power, as this Court has already determined. *See Intercollegiate Broad. Sys.*, 684 F.3d at 1342; *Medical Imaging*, 103 F.4th at 833. Indeed, plaintiff does not dispute that both the Librarian and Register are parts of the Executive Branch for constitutional purposes. Moreover, even if the panel majority were correct that the Register exercises only *some* executive

power, that still would counsel against the issuance of a preliminary injunction. Article II vests the entire executive power—not just "considerable or substantial" parts of it, *Perlmutter*, 2025 WL 2627965, at *9 (Pan, J., concurring)—in the President alone. *See Seila Law*, 591 U.S. at 213. And "[c]ourts are not well-suited to weigh the relative importance of the regulatory and enforcement authority of disparate agencies." *Collins v. Yellen*, 594 U.S. 220, 253 (2021).

Finally, plaintiff insists that *Wilcox* must be distinguishable because the Supreme Court declined to stay the motions panel's injunction pending appeal. Opening Br. 20. But in so doing, the Supreme Court expressly stated that it was not "ruling on the merits of the legal issues presented in the litigation." *Blanche v. Perlmutter*, 2026 WL 1871314, at *1 (U.S. June 30, 2026). Plaintiff tellingly omits this aspect of the Supreme Court's order. Her attempts to transform that clear reservation into a tacit endorsement of the panel majority's flawed injunction should be rejected.

## CONCLUSION

For the foregoing reasons, the Court should vacate the injunction pending appeal and affirm the district court's denial of a preliminary injunction.

Respectfully submitted,


BRETT A. SHUMATE
*Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
DANIEL AGUILAR
ASHLEY C. HONOLD
*/s/ David L. Peters*
DAVID L. PETERS
*Attorney, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 598-6735*
*david.l.peters@usdoj.gov*


September 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,043 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ David L. Peters*
David L. Peters

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

*/s/ David L. Peters*
David L. Peters

# ADDENDUM

## TABLE OF CONTENTS

2 U.S.C. § 136-1(a) ........................................ A1

5 U.S.C. § 104 ........................................ A1

5 U.S.C. § 105 ........................................ A1

5 U.S.C. § 3345(a) ........................................ A2

17 U.S.C. § 701 ........................................ A3

**2 U.S.C. § 136-1**

**§ 136-1. Appointment and term of service of Librarian of Congress**

(a) In general. The President shall appoint the Librarian of Congress, by and with the advice and consent of the Senate.

(b) Term of service. The Librarian of Congress shall be appointed for a term of 10 years.

(c) Reappointment. An individual appointed to the position of Librarian of Congress, by and with the advice and consent of the Senate, may be reappointed to that position in accordance with subsections (a) and (b).

....

**5 U.S.C. § 104**

**§ 104. Independent establishment**

For the purpose of this title, "independent establishment" means—

(1) an establishment in the executive branch (other than the United States Postal Service or the Postal Regulatory Commission) which is not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment; and

(2) the Government Accountability Office.

**5 U.S.C. § 105**

**§ 105. Executive agency**

For the purpose of this title, "Executive agency" means an Executive department, a Government corporation, and an independent establishment.

**5 U.S.C. § 3345**

**§ 105. Acting officer**

(a) If an officer of an Executive agency (including the Executive Office of the President, and other than the Government Accountability Office) whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office—

(1) the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346;

(2) notwithstanding paragraph (1), the President (and only the President) may direct a person who serves in an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate, to perform the functions and duties of the vacant office temporarily in an acting capacity subject to the time limitations of section 3346; or

(3) notwithstanding paragraph (1), the President (and only the President) may direct an officer or employee of such Executive agency to perform the functions and duties of the vacant office temporarily in an acting capacity, subject to the time limitations of section 3346, if—

(A) during the 365-day period preceding the date of death, resignation, or beginning of inability to serve of the applicable officer, the officer or employee served in a position in such agency for not less than 90 days; and

(B) the rate of pay for the position described under subparagraph (A) is equal to or greater than the minimum rate of pay payable for a position at GS–15 of the General Schedule.

....

**17 U.S.C. § 701**

**§ 105. The Copyright Office: General responsibilities and organization**

(a) All administrative functions and duties under this title, except as otherwise specified, are the responsibility of the Register of Copyrights as director of the Copyright Office of the Library of Congress. The Register of Copyrights, together with the subordinate officers and employees of the Copyright Office, shall be appointed by the Librarian of Congress, and shall act under the Librarian's general direction and supervision.

(b) In addition to the functions and duties set out elsewhere in this chapter, the Register of Copyrights shall perform the following functions:

(1) Advise Congress on national and international issues relating to copyright, other matters arising under this title, and related matters.

(2) Provide information and assistance to Federal departments and agencies and the Judiciary on national and international issues relating to copyright, other matters arising under this title, and related matters.

(3) Participate in meetings of international intergovernmental organizations and meetings with foreign government officials relating to copyright, other matters arising under this title, and related matters, including as a member of United States delegations as authorized by the appropriate Executive branch authority.

(4) Conduct studies and programs regarding copyright, other matters arising under this title, and related matters, the administration of the Copyright Office, or any function vested in the Copyright Office by law, including educational programs conducted cooperatively with foreign intellectual property offices and international intergovernmental organizations.

(5) Perform such other functions as Congress may direct, or as may be appropriate in furtherance of the functions and duties specifically set forth in this title.

….