[NOT YET SCHEDULED FOR ARGUMENT]
**25-5285**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

SHIRA PERLMUTTER, Register of Copyrights and
Director of the U.S. Copyright Office,
Plaintiff-Appellant,

*v.*

TODD BLANCHE, in his capacity as the person claiming to have been
acting Librarian of Congress, et al.,
Defendants-Appellees.

---

On Appeal from the United States District Court
for the District of Columbia
No. 25-cv-1659
Hon. Timothy J. Kelly, U.S. District Judge

---

**REPLY BRIEF FOR PLAINTIFF-APPELLANT**

---

Allyson R. Scher
Brian D. Netter
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
ascher@democracyforward.org
bnetter@democracyforward.org

*Counsel for Plaintiff-Appellant*

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT .......................... 1

ARGUMENT ........................................................................................ 2

I. Perlmutter Is Likely to Prevail on the Merits ............................... 2

A. The President lacked statutory authority to appoint Blanche ........................................................................... 2

B. The President does not have inherent Article II authority to remove Perlmutter directly ............................... 9

II. The Equitable Factors Favor Perlmutter .....................................16

A. Perlmutter suffers irreparable harm in the absence of an injunction ..........................................................................17

B. The balance of the equities and public interest weigh in favor of preliminary relief for a wrongfully dismissed federal officer ........................................................................20

CONCLUSION......................................................................................23

CERTIFICATE OF COMPLIANCE ......................................................25

CERTIFICATE OF SERVICE ...............................................................26

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aviel v. Gor*, No. 25-5105,
2025 WL 1600446 (D.C. Cir. June 5, 2025) ........................ 10, 13, 14

*Blanche v. Perlmutter*,
146 S. Ct. 844 (2025) ........................................................................ 22

*Blanche v. Perlmutter*,
No. 25A478, 2026 WL 1871314 (U.S. June 30, 2026) ..................... 22

*Comans v. Exec. Off. of the President*,
840 F. Supp. 3d 1036 (E.D. Va. 2026) ............................................ 13

*Comey v. U.S. Dep't of Just.*,
— F. Supp. 3d —, 2026 WL 3203254 (S.D.N.Y. Oct. 26, 2026) ..... 13

*Davis v. Billington*,
681 F.3d 377 (D.C. Cir. 2012) ..................................................... 2, 3

*Dellinger v. Bessent*,
No. 25-5052, 2025 WL 887518 (D.C. Cir. Mar. 10, 2025) .............. 21

*Ethnic Emps. of the Libr. of Cong. v. Boorstin*,
751 F.2d 1405 (D.C. Cir. 1985) ........................................................ 4

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010) .................................................... 9, 12, 13, 14

*Haddon v. Walters*,
43 F.3d 1488 (D.C. Cir. 1995) (per curiam) .................................... 6

*In re Hennen*,
38 U.S. 230 (1839) ..................................................................... 13, 14

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*,
684 F.3d 1332 (D.C. Cir. 2012) ........................................................ 4

*League of Women Voters of U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ....................23

*Lebron v. Nat'l R.R. Passenger Corp.*,
513 U.S. 374 (1995) .................... 8

*Luna Perez v. Sturgis Pub. Schs.*,
598 U.S. 142 (2023) .................... 6

*Mistretta v. United States*,
488 U.S. 361 (1989) .................... 8

*Myers v. United States*,
272 U.S. 52 (1926) ....................11, 14

*Nat'l Treasury Emps. Union v. Reagan*,
663 F.2d 239 (D.C. Cir. 1981) ....................13, 14, 15

*Perlmutter v. Blanche*, No. 25-5285,
2025 WL 2627965 (D.C. Cir. Sept. 10, 2025) ....................13, 18, 21, 23

*Perrin v. United States*,
444 U.S. 37 (1979) .................... 4

*Raines v. Byrd*,
521 U.S. 811 (1997) ....................19

*Ratzlaf v. United States*,
510 U.S. 135 (1994) .................... 3

*Sampson v. Murray*,
415 U.S. 61 (1974) ....................19

*Swan v. Clinton*,
100 F.3d 973 (D.C. Cir. 1996) ....................16

*Trump v. Boyle*,
145 S. Ct. 2653 (2025) ....................21, 22

*Trump v. Cook*,
146 S. Ct. 2234 (2026) ........................................................ 1, 18, 20

*Trump v. Slaughter*,
146 S. Ct. 2283 (2026) ........................................................ 12, 16

*Trump v. Wilcox*,
145 S. Ct. 1415 (2025) ........................................................ 17

*Wis. Cent. Ltd. v. United States*,
585 U.S. 274 (2018) ........................................................ 4

**STATUTES**

2 U.S.C. § 136 ........................................................ 10, 16

2 U.S.C. § 166 ........................................................ 8

2 U.S.C. § 181 ........................................................ 8

5 U.S.C. § 104 ........................................................ 4, 7

5 U.S.C. § 105 ........................................................ 3, 7

5 U.S.C. § 306 ........................................................ 5

5 U.S.C. § 3304 ........................................................ 5

5 U.S.C. § 3345 ........................................................ 2, 8

5 U.S.C. § 3701 ........................................................ 5

5 U.S.C. § 4301 ........................................................ 3, 5

5 U.S.C. § 13101 ........................................................ 7

17 U.S.C. § 701 ........................................................ 10, 15, 21

31 U.S.C. § 703 ........................................................ 8

Act to Enact Title 5, Pub. L. No. 89-554, 80 Stat. 378 (1966) ................. 5

Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 .......... 5

**OTHER AUTHORITIES**

*Application of the Privacy Act to the Personnel Records of Employees in the Copyright Office*, 4B Op. O.L.C. 608 (1980) .......... 9

Brief for Appellees, *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332 (D.C. Cir. 2012) (No. 11-1083), 2011 WL 5288867 .......... 9

4 *The Papers of Thomas Jefferson* (Julian P. Boyd ed., 1951) .......... 12

## GLOSSARY

| | |
|---|---|
| EIGA | Ethics in Government Act |
| FVRA | Federal Vacancies Reform Act |
| GAO | Government Accountability Office |
| PCAOB | Public Company Accounting Oversight Board |

## INTRODUCTION AND SUMMARY OF ARGUMENT

After the Supreme Court's refusal to lift this Court's injunction, Defendants have abandoned much of their case. They now concede that no statute let the President remove the Register of Copyrights, abandon their claim that the President has inherent power to unilaterally install an acting Librarian, and acknowledge that *Trump v. Cook*, 146 S. Ct. 2234 (2026), permits a court to keep an unlawfully removed official in office while litigation proceeds. DOJ Br. 35 n.5, 36, 46.

Although the district court's conclusion was based entirely on its belief that it was powerless to provide relief "even assuming Perlmutter is right that her removal was unlawful," JA103, Defendants relegate their discussion of equitable considerations to the end of their brief—with good reason, given that *Cook* forecloses the district court's approach. Instead, Defendants pivot to the argument that Congress designated the Library of Congress as an "Executive agency" for which the President may appoint an acting agency head. But Defendants offer only frivolous responses to binding precedents of this Court, which squarely foreclose Defendants' preferred interpretation. And Defendants' Article II fallback fares no better; this Court should join the other courts that have rejected it.

Nothing in Defendants' brief gives this Court reason to depart from the motions panel's conclusion, which the Supreme Court left undisturbed. The district court's denial of a preliminary injunction should be reversed.

## ARGUMENT

### I. Perlmutter Is Likely to Prevail on the Merits

Perlmutter is likely to succeed on the merits. Discarding the issues now abandoned by Defendants, two questions remain: whether the FVRA authorized Blanche's designation, and whether Article II lets the President bypass the statute and remove Perlmutter himself. The answer to both is no.

#### A. The President lacked statutory authority to appoint Blanche

Congress did not authorize the President to designate an acting Librarian of Congress. The FVRA reaches only an "Executive agency." 5 U.S.C. § 3345(a). Congress did not provide an FVRA-specific definition of "Executive agency," but it did define the term for purposes of all of Title 5. And this Court has held—for that definitional provision covering all of Title 5, including the FVRA—that "[t]he Library of Congress is not in the executive branch." *Davis v. Billington*, 681 F.3d

377, 384 (D.C. Cir. 2012); *see also id.* at 392 (Rogers, J., dissenting) (calling it an "obvious fact" that Davis, a Library employee, was "not an Executive Branch employee").

Defendants' only response to *Davis* (at 29–30) is that it was not an FVRA case. But why does that matter? Congress's "single formulation" must be construed "the same way each time it is called into play." *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994). In *Davis*, this Court was called to decide whether the Library of Congress is an "Executive agency" within the meaning of 5 U.S.C. § 4301(1)(A)—a statute that incorporates the same Title 5 definition (5 U.S.C. § 105) that governs here. The *Davis* court held that "the narrowing term 'Executive agency' . . . plainly does not contain the Library of Congress within the meaning of the statute." 681 F.3d at 386. It follows inexorably that the FVRA does not reach the Library of Congress.

Eager to avoid *Davis*, Defendants try to develop an argument based on first principles—first principles taken at an alpine level of abstraction. They say (at 15) that "[b]ecause the term 'executive branch' is not defined, it carries its ordinary meaning as the branch that executes the law." They then invoke this Court's 2012 conclusion that

the Librarian is a "Head of Department" for purposes of the Appointments Clause. *See Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1341–42 (D.C. Cir. 2012). But it is not possible that, when Congress enacted § 104 in 1966, it was anticipating a decision of this Court that would not be issued for another 46 years.[1]

In any event, Title 5's definitional provisions must apply consistently to all of Title 5, and Defendants' definition would introduce a long list of inconsistencies. Br. 30–33. Defendants brush off the inconsistencies, positing that Congress listed the Library in more than a dozen Title 5 definitions of "agency" to account for decisions holding that the Library is not an "agency" under the APA. DOJ Br. 31–32 (citing *Ethnic Emps. of the Libr. of Cong. v. Boorstin*, 751 F.2d 1405, 1416 n.15 (D.C. Cir. 1985)).

Defendants represent that Congress thought that, because the Library of Congress is not an "agency" for some purposes outside of § 105, it was important to list the agency redundantly when § 105's

---

[1] Defendants say 5 U.S.C. § 104(1) carries its "ordinary meaning," DOJ Br. 15, 22, 27, 30, which is fixed "at the time Congress enacted the statute," *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 277 (2018) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). Attributing a future judicial holding to the earlier establishment of a definition is the opposite of a fixed meaning.

definition was being used. But this argument makes no sense. First, the premise of this argument is unbelievable: that Congress was concerned that the Library might not be understood as an "agency," but that there was *no* redundancy needing clarification when Congress referred to an "Executive agency." Second, Defendants' position is that a decision by this Court *in 1985* prompted Congress to introduce these redundancies *in 1966*. *See* Act to Enact Title 5, Pub. L. No. 89-554, §§ 3102(a)(1), 4101(1), 4501(1), 5102(a)(1), 5521(1), 5541(1), 5721(1), 5921(2), 80 Stat. 378, 414, 432, 442, 444, 479, 485, 500, 510. Third, Defendants' position does not explain why, if it was so important to mention the Library redundantly so many times, many provisions in Title 5 define "agency" but do *not* list the Library, *see, e.g.*, 5 U.S.C. §§ 306(f), 3304, 3701, and in at least one provision Congress listed the Library and then removed it, *compare* 80 Stat. at 440 (codifying 5 U.S.C. § 4301), *with* Civil Service Reform Act of 1978, Pub. L. No. 95-454, § 203(a), 92 Stat. 1111, 1131–32 (revising § 4301). That removal would have been pointless if "Executive agency" already included the Library. Fourth, Defendants cite nothing in the text or legislative history to support their theory, and courts "cannot replace the actual [statutory] text with speculation

as to Congress'[s] intent." *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 150 (2023). And fifth, Defendants' approach runs headlong into this Court's decision in *Haddon v. Walters*, 43 F.3d 1488 (D.C. Cir. 1995) (per curiam), which held, *contra* DOJ Br. 29–33, that the right way to decide whether a government component is an "Executive agency" for purposes of § 105 is to see if Congress used the term "Executive agency" "in distinction to" the component at issue. "That Congress distinguished the Executive Residence from the independent establishments, whatever they may be," this Court explained, showed that "Congress does not regard the Executive Residence to be an independent establishment, as it uses that term." *Haddon*, 43 F.3d at 1490. (This holding also forecloses Defendants' theory that any part of the executive branch for certain constitutional purposes is necessarily an "Executive agency" for purposes of Title 5.)

Nor can Defendants reconcile their reading with the Ethics in Government Act (EIGA). If § 105 included the Library, the EIGA would place the Library in both the "executive branch" and the "legislative branch" and subject its employees to conflicting ethics rules. Br. 30–31. Defendants invoke the canon that the specific governs the general, DOJ

Br. 32, but the two definitions sit side by side in the same section; neither is more specific than the other. 5 U.S.C. § 13101(4), (11). And Defendants' own example proves the point. They observe that the EIGA places GAO in the legislative branch even though GAO is an "independent establishment." DOJ Br. 34. But Congress did that by express text: the EIGA's "executive branch" includes "each Executive agency (as defined in section 105 of this title), *other than the Government Accountability Office*." 5 U.S.C. § 13101(4) (emphasis added). Congress needed that carve-out because GAO is an "Executive agency" by statute, *id.* §§ 104(2), 105, and the EIGA places GAO in the legislative branch, *id.* § 13101(11)(D). Congress made no such carve-out for the Library, which the EIGA likewise places in the legislative branch, *id.* § 13101(11)(F). The only plausible explanation is that none was needed, because the Library is not an "Executive agency" under § 105. More broadly, the EIGA confirms that an entity's constitutional status does not determine where Congress places it by statute.

Finally, Defendants contend that the FVRA should "track constitutional lines" because it governs offices filled by presidential appointment with Senate confirmation. DOJ Br. 28. But the FVRA does

not track the Appointments Clause: it expressly excludes GAO, whose head is appointed by the President with the Senate's advice and consent. 5 U.S.C. § 3345(a); 31 U.S.C. § 703(a)(1). That the President appoints the Librarian, DOJ Br. 23–24, is thus beside the point.

As Defendants acknowledge, Congress "can divide up the Government any way it wishes . . . for nonconstitutional purposes." DOJ Br. 34 (quoting *Mistretta v. United States*, 488 U.S. 361, 422–23 (1989) (Scalia, J., dissenting)); *see Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 392 (1995). Congress has done just that here, repeatedly placing the Library among the "offices and agencies of the legislative branch." *E.g.*, 2 U.S.C. § 181(b)(1). Nothing suggests that Congress silently tied a defined Title 5 term to an evolving constitutional inquiry, much less one that would sweep in an institution that also serves Congress directly, *see* 2 U.S.C. § 166(d). For the same reason, Defendants' refrain that Perlmutter "no longer disputes" the Library's constitutional status, DOJ Br. 27–28, and their suggestion that her own appointment would be invalid if the Library were legislative for Appointments Clause purposes, DOJ Br. 28 n.4, conflate two distinct questions. Whether the Librarian is the "Hea[d]" of a "Departmen[t]"

under the Appointments Clause is a constitutional question. Whether the Library is an "Executive agency" is a statutory one, and Congress has answered it.[2]

### B. The President does not have inherent Article II authority to remove Perlmutter directly

In the alternative, Defendants contend (at 35–44) that, if the President cannot appoint an acting Librarian under the FVRA, he is entitled to remove the Register himself, as an unwritten power implied by Article II. Their own brief defeats that theory. Defendants begin with the claim that Article II vests in the President the power to remove every inferior officer. DOJ Br. 35–37. Yet they concede that Congress "'ordinarily' may require the President to exercise the power to remove inferior officers through Department Heads." DOJ Br. 44 (quoting *Free*

---

[2] Indeed, even the Department of Justice acknowledged, in the briefing in *Intercollegiate*, that "the Library is regarded as a legislative entity for various statutory purposes" precisely because "Congress's definition of 'executive departments' in 5 U.S.C. § 101" is not coextensive with the scope of Article II. Brief for Appellees, *Intercollegiate Broad. Sys.*, 684 F.3d 1332 (D.C. Cir. 2012) (No. 11-1083), 2011 WL 5288867, at *12, *41. And its Office of Legal Counsel, construing the same phrase at issue here, "establishment in the executive branch," concluded that the Library is "in the legislative and not in the executive *branch." Application of the Privacy Act to the Personnel Records of Employees in the Copyright Office*, 4B Op. O.L.C. 608, 609–11 (1980).

*Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 493 (2010)). Both cannot be true. If Congress decides who removes an inferior officer—as *Hennen*, *Free Enterprise Fund*, and Defendants' concession all confirm—then the President has only the removal power Congress has allocated, and Congress has allocated power as to the Register to the Librarian. 17 U.S.C. § 701(a).

Defendants seek to escape that conclusion by inventing an exception for when "there is no Department Head and the President lacks the power to designate an Acting Department Head," DOJ Br. 37; *id.* at 17. The only support they cite is a single dissent. *See Aviel v. Gor*, No. 25-5105, 2025 WL 1600446, at *5 (D.C. Cir. June 5, 2025) (Rao, J., dissenting). Nor does the purported exception fit these facts. When the President purported to fire the Register on May 10, D. Ct. Dkt. 52-1 at 1–2; DOJ Br. 9, he did not act for want of a department head; he bypassed the one he says he installed. And if that designation was invalid, Robert Newlen was acting Librarian under regulations Congress authorized. *See* 2 U.S.C. § 136.

Defendants' unprecedented theory misreads its principal source. *Myers* held that the President has unrestricted power to remove a

postmaster whom the President himself had appointed with the Senate's advice and consent; it says nothing about who may remove an inferior officer appointed by a department head. *Myers v. United States*, 272 U.S. 52, 176 (1926). Defendants nonetheless twice quote *Myers* for the proposition that the "power to remove inferior executive officers . . . is in its nature an executive power." DOJ Br. 36 (quoting *Myers*, 272 U.S. at 161); *see* DOJ Br. 37. Their ellipsis omits the key words: the removal power "*is an incident of the power to appoint them*, and is in its nature an executive power." *Myers*, 272 U.S. at 161 (emphasis added). The next sentence says who holds that incidental power: "The authority of Congress given by the excepting clause to vest the appointment of such inferior officers in the heads of departments carries with it authority incidentally to invest the heads of departments with power to remove." *Id.* Defendants quote that sentence too, DOJ Br. 36, but never reconcile it with their contradictory theory.

Defendants also conflate two distinct lines of authority: cases like *Hennen* and *Free Enterprise Fund*, which turned on who holds the power to remove an inferior officer, with cases like *Myers*, *Morrison*, and *Seila Law*, which decided whether Congress may shield an inferior or

principal officer from removal once that power is properly allocated. DOJ Br. 35–37, 39, 42–43. Those are different questions, and Defendants' authorities answer only the second—one this case does not present.

It is indisputable that the removal power stems from the appointment power under Supreme Court and this Court's precedent. *Slaughter* grounded the President's own removal authority in that principle: "[h]e who appoints may remove." *Trump v. Slaughter*, 146 S. Ct. 2283, 2295 (2026) (quoting 4 Papers of Thomas Jefferson 281 (1951)). And Defendants agree that "as a statutory matter, courts presume that 'removal is incident to the power of appointment,'" DOJ Br. 36 (quoting *Free Enter. Fund*, 561 U.S. at 509), and that "the President ordinarily exercises the power to remove that inferior officer through the Department Head rather than on his own," *id.* (citing *Free Enter. Fund*, 561 U.S. at 493).

Yet Defendants insist *Slaughter* and *Free Enterprise Fund* "do not advance [Perlmutter's] case," DOJ Br. 42–43, without addressing Perlmutter's arguments for why they foreclose Defendants' position. Br. 41–42. *Slaughter* ties the President's removal power to his appointment

power, and leaves undisturbed the rule that the President may not directly remove an inferior officer whose appointment Congress vested in a department head. *See Comey v. U.S. Dep't of Just.*, — F. Supp. 3d —, 2026 WL 3203254, at *17 (S.D.N.Y. Oct. 26, 2026) (*Slaughter* "had nothing to say about inferior officers" (citation omitted)); *Comans v. Exec. Off. of the President*, 840 F. Supp. 3d 1036, 1039 (E.D. Va. 2026) (same). And *Free Enterprise Fund*'s remedy left the PCAOB members "removable by the Commission at will," not by the President. 561 U.S. at 509. At the stay stage, this Court applied the same principle in this case, *Perlmutter v. Blanche*, No. 25-5285, 2025 WL 2627965, at *5 (D.C. Cir. Sept. 10, 2025) (Pan, J., concurring, joined by Childs, J.), and in *Aviel*, 2025 WL 1600446, at *1 (Katsas, J., concurring, joined by Pillard, J.). And in *Nat'l Treasury Emps. Union v. Reagan*—a case that Defendants do not acknowledge—this Court explained: "[t]he only one authorized to revoke an appointment is one authorized to make it." 663 F.2d 239, 247 (D.C. Cir. 1981). "Thus, for example, an appointment authorized to be made by the Secretary of Defense and, in fact, made by the Secretary of Defense, cannot be revoked by the President." *Id.* (citing *In re Hennen*, 38 U.S. 230, 259 (1839)).

Rather than confront the modern precedent applying the same rule, Defendants dismiss as "obiter dicta" *Hennen*'s statement that "the President has certainly no power to remove" an inferior officer whose appointment Congress vested in a department head, relying on a lone court-of-appeals dissent. DOJ Br. 42 (citing *Aviel*, 2025 WL 1600446, at *4 n.2 (Rao, J., dissenting)); *see Hennen*, 38 U.S. at 260. But this Court has applied that rule as circuit precedent: "the power to remove is held by the appointing authority, and only by the appointing authority." *Nat'l Treasury Emps. Union*, 663 F.2d at 247 (citing *Hennen*, 38 U.S. at 258–59). And the Supreme Court itself has cited *Hennen* for the proposition that, when Congress vests appointment power in a department head, "it is ordinarily the department head, rather than the President, who enjoys the power of removal." *Free Enter. Fun*d, 561 U.S. at 493 (citing M*yers*, 272 U.S. at 119, 127; *Hennen*, 38 U.S. at 259–60).[3]

Defendants spend much of the remainder of their brief answering points that Perlmutter did not make. They insist that their theory is that the President "may directly remove the Register, not that he may

[3] Nor does recasting *Hennen* as a case about a judge's clerk help them. DOJ Br. 41–42. The "certainly no power to remove" line referred to clerks appointed by the Secretaries of State, War, and Treasury. Br. 40–41; *see Hennen*, 38 U.S. at 259–61.

appoint a new Librarian for the purpose of removing the Register." DOJ Br. 40. But Perlmutter's argument does not turn on that distinction. She argued that a presidential power to remove inferior officers directly where Congress vested the appointment power in the department head would have consequences that are irreconcilable with the Appointments Clause. Br. 40. First, the President could nullify Congress's decision to vest appointment in a department head by firing every inferior officer the department head appoints. Second, he could create the vacancy that supposedly triggers that removal power simply by firing the department head (as he did here). Defendants respond only to the first, arguing that the President can get the same result by directing the Librarian to act and firing a Librarian who refuses. DOJ Br. 40–41. That is the point: the President may act through the Librarian, not in the Librarian's place. *Nat'l Treasury Emps. Union*, 663 F.2d at 247–48.

Defendants' warning that, absent direct removal, the Register would operate "outside the control and supervision of the President," DOJ Br. 38, ignores the structure Congress established: the Register acts under the supervision of the Librarian. 17 U.S.C. § 701(a). Nor has the Library been without a head. Robert Newlen has served as acting

Librarian under regulations Congress authorized since Dr. Hayden's removal. See 2 U.S.C. § 136; D. Ct. Dkt. 49-2 ¶ 3; D. Ct. Dkt. 51-1 ¶ 11. Defendants say Newlen "is not" acting Librarian because Blanche was validly designated, DOJ Br. 43 n.6, but their Article II argument arises only if that designation was invalid.

Defendants respond that requiring a nomination would give the Senate "an effective veto" over the Register's removal. DOJ Br. 39. *Swan v. Clinton*, on which they rely, involved a different issue. There, this Court observed that extending removal protections to "holdover members" of an independent board would let the Senate "keep holdover members in office by not acting on the President's nominations for successors." 100 F.3d 973, 986 (D.C. Cir. 1996). The Register is not a protected holdover. She is removable at will by the Librarian. And Senate confirmation of a principal officer is exactly what the Appointments Clause requires; as *Slaughter* recognized, "it is up to the Senate to decide whether to confirm those with whom the President would *prefer* to work." 146 S. Ct. at 2310.

## II. The Equitable Factors Favor Perlmutter

Especially in light of the Supreme Court's action on this very injunction, Defendants face a steep challenge to demonstrate that the

equitable factors preclude the provision of interim relief to Perlmutter. Indeed, the equitable factors strongly favor the maintenance of the injunction: Perlmutter has amply demonstrated that she would suffer irreparable harm in the absence of an injunction, and the balance of equities and public interest follow the merits and thus strongly favor preventing a wrongful effort to remove a federal official.

The equities point the same way. *Wilcox* rested on the government's likely success on the merits and on the harm of forcing the President to work with a removed principal officer of an executive branch agency. *Trump v. Wilcox*, 145 S. Ct. 1415 (2025). Neither is present here. And Defendants identify no harm from an injunction that has now been in place for more than a year.

### A. Perlmutter suffers irreparable harm in the absence of an injunction

Perlmutter has shown irreparable harm. On May 10, 2025, the day after she released a report advising Congress on copyright and generative AI, the President purported to remove her from an office he had no authority to fill or vacate. JA019. As the motions panel recognized, "no amount of back pay will compensate her or Congress for her interim inability to support Congress's consideration of copyright

law and policy during a critical time." *Perlmutter*, 2025 WL 2627965, at *8 (Pan, J., concurring, joined by Childs, J.). The district court never weighed that harm against the merits. It held relief unwarranted "even assuming Perlmutter is right that her removal was unlawful." JA103. Defendants cannot defend the district court's approach without rewriting *Cook*. They recast its remedial holding as limited to the Federal Reserve, DOJ Br. 46, and otherwise resort to repeating arguments that *Cook* just rejected. DOJ Br. 45; *but see* Br. 15–17.

Defendants' central failure is that they never confront what *Cook* held. The Supreme Court made clear that a court may keep a removed official in office pending litigation "if [she] is otherwise entitled to a preliminary injunction," and equity protects her "at least to the extent that [she has] a likely meritorious claim." 146 S. Ct. at 2250. The merits are thus central to interim relief. The district court treated them as irrelevant, denying relief "even assuming Perlmutter is right that her removal was unlawful." JA103.

Defendants observe that *Cook* turned on the Federal Reserve's "unique historical status and role." DOJ Br. 46 (quoting 146 S. Ct. at 2249). That is true as to the merits but irrelevant as to the general

question of whether injunctive relief is available to prevent the wrongful removal of a federal officer. The fact that the Supreme Court granted precisely that relief in *Cook* (and then declined to interfere with the injunction in this case) is proof that Defendants' theory cannot be correct.

Indeed, Defendants resort to repeating arguments that *Cook* just rejected, including the claim that backpay obviates the need for injunctive relief (DOJ Br. 45; *but see* Br. 15–16); and that *Sampson v. Murray*, 415 U.S. 61 (1974), establishes a heightened standard for government personnel cases. *But see* Br. 17.

Defendants also, for the first time, turn to *Raines v. Byrd*, 521 U.S. 811 (1997), which they cite for the proposition that "a public official's 'loss of political power' is not a judicially cognizable harm." DOJ Br. 45. But *Raines* denied legislators standing to challenge a statute that diminished the power of each member equally—and it distinguished claimants, like Perlmutter, who were "deprived of something to which they *personally* are entitled—such as their seats." 521 U.S. at 821. And if *Raines* barred relief here, interim relief would

not have been possible in *Cook*, *Aviel*, and the motions panel's decision in this case.

Finally, Defendants' only response to the harm to the Library and the Copyright Office is that others are "carry[ing] out the offices' duties." DOJ Br. 48. That is not true, even by Defendants' own account: Blanche's acting service "expired on December 4, 2025," DOJ Br. 9, and the purported acting Register, who never assumed any role in the Copyright Office, is no longer employed by the government, DOJ Br. 10 n.1. The only person who has been discharging the Register's statutory duties is Perlmutter. *See* Br. 18–19.

**B. The balance of the equities and public interest weigh in favor of preliminary relief for a wrongfully dismissed federal officer**

The equities follow the merits here. Defendants' contrary argument rests on *Wilcox*, which assumed that the government would likely prevail and concerned officials the President supervises directly. Neither premise holds in this case. First, Defendants are unlikely to prevail. *Supra* Part I. And when the government cannot make that showing, *Cook* confirms, the officer is entitled to interim relief. 146 S. Ct. at 2246; Br. 20–21. Defendants offer no way to reconcile their position with *Cook*, because there is none. Second, the officer here is

directly supervised by the Librarian, not the President. Br. 25; 17 U.S.C. § 701(a). As the motions panel recognized, the injunction "would not require the President to work with a removed principal officer at an Executive Branch agency." *Perlmutter*, 2025 WL 2627965, at *8 (Pan, J., concurring, joined by Childs, J.); Br. 21. That also answers Defendants' concern, borrowed from *Dellinger*, that "it is impossible to unwind the days during which a President is directed to recognize and work with an [executive officer] whom he has already removed." DOJ Br. 49 (quoting *Dellinger v. Bessent*, No. 25-5052, 2025 WL 887518, at *3 (D.C. Cir. Mar. 10, 2025)).

For the same reasons, Judge Walker's dissent does not help Defendants. DOJ Br. 48–49 (citing *Perlmutter*, 2025 WL 2627965, at *10–12 (Walker, J., dissenting)). It relied on *Wilcox* and on *Boyle*, the latter of which the Supreme Court said was "squarely controlled by" *Wilcox* and which rests on the same premises. *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025).

Nor do Defendants identify any harm to the President in the thirteen months that the injunction pending appeal has been in place. *See* Br. 21. The President has not nominated a Librarian in the

seventeen months since he fired Dr. Hayden—and, by Defendants' own account, he has let even Blanche's acting service lapse for nearly a year. DOJ Br. 9. Any injury to the President is thus entirely self-inflicted.

The Supreme Court's handling of this case confirms that the equities favor Perlmutter. The Court deferred Defendants' stay application until it decided *Slaughter* and *Cook*. *Blanche v. Perlmutter*, 146 S. Ct. 844 (2025). It then denied the application, after ruling for the government in *Slaughter*, with no noted dissent. Br. 20. Defendants point out that the Court's order was not a ruling "on the merits of the legal issues presented in the litigation." DOJ Br. 51 (quoting *Blanche v. Perlmutter*, No. 25A478, 2026 WL 1871314, at *1 (U.S. June 30, 2026)). The same is true of the stay orders in *Wilcox* and *Boyle* upon which Defendants rely. Yet as the Court explained in *Boyle*, its interim orders, while "not conclusive as to the merits," still "inform how a court should exercise its equitable discretion in like cases." *Boyle*, 145 S. Ct. at 2654. The Court's order in this precise case therefore indicates that the status quo should not be disturbed and weighs heavily in Perlmutter's favor.

Finally, Defendants make no attempt to weigh the harms to Perlmutter or the public interest. Without an injunction, Perlmutter

loses her ability to do the work Congress assigned her, including advising it on copyright policy as it relates to generative AI, at the moment that work is particularly timely. "[N]o amount of back pay will compensate her or Congress" for that loss. *Perlmutter*, 2025 WL 2627965, at *8 (Pan, J., concurring, joined by Childs, J.); Br. 21–22. The public interest cuts the same way. It favors requiring the executive to "abide by the federal laws that govern their existence and operations." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (citation omitted). Congress withheld from the President the authority to remove the Register or to install an acting Librarian, and the President acted anyway, against an officer whose primary job is to advise Congress. If this is not a situation in which the equities favor interim relief, it is hard to fathom what would qualify.

## CONCLUSION

For the foregoing reasons, the district court's order should be reversed.

Dated: October 30, 2026

Respectfully submitted,

*/s/ Allyson R. Scher*
Allyson R. Scher
Brian D. Netter
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
ascher@democracyforward.org
bnetter@democracyforward.org

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations in Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because it contains 4,812 words. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: October 30, 2026

*/s/ Allyson R. Scher*
Allyson R. Scher

## CERTIFICATE OF SERVICE

I certify that on October 30, 2026, a true and correct copy of this Brief was filed with the Clerk for the United States Court of Appeals for the District of Columbia Circuit via the Court's electronic filing system, which will forward a copy to all counsel of record.

Dated: October 30, 2026

*/s/ Allyson R. Scher*
Allyson R. Scher